# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

**AMANDA BOSARGE, JAQUELYN BUTLER, KIMBERLY HARRELL, WILLIAM MORGAN, PASTOR PAUL PERKINS, BRANDI RENFROE, and DR. JEANA STANLEY, individually and on behalf of their minor children,**

     *Plaintiffs,*

 -against-

**DANIEL P. EDNEY**, in his official capacity as the State Health Officer; **LYNN FITCH**, in her official capacity as the Attorney General of Mississippi; **ASHLEY BLACKMAN**, in her official Capacity as Principal of East Central Lower Elementary School; **DR. ARCHIE R. MITCHELL, in his official capacity as Principal of Senatobia Elementary School; ALLISON MERIT, in her official capacity as Principal of North Bay Elementary School; DR. ASHLEY ALLRED, in her official capacity as Principal of Vancleave Upper Elementary School; and DOUGLAS L. TYNES, in his official capacity as the City Prosecutor for Ocean Springs, Mississippi,**

     *Defendants.*

Civil Action No.   1:22cv233 HSO-BWR

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

The issue presented to this Court is whether the State of Mississippi can force families with religious convictions to vaccinate their children as a condition of enrolling their children in school, while simultaneously allowing secular families to be exempt from the state's childhood

1

vaccination requirements on medical grounds.  Because this policy violates the United States Constitution, Plaintiffs request declaratory and injunctive relief.

Plaintiffs, Amanda Bosarge, Jaquelyn Butler, Kimberly Harrell, William Morgan, Pastor Paul Perkins, Brandi Renfroe, and Dr. Jeana Stanley, for their complaint, against Daniel P. Edney, in his official capacity as the State Health Officer; Lynn Fitch, in her official capacity as the Attorney General of Mississippi; Douglas L. Tynes, in his official capacity as City Prosecutor; and certain school principals in their official capacities, by and through their attorneys, allege as follows:

## INTRODUCTION

1.     According to the Pew Research Center, 82% of Mississippians say that "they believe in God with absolute certainty"[1] and Mississippi is commonly recognized as the most religious state in America.[2]

2.     Plaintiffs possess deeply held religious beliefs that forbid them from vaccinating their children, and their decision to observe their religious convictions has required significant sacrifices.  Mississippi's compulsory school attendance law requires children ages 6 through 17 to be enrolled in an education program.  *See* Miss. Code § 37-13-91.  The Mississippi Supreme Court has held that "the right to a minimally adequate public education created and entailed by the laws of this state is one we can only label fundamental" and that the "right to a public education is a fundamental right protected by states." *Clinton Mun. Separate Sch. Dist. v. Byrd*, 477 So.2d 237, 240 (Miss. 1985).  Plaintiffs' children have nevertheless been excluded from Mississippi's

---

[1] *See* PEW RESEARCH CENTER, *Religious Landscape Study*, https://www.pewresearch.org/religion/religious-landscape-study/state/mississippi/ (last visited Sept. 1, 2022).

[2] *See* PEW RESEARCH CENTER, *How religious is you state?* https://www.pewresearch.org/fact-tank/2016/02/29/how-religious-is-your-state/?state=mississippi (last visited Sept. 1, 2022).

educational system because of their parents' religious beliefs and are unable to access the practical and social benefits of a formal education that their secular peers enjoy.

3.     In Mississippi, it is "unlawful for any child to attend any school, kindergarten or similar type facility intended for the instruction of children . . . either public or private . . . unless they shall first have been vaccinated against those diseases specified by the state health officer." Miss. Code § 41-23-37 (the "**Compulsory Vaccination Law**").   This provision has been interpreted expansively to require vaccination for children to be eligible for enrollment at any school in the state, from pre-school and day care through high school.

4.     "It is the responsibility of the person in charge of each school to enforce the requirements for immunization" and "[f]ailure to enforce provisions of [this law] shall constitute a misdemeanor and upon conviction be punishable by fine or imprisonment or both."   *Id.*

5.     Despite a majority of Mississippians being religious, Mississippi prohibits religious exemptions for these mandated vaccines.[3]  The fact that Plaintiffs' children are ineligible to enroll in Mississippi schools is not an incidental consequence of neutral, generally applicable legislation. Mississippi previously had a religious exemption to its vaccination requirements, but the state legislature made the calculated decision to remove that exemption after a state court judge declared it invalid.  *Brown v. Stone*, 378 So. 2d 218, 221 (Miss. 1979).

6.     The validity of that state court decision, however, has since been called into serious question by numerous United States Supreme Court and federal court decisions.  *See Employment*

---

[3] Forty-four states allow school-age children to be exempt from vaccinations for religious reasons and at least two others have provisions grandfathering in children with a prior religious exemption.  *See* NATIONAL CONFERENCE OF STATE LEGISLATURES, *States with Religious and Philosophical Exemptions from School Immunization Requirements,*  https://www.ncsl.org/research/health/school-immunization-exemption-state-laws (last visited Sept. 1, 2022).

*Div., Dep't of Human Resources of Ore v. Smith*, 494 U.S. 872 (1990); *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993); *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719 (2018); *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020); *Tandon v. Newsom*, 141 S. Ct. 1294 (2021); *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021); *see also U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336 (5th Cir. 2022); *Fraternal Order of Police v. Newark*, 170 F.3d 359 (3d Cir. 1999); *Boone v. Boozman*, 217 F. Supp. 2d 938 (E.D. Ark. 2002); *Sherr v. Northport-East Northport Union Free Sch. Dist.,* 672 F. Supp. 81 (E.D.N.Y. 1987).

7.     Critically, after stripping the state's citizens' rights to seek a religious exemption, Mississippi enacted a medical exemption system.  Removing one exemption while enacting another confirmed that the exclusion of families with religious beliefs against vaccination was not the result of an absolute priority to ensure every single child is vaccinated, but rather a calculated choice to eliminate religious beliefs.  *See* Miss. Code § 41-23-37 ("A certificate of exemption from vaccination for medical reasons may be offered on behalf of a child by a duly licensed physician . . .").

8.     Other than excluding them from school, Mississippi does not intrude into the lives of unvaccinated children in any other way.  For example, Mississippi does not prohibit unvaccinated children from participating in camp, prohibit them from visiting a public library, or require proof of vaccination for any other activity.

9.     Mississippi has made an unconstitutional value judgment that secular (*i.e.*, medical) motivations for opting out of compulsory immunization are permitted, but that religious motivations are not.

10.    Defendants' actions have deprived and will continue to deprive Plaintiffs of their inalienable rights under the United States Constitution.

11.    Defendants committed each act alleged herein under the color and authority of Mississippi law.

## JURISDICTION AND VENUE

12.    This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C.§§ 1331 and 1343(a).  This action arises under the First and Fourteenth Amendments to the United States Constitution.

13.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendants reside in this judicial district and a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

14.    This Court has the authority to grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, implemented through Rule 57, Federal Rules of Civil Procedure.

## PARTIES

**A.    Plaintiffs**

**Pastor Paul Perkins**

15.    Plaintiff Pastor Paul Perkins (**"Pastor Perkins"**) is a citizen of the state of Mississippi and resides in Vancleave, Mississippi.  He is the father of a nine-year-old daughter, T.P.; the Head Administrator of the Grace Baptist Academy in Ocean Springs, Mississippi; and the head pastor at Grace Baptist Church.

16.    Pastor Perkins and his wife prayed extensively and consulted the Bible when deciding whether or not to vaccinate T.P. and they arrived at the firm religious conviction that they

must not.  More specifically, because many of the required childhood vaccines were derived from aborted fetal cells, Pastor Perkins believes vaccinating his child would cause him and his family to be complicit in abortion.  *See* Pastor Perkins' Statement of Religious Beliefs, attached as Exhibit A.  Additionally, Pastor Perkins and his family have religious convictions that form their approach to all medical treatments, including vaccination.  The Perkins' family takes a natural approach to dealing with illness, believing that God has created humans with functioning immune systems that were well designed to counteract threats.  While the Perkins do not object to all medication, they only seek it out when an intervention is clearly necessary.  *Id.*  Upholding these convictions has come with sacrifices and risks.  When the family served as missionaries in the Philippines, they were at risk of having their visas revoked because of non-compliance with immunization documentation requirements.

17.     T.P. has received no vaccines and, accordingly, is unable to enroll at Grace Baptist Academy where her father is the Head Administrator.  Grace Baptist Academy is not a public school – it is a private religious-based tuition school, in which, among other things, religious and secular classes are held.  Many of the students who attend Grace Baptist Academy attend Pastor Perkins' church (the school is within the church).  T.P. is permitted to attend church with those students, and interacts frequently with those children outside of church, but she is not permitted to attend school with them.

18.     The Perkins want T.P. to attend the school.  Pastor Perkins, as the school's Head Administrator, has on several occasions been required to prohibit other unvaccinated children from enrolling at Grace Baptist Academy.  Consequently, he knows enrolling T.P. is not an option.

19.     Pastor Perkins is a devout adherent to his faith, which at times has brought about discrimination.  When Pastor Perkins and his family were missionaries in the Philippines, they

6

experienced several forms of religious discrimination.  Pastor Perkins' work in the Philippines focused on prison ministry.  The Philippines is a very religious country, but evangelical Christians like Pastor Perkins represent a small minority of the population.  Mindanao Island, on the southern tip of the Philippines, is home to several militant groups who are driven by religious ideology, including affiliates of the Islamic State of Iraq and Syria ("ISIS").

20.     Pastor Perkins' ministry owned land on Mindanao.  When Pastor Perkins was attempting to set up a prison recovery program in Mindanao, access to the property was blocked by armed militias.  Additionally, upon learning of his religious beliefs, prison administrators often required Pastor Perkins to fulfill "specialized" admission requirements that were not required of members of other religions and denominations.  Scheduled ministry times were changed or moved abruptly without prior notice, causing frequent disruptions and cancellations.  Pastor Perkins suffered these adverse actions due to his religious beliefs.

21.     The discrimination Pastor Perkins has experienced has not been constrained to the Philippines.  In Mississippi, Pastor Perkins and his family have been negatively impacted in a variety of ways for holding true to their religious convictions.

22.     Critically, unless Pastor Perkins agrees to violate his religious beliefs, T.P. is unable to attend the school where her father is the Head Administrator.  In fact, if Pastor Perkins were to enroll her at Grace Baptist Academy, he would be subject to potential prison time.  *See* Miss. Code § 41-23-37.  Pastor Perkins wishes to enroll T.P. at Grace Baptist Academy, and would, but-for the threat of criminal prosecution against him.

23.     As a homeschooler with parents in full-time ministry, T.P. is forced to learn in an ever-changing environment.  Her teachers are her parents, and her parents' time is in high demand.  Full-time ministry does not follow a set schedule, and the Perkins are called into the community

at all hours of the day, often for extended periods of time.  For example, a church member recently passed away and Pastor Perkins and his wife stayed with the surviving spouse, arranging meals, counseling him, and coordinating the funeral service.  Pastor Perkins' wife oversees scheduling medical appointments for elderly members of the church, and often accompanies them to the doctor.  Consequently, T.P.'s learning schedule is atypical. The Perkins desire a more consistent learning environment for T.P.

24.     Even though T.P. is doing very well academically, the Perkins also want T.P. to have access to a more complete education, where she can interact with children her age in a more structured educational environment.

25.     Although she cannot enroll at her father's school due to her family's religious beliefs and the state's law that does not permit religious exemptions, T.P. is still an active part of the community.  On a weekly basis, T.P. frequently engages with children her age outside of a school setting.  She is involved with Junior Church and the Patch Club (children's ministries at Grace Baptist Church) and attends Sunday school every week with peers who attend local schools. T.P. is on a local volleyball team and travels frequently throughout Mississippi and the Southeast for competitions against children who attend public and private schools.  The family also travels extensively throughout the United States for ministry and vacation, where T.P. has frequent interactions with children her age.  While Mississippi law prohibits T.P. from enrolling in school, it does not prohibit her from being an active and present member in society where she is in close contact with children of all ages.

**Kimberly Harrell**

26.     Plaintiff Kimberly Harrell (**"Ms. Harrell"**) is a single mother and nurse practitioner who resides in Brandon, Mississippi.  She adopted her daughter, S.H., in 2016 after meeting S.H.'s biological mother through a church ministry.

27.     Ms. Harrell's professional career has focused on serving Mississippi's underprivileged communities.  Ms. Harrell often works with at-risk families and children who are subject to abuse and neglect.  Through these experiences, and in application of her understanding of the Bible, Ms. Harrell came under increasingly firm conviction to become more proactively engaged with at-risk children.

28.     Ms. Harrell had been mentoring S.H.'s biological mother through a ministry before she became pregnant.  S.H.'s biological mother, for a variety of reasons, did not believe she would be able to provide for her unborn child, and asked Ms. Harrell if she would be willing to step in. After a brief period of prayer and searching the Scriptures, Ms. Harrell immediately knew she was called to adopt the child.

29.     S.H. received one vaccine in the first week of her life, before Ms. Harrell finalized adoption proceedings.  After fasting and praying for an extended period, Ms. Harrell arrived at a "deep and compelling certainty" that "no matter the consequence," vaccinating S.H. would violate God's will and her Christian beliefs.  *See* Ms. Harrell's Statement of Religious Beliefs, attached as Exhibit B.  In her belief system, Mr. Harrell emphasizes focused prayer and fasting, and is under conviction that God led her to "this specific decision" to decline vaccinating S.H.  *Id.*  Ms. Harrell also objects to the "immoral practices of the use of aborted fetal cells and many other toxins" used in vaccines.  *Id.*  After, much prayer, Ms. Harrell is under firm religious conviction that she must not vaccinate S.H.  Ms. Harrell's understanding of the Bible is that it would be "a sin to have a

clear conviction about something but do it anyway." *Id.* (citing Romans 14:23). As a result, since the adoption, S.H. has not received any more vaccines.

30.     When S.H. became eligible to enroll in preschool, Ms. Harrell again sought guidance through searching the Bible, fasting, and praying. She had "no peace" about vaccinating S.H. and, accordingly, has homeschooled her daughter for the past two years. *Id.*

31.     For a variety of reasons, Ms. Harrell desires for S.H. to attend a Mississippi public or private school. Ms. Harrell attempted to enroll her daughter at Rouse Elementary School in Brandon, Mississippi and was instructed to fill out a proof of immunization form. When Ms. Harrell inquired whether the school would consider her religious exemption request, school officials referred her to the Mississippi Department of Health. Ms. Harrell called the Health Department and a representative advised that "Mississippi does not do any religious exemptions."

32.     Ms. Harrell also attempted to enroll S.H. at a private school, Park Place Christian school, in Brandon, Mississippi. After requesting a religious exemption, the school's director of admissions instructed Ms. Harrell that the school was required to follow Health Department guidelines and that the school was not able to accept or even consider a religious exemption request.

33.     Ms. Harrell's decision to obey her religious convictions and decline compulsory vaccination has come at significant cost.

34.     As a result of homeschooling S.H., Ms. Harrell has been forced to decline numerous professional opportunities. Ms. Harrell has dreamed of opening her own private medical practice, but because of S.H.'s educational needs, she knows that is not an option.

35.     Presently, Ms. Harrell is able to obtain sufficient hours as an independent contractor, allowing her to structure her work schedule around S.H.'s educational needs. But while

it is necessary for S.H.'s schooling, working as an independent contractor is suboptimal for many reasons. Ms. Harrell does not have healthcare or retirement benefits. Instead of placing excess income into a personal retirement account, Ms. Harrell often expends available resources on S.H.'s education, including curriculum, school material, and tuition for a homeschooling cooperative program in the Jackson metro area.

36.     To ensure S.H. is learning at a commensurate pace as her peers, Ms. Harrell has also incurred substantial out-of-pocket costs to have S.H.'s learning abilities regularly assessed. Ms. Harrell anticipates S.H. may require specialized educational instruction in the future that public schools would be better suited to provide.

37.     S.H. is a motivated child and is doing well in the homeschool environment, due primarily to Ms. Harrell's oversight and significant investments. However, Ms. Harrell often wrestles with the fact that S.H. will miss out on the socialization process that accompanies traditional schooling. Ms. Harrell has been able to supply social opportunities to S.H. but doing so has been demanding on her time and work schedule. To ensure S.H. obtains sufficient social interactions, Ms. Harrell takes her to and from various educational and social activities at all times of the day.

38.     S.H. interacts daily with children who attend Mississippi public and private schools. On a weekly basis, S.H. goes to Sunday school with local children enrolled at schools throughout the Jackson-metro area. Ms. Harrell regularly takes S.H. to community parks during the week, and S.H. has taken ballet and tumbling classes, as well as swimming lessons with other children. As part of her education, Ms. Harrell often takes S.H. to local children's museums (where they are members) and S.H. regularly participates in events at local libraries.

11

39.     Over the past three years, Ms. Harrell has traveled extensively with S.H. throughout the Southeast.  S.H. is a very social child.  She is eager to make new friends wherever she goes and initiates interaction with other children at every opportunity.

40.     Because of the additional financial and practical demands associated with homeschooling, Ms. Harrell is strongly considering moving to a neighboring state so her daughter can attend school and have access to the attendant opportunities and advantages that a conventional school setting provides.  However, considering her connections and established support system in Mississippi, Ms. Harrell is very hesitant to take this step.

**Brandi Renfroe**

41.     Plaintiff Brandi Renfroe ("**Mrs. Renfroe**") and her husband are lifelong Mississippians and recently inherited a home in Vancleave, Mississippi.  Mrs. Renfroe works and pays taxes in Mississippi, as does her husband.  The family attends church in Ocean Springs and their closest relationships are with other Mississippi families.  However, the Renfroes had to move across the state line to Alabama so their unvaccinated children could attend school.

42.     Mrs. Renfroe holds a firm spiritual conviction that vaccinating her children would violate her religious beliefs.  For the past 21 years, Mrs. Renfroe has been involved in a Rosary Prayer group based on the Mississippi Gulf Coast.  The group has been actively involved in fighting and praying for unborn children, and members have raised significant finances to fund billboards encouraging expecting mothers to preserve life.  The group has instituted a standing prayer item to "please protect and save unborn children."

43.     As a devout Catholic, Mrs. Renfroe believes that life begins at conception. Consequently, she also vehemently objects to participating in any activity involving abortion, which, in her system of religious beliefs, includes subjecting her children to vaccines that depend

12

on abortion to exist.  *See* Mrs. Renfroe's Statement of Religious Beliefs, attached as Exhibit C. She also believes childhood vaccines are "a violation of our duty to put our faith in [God] because they preemptively reject and doubt God's design, which is a sin."  *Id.*

44.     Initially, Mrs. Renfroe's husband did not share her religious beliefs on vaccination. Because of that, their oldest son, B.R., age 10, received one vaccine when he was 20 months old.

45.     After searching the Scriptures and praying through the issues as a couple, Mr. and Mrs. Renfroe arrived at a spiritual consensus regarding vaccinating their children.  Consequently, their eight-year-old son, S.R., has received no vaccines and B.R. has received no vaccines aside from one at the age of 20 months.

46.     Mrs. Renfroe attempted to enroll B.R. and S.R. at Vancleave Upper Elementary School with religious exemption documentation.  School administrators explained that Mississippi only accepts medical exemptions and referred her to the Mississippi Department of Health to verify.  Mrs. Renfroe called the Department of Health and inquired whether she would be able to enroll her child in school with a religious exemption. Health Department officials confirmed that Mississippi would consider medical exemption requests, but not religious exemptions.

47.     In order to observe their religious convictions, the Renfroes moved to Alabama when their oldest son reached school age. The Renfroes possess strong ties to Mississippi.  The home the family inherited in Vancleave is next to Mrs. Renfroe's brother and his family.   The Renfroes want to move their family back to that home and they will do so if state law permits a religious exemption.

48.     The Renfroe's decision to adhere to their religious convictions has negatively impacted the family in numerous ways.  The moving costs were substantial.  The Renfroes could

not initially find an affordable home in Alabama and had to rent a house and storage space for several years before they were able to find a residence to remodel.

49.     Mr. and Mrs. Renfroe also expend considerable time and money commuting to and from Mississippi for their jobs.  Mrs. Renfroe works as a court reporter primarily in Gulfport, Long Beach, and Bay St. Louis, Mississippi.  She drives from Alabama to Mississippi every day for this work.   On Sundays, the family attends St. Alphonsus Catholic Church in Ocean Springs, Mississippi, where B.R. and S.R. recently received their First Reconciliation and First Communion.

50.     The Renfroes' sons frequently interact with their Mississippi cousins who attend public schools in the Vancleave School District.  The family maintains lifelong friendships with Mississippians whose children attend Resurrection Catholic School in Pascagoula, as well as public schools throughout the Mississippi Gulf Coast.

51.     The Renfroes are also active members of the Singing River Yacht Club in Pascagoula, where Mr. Renfroe, until recently, was the head tennis professional.  The Renfroes' sons have grown up at the club playing tennis, swimming, and fishing with their Mississippi peers. In fact, the boys spend most of their summers engaging in various activities at the club and they participate in a youth baseball league in Pascagoula, Mississippi.  Additionally, Mr. Renfroe is the boys' baseball coach for a travel team based out of Pascagoula and their teammates are children who attend school in Mississippi.

52.     Even though relocating to Vancleave would be ideal, the Renfroes cannot take this step and simultaneously maintain their religious beliefs.

**Amanda Bosarge**

53.     Plaintiff Amanda Bosarge (**"Mrs. Bosarge"**) and her husband reside in Moss Point, Mississippi.  The Bosarges have three children, E.B., age 9; B.B., age 6; and N.B., age 3, who have received no vaccines.

54.     The Bosarges' decision to decline compulsory vaccination is based on their sincerely held Christian beliefs.  Mr. and Mrs. Bosarge served as missionaries in Thika, Kenya with a ministry that focused on serving the Maasai tribe.  Through that experience, and throughout their lives, the Bosarges have learned the importance of seeking God's direction for daily and long-term decisions.  When they are under conviction from the Holy Spirit, they are careful to immediately obey.  *See* Mrs. Bosarge's Statement of Religious Beliefs, attached as Exhibit D.

55.     After much thought and prayer, the Bosarges are adamant that vaccinating their children would be to disobey the Holy Spirit's leading.  *Id.*  Ms. Bosarge is aware that the fetal cell lines used in the development, testing, and/or manufacturing of many childhood vaccines "were obtained from a dismembered prebirthed child" and she cannot "endorse the use of aborted babies in production of vaccinations by injecting them into [her] body or her children's bodies." *Id.*  Additionally, Ms. Bosarge believes that taking "a vaccine shows a lack of faith in God because it gives a false sense of safety." *Id.*  Ms. Bosarge believes that trusting in vaccines, rather than God-given immunity and faith in God, is an unnecessary "fear-based approach to health."  *Id.* After thought and prayer, the Bosarge family has chosen to take a faith-based approach and to trust God for their physical health.  *Id.*

56.     Mrs. Bosarge attempted to enroll E.B. at East Central Lower Elementary School and told school administrators that her children were not vaccinated based on the family's religious beliefs.  The administrator was sympathetic to the situation and stated that she was "sure the school

could find a solution" to accommodate the family's religious beliefs.  However, the school called

back a few days later and stated that E.B. could not enroll because she had determined "Mississippi

does not allow for religious exemptions."  The administrator advised Mrs. Bosarge that she could

request a medical exemption; however, E.B. has no medical condition that would permit this.

57.     Because their children are ineligible to attend Mississippi schools, Mrs. Bosarge

homeschools all three of her unvaccinated children.

58.     The Bosarges' inability to comply with compulsory vaccination is impacting the

family's finances significantly.  Mrs. Bosarge is pursuing further education while homeschooling

her children, and often hires babysitters so she can maintain her studies.  For obvious reasons, Mrs.

Bosarge has fallen behind; consequently, she anticipates that she will incur additional tuition costs.

The Bosarges cannot afford tutors or private teachers – their only current alternative to

homeschooling.

59.     The Bosarges are aware that their children are missing out on opportunities that

their secular peers have access to, including the option to learn alongside a group of children their

age, participate on a school teams, and take part in other organized activities available in traditional

school settings.  B.B. is gifted in math and Mrs. Bosarge anticipates she may have to hire a math

tutor to ensure B.B. reaches his full potential in the subject.  The Bosarges also believe in the value

of higher education and are keenly aware that participation in social and academic clubs in a formal

school setting often boosts a student's college application score.  The Bosarges are concerned that

their children's inability to participate in these clubs will negatively impact their ability to be

accepted into higher education.

60.     The Bosarges live in a desirable public school district and want the option for their

children to attend East Central Lower Elementary School.  The family believes this option would

open many doors for their children and it would allow Mrs. Bosarge to complete her studies and pursue her own career.  Under this scenario, the Bosarges would also be liberated financially to save for their children's college tuition.

61.     The Bosarges' children have been active in local gymnastics clubs, soccer, and piano lessons.  In the evenings and on the weekends, the children play with their neighborhood friends who attend East Central Elementary School.  Additionally, the family attends Sunday morning worship services and Wednesday night services on a weekly basis with families whose children are enrolled at schools throughout the Mississippi Gulf Coast.

**William Morgan**

62.     Plaintiff William Morgan ("**Mr. Morgan**") is a youth pastor who recently took a teaching and coaching position at North Delta School in Batesville, Mississippi.  His four-year-old son, L.M., received some vaccines before the Morgans had extensive consultation with health care professionals and prior to them learning that many of the required vaccines were derived from aborted fetal cells and contain material that the Morgans consider to be impure.  For that reason, and others, Mr. and Mrs. Morgan's religious beliefs prevent L.M. from receiving any more vaccines.

63.     Mr. Morgan and his wife are Christians who strive to incorporate the teachings of the Bible into every aspect of their lives, including raising their children.  The Morgans served as missionaries in and around Jovellanos, Cuba where they partnered with local churches to provide food and medical care in underprivileged communities.  Their ministry also focused on serving Cubans with physical handicaps.  While Cuba is not as openly hostile to religion as it once was, the Morgans had to be judicious about speaking publicly about their beliefs while serving in these communities.

64. Mr. Morgan also served for the past three years as a youth pastor at LifePoint Church in Senatobia, Mississippi before taking the coaching job. Mr. Morgan has a passion for mentoring young men and his career path has been directed by his religious beliefs.

65. The Morgans have searched the Bible and prayed extensively as a couple about whether to vaccinate L.M. and the couple came to the firm conviction that vaccinating L.M. would violate God's will for him. *See* Mr. Morgan's Statement of Religious Beliefs, attached as Exhibit E. More specifically, the Morgans are under firm conviction that injecting substances into their son's body that are dependent on aborted fetal cell lines to exist would violate their religious beliefs, even if the vaccines would benefit their son, because participating in an activity that "profits off of the body parts of willfully aborted children" would be an affront to God. *Id.* Additionally, Mr. Morgan is careful to observe the Bible's instruction to guard one's physical body because the scriptures states that one's body is "God's temple because the Holy Spirit resides within" Christians. *Id.* In Mr. Morgan's system of beliefs, he believes "taking a vaccine that includes genetic matter, animal ingredients, man manipulated pathogens, and chemicals" violates the body as God's temple. *Id.*

66. Mr. Morgan attempted to enroll L.M. at Senatobia Elementary School and requested a religious exemption from Mississippi's childhood vaccination requirements. Days later, school administrators responded via e-mail and instructed that L.M. was ineligible, stating that "there is no exemption from the immunizations due to religious beliefs." *See* Exhibit F.

67. Due to the unavailability of a religious exemption from the vaccination requirements, L.M. is prohibited from attending Mississippi schools, which is impacting the Morgans significantly. Mr. Morgan's wife, who has a college degree and a marketable skillset, has and will be forced to forego professional opportunities in order to homeschool L.M. full-time.

The financial impact of being a one income household, in the Morgans' case, has been magnified by Mr. Morgan's decision to become a youth pastor, teacher, and coach.  Mr. Morgan has answered the call to mentor Mississippi youths and has declined more lucrative career paths to stay true to this calling.  The Morgans also anticipate additional future financial burdens with homeschooling, which include turning a portion of their home into a classroom, hiring tutors, and purchasing updated curriculum to ensure L.M. is learning at the appropriate pace.

68.     The Morgans are also concerned that L.M. will miss out on social opportunities among a class of peers that may become lifelong friends.  L.M. has shown interest in sports, and the Morgans believe that team sports can be integral to their son's development and maturation.  But unlike his secular peers who are vaccinated, L.M. cannot access the substantial lifelong benefits of participating in school sports with fellow classmates.  Mr. Morgan desires to one day coach L.M. on a school team.

69.     As involved parents, the Morgans ensure that L.M. participates in the social opportunities that are available to him.  L.M. interacts regularly with Mississippi children at Sunday school and plays frequently with his peers at his home and at local parks.  The children L.M. commonly socializes with attend Senatobia Elementary School, Journey Day School, Strayhorn Elementary School, and Magnolia Heights School.  The Morgans also travel extensively throughout the Southeast on vacation and to visit family and friends.

70.     The Morgans have deep ties to Mississippi and desire to establish stronger roots.  However, because of the challenges described above, the Morgans believe they will eventually be forced to move to Arkansas or North Carolina, two of the forty-four states that allow for religious exemptions, so that their son can receive a formal education.

**Dr. Jeana Stanley**

71.     Plaintiff Dr. Jeana Stanley (**"Dr. Stanley"**) and her husband are lifelong Mississippians and have deep ties and a substantial support system on the Mississippi Gulf Coast, including a home in Biloxi.

72.     After extensive thought and prayer, the Stanleys decided not to vaccinate their children. They have a firm religious conviction that vaccinating their children would violate God's will for their lives. *See* Dr. Stanley's Statement of Religious Beliefs, attached as Exhibit G. Dr. Stanley has several religious-based convictions that prevent her from vaccinating her children. First, Dr. Stanley believes that God does "not intend [her] to intervene with my body with things like pharmaceuticals and vaccines." *Id.* She practices this belief in "her daily life" and with her children. *Id.* Second, Dr. Stanley believes abortion "is murdering an unborn child." *Id.* Therefore, participating in abortion through vaccination would go "against [her] moral, ethical and spiritual being." *Id.* Third, Dr. Stanley believes the "human body was perfectly designed and created by God," *id.,* and believes that to "intervene in a healthy, well body by injecting substances to alter, intervene and manipulate is against God's perfect design." *Id.* (citing Leviticus 19:28). Finally, Dr. Stanley states that accepting "vaccine injections would cause [her] deep regret because it would be a betrayal to God's intended direction for [herself] and [her] family." *Id.*

73.     Dr. Stanley works and pays taxes in Mississippi, as does her husband. The Stanleys' extended family (including both sets of grandparents) and lifelong friends live on the Mississippi Gulf Coast. The Stanleys' children, C.S., age 7; H.S., age 6; and E.S., age 5, were baptized at Fatima Catholic Church in Biloxi and attend vacation bible school there.

74.     However, the Stanleys recently purchased a second home and moved five minutes across the state line to Alabama so their unvaccinated children could attend school. However, if

relief were granted and the challenged law were to be enjoined as to allow religious exemptions, the Stanleys would move back to Mississippi and enroll their children in school in Biloxi.

75.     Dr. Stanley states that raising her children outside of Mississippi has been "painful beyond words."  *Id.*

76.     Dr. Stanley attempted to enroll her children at North Bay Elementary School in Biloxi and asked if it would accept a religious exemption for her unvaccinated children.  She was rejected.

77.     Despite being forbidden to attend school, the Stanleys' children frequently interact with their Mississippi peers.  The children also spend considerable time with their cousins, who are enrolled at Mississippi public schools.  C.S. recently attended Sea Camp at the Marine Mammal Institute in Gulfport, Mississippi and participated in summer sports camps at Gulfport High Public School and Pass Road Elementary Public School, all with peers who do attend school.  This past school year, the Stanley children went on a field trip with their Alabama classmates to the Marine Mammal Institute and the Lynn Meadows Discovery Center in Gulfport, where vaccination status was not required or checked.  As a family, the Stanleys also visit the Lynn Meadows Discovery Center, go to sporting events at Shuckers stadium, frequent Mississippi Gulf Coast restaurants, and attend events at Mississippi Gulf Coast churches.

78.     The Stanleys' decision to adhere to their religious convictions has been costly in other ways as well.  The Stanleys inherited a family home in Biloxi, Mississippi and have no mortgage on that residence.  Accordingly, they were able to put significant amounts of money aside each month for their children's futures.  While residing in Biloxi, they lived within walking distance of grandparents, cousins, and lifelong friends.  The Stanleys continue to make insurance and tax payments on the Mississippi residence, while servicing a mortgage and other costs on the

Alabama home.  Dr. Stanley now must drive 70 miles roundtrip each day to work.  Mr. Stanley commutes separately five days a week as well.

79.     Dr. Stanley's 66-year-old mother, a Biloxi resident, is the family's primary babysitter.  She too often travels 70 miles roundtrip to babysit the children in Alabama while Dr. and Mr. Stanley are working in Mississippi.  It is noteworthy that Dr. Stanley's mother was a Mississippi school administrator for 38 years and is unvaccinated.  While she was permitted to work within the schools for nearly four decades while being unvaccinated, her grandchildren are excluded from the state's schools for that very reason.

80.     For obvious reasons, the family desires to return to their Mississippi home full-time and to enroll their children in the Biloxi school system, and they will do so if relief is granted in this case.

**Jaquelyn Butler**

81.     Plaintiff Jacquelyn Butler ("**Mrs. Butler**") and her husband reside in Olive Branch, Mississippi.  For religious reasons, the Butlers have declined vaccines for their four-year-old twin daughters, S.B. and M.B.

82.     Mrs. Butler became a Christian when she was six years old.  Since then, she has actively practiced her faith and seeks guidance from the Holy Spirit for life's big and small decisions.  *See* Mrs. Butler's Statement of Religious Beliefs, attached as Exhibit H.  Mrs. Butler believes the Holy Spirit will guide her, "especially when [she is] willing to listen."  *Id.*

83.     After seeking guidance from the Bible and through focused thought and prayer, Mrs. Butler believes that vaccinating her daughters would violate God's will.  She deems the Bible as "God's inerrant and infallible Word."  *Id.*  Mrs. Butler is aware that many childhood vaccines contain animal cells and blood and she believes that injecting vaccines into her daughters' bodies

would violate the Bible's instruction to keep human blood pure.  She also believes that preemptively placing foreign substances into a body with a functioning immune system demonstrates a lack of faith in "God's goodness and wisdom."  *Id.*  Finally, Mrs. Butler's religious beliefs against abortion overlap with her objections to vaccination.  Based on her personal religious convictions, she cannot consent to a vaccine that used "aborted fetal cells lines to exist."  *Id.*

84.   The Butlers' twins interact regularly with children who attend Mississippi public schools, primarily through play dates and visits to local parks.  Mr. and Mrs. Butler anticipate that the twins' involvement with children their age will only increase as the twins grow older.

85.   Mrs. Butler attempted to enroll her daughters at Desoto Christian Academy and Northpoint Christian Academy.  School administrators stated that the twins were ineligible for enrollment and rejected Mrs. Butler's religious exemption request.

86.   The Butler family wants to remain in Mississippi, where they have a substantial support system.  However, because the twins are ineligible to enroll in Mississippi schools, the Butlers are seriously considering leaving Mississippi in order to have their children educated.  If necessary, the Butlers will uproot their family and move to another state that permits religious exemptions, despite the significant costs it will entail.  Alternatively, the Butlers will need to commute from Mississippi to a private school in Tennessee.  Because the Butlers rely on two incomes, homeschooling is not a realistic option for them.  Relief in this case will redress their injuries; permitting religious exemptions will enable the Butlers to enroll their children in school and remain in the community.

### B.   Defendants

87.   Defendant Daniel P. Edney (**"Dr. Edney"**) is made party to this Action in his official capacity as the State Health Officer for Mississippi.  Under Mississippi law, Dr. Edney is

tasked with implementing and enforcing, and does implement and enforce, the mandatory immunization requirements of the Compulsory Vaccination Law for school-aged children.

88.    Defendant Lynn Fitch is made party to this Action in her official capacity as the Attorney General of Mississippi.  Under Mississippi law, Attorney General Fitch is the state's "chief legal officer" (*see* Miss. Code § 7-5-1) and is responsible for enforcing, and does enforce, the laws of Mississippi, including the state's mandatory immunization requirements under the Compulsory Vaccination Law.  Attorney General Fitch is charged with implementing and enforcing, and does implement and enforce, the mandatory vaccination program, through among other things threatening to bring criminal charges against anyone who violates the program.

89.    Defendant Ashley Blackman is the Principal Administrator of the East Central Lower Elementary School and is made party to this Action in her official capacity.  Under Mississippi law, she is the "person in charge" of the school and is tasked with implementing and enforcing, and does implement and enforce, the mandatory immunization requirements of the Compulsory Vaccination Law.  Plaintiff Amanda Bosarge attempted to enroll her children East Central Lower Elementary School with a religious exemption but was rejected.

90.    Defendant Dr. Archie R. Mitchell is the Principal of Senatobia Elementary School and is made party to this Action in his official capacity.  Under Mississippi law, he is the "person in charge" of the school and is tasked with implementing and enforcing, and does implement and enforce, the mandatory immunization requirements of the Compulsory Vaccination Law.  Plaintiff William Morgan attempted to enroll his child at Senatobia Elementary School with a religious exemption but was rejected.

91.    Defendant Dr. Ashley Allred is the Principal of the Vancleave Upper Elementary School and is made party to this Action in her official capacity.  Under Mississippi law, she is the

"person in charge" of the school and is tasked with implementing and enforcing, and does implement and enforce, the mandatory immunization requirements of the Compulsory Vaccination Law.  Plaintiff Brandi Renfroe attempted to enroll her children at Vancleave Upper Elementary School with a religious exemption but was rejected.

92.     Defendant Allison Merit is the Principal of North Bay Elementary School and is made party to this Action in her official capacity.  Under Mississippi law, she is the "person in charge" of the school and is tasked with implementing and enforcing, and does implement and enforce, the mandatory immunization requirements of the Compulsory Vaccination Law.  Plaintiff Dr. Jeanna Stanely attempted to enroll her children at North Bay Elementary School with a religious exemption but was rejected.

93.     Defendant Douglas L. Tynes is the city prosecutor for Ocean Springs, Mississippi and is made party to this Action in his official capacity.  Under Mississippi law, Mr. Tynes is responsible for prosecuting misdemeanors, and does prosecute misdemeanors, occurring in the city limits of Ocean Springs, including violations of the Compulsory Vaccination Law.  Plaintiff Pastor Paul Perkins, as Head Administrator of Grace Baptist Academy, desires to, and would, but for the threat of prosecution by Mr. Tynes, enroll his daughter in the school.

## STATEMENT OF COMMON FACTS

### *General Background of Compulsory Childhood Vaccination in Mississippi*

94.     In 1960, the Mississippi Legislature instituted certain vaccination requirements for school-age children and included a religious exemption.  The possibility for an exemption, however, was limited, requiring those seeking a religious exemption to be a bona fide member of a "recognized denomination" whose religious teachings required "reliance on prayer or spiritual means for healing" (*e.g.,* Christian Scientists).

95.     In 1979, the limitations of the religious exemption was challenged in the Chancery Court of Chickasaw County by a father who was a member of a denomination not "recognized" by the state.  The father had religious objections to vaccinating his child and brought suit in an effort to have all religious objections recognized under the First Amendment's Free Exercise Clause regardless of whether or not it was "recognized" by the state.

96.     In *Brown v. Stone*, 378 So. 2d 218 (Miss. 1979), the Mississippi Supreme Court rejected the father's arguments and expanded its ruling to issues well beyond those initially presented.  The *Brown* court ruled that *vaccinated children* possessed a Fourteenth Amendment right to be free from associating with their unvaccinated peers, which included the right to not associate with schoolmates who had religious objections to vaccination.  The court concluded that exposing vaccinated children to the "hazard of association in school" with children possessing a religious exemption would violate the vaccinated children's constitutional rights.  *Id.* at 223.  There was no such constitutional right, however, to be free from associating with unvaccinated children who possessed a medical exemption (which were available when *Brown* was decided).  *Id.* at 219. The *Brown* court did not rule that vaccinated children have a constitutional right to be free from associating with unvaccinated children at church, the grocery store, or in local sports leagues.

97.     Venturing well beyond the issue presented, the Court ultimately held that *any* religious exemption – but not the secular medical exemption – was "void." *Id.* However, ensuing Supreme Court and federal district court decisions from the 1990's through present have invalidated the *Brown* court's reasoning.

98.     Arkansas previously had a limited religious exemption similar to Mississippi's at issue in *Brown*. In *Boone v. Boozman*,[4] and a mother who possessed religious objections

---

[4] 217 F. Supp. 2d 938.

unrecognized by the Arkansas statute challenged the limited religious exemption on First Amendment grounds. *Boone v. Boozman*, 217 F. Supp. 2d 938, 951 (E.D. Ark. 2002). In direct contrast to *Brown*, the *Boozman* court held that the limitation of the statutory exemption to a "recognized church or religious denomination" violated the Free Exercise Clause. *Id.* Arkansas soon thereafter enacted a comprehensive religious exemption, which remains the law today.

99.     More recently, in *Tandon v. Newsom*, 141 S. Ct. 1294 (2021) (*per curiam*), the U.S. Supreme Court went even further than the *Boozman* court's rationale and ruled that a law is not neutral and generally applicable, and thus invokes strict scrutiny review, if it treats "*any comparable secular activity more favorably than religious exercise.*" *Id.* at 1296 (emphasis in original). In *Tandon,* California regulations intended to slow the spread of COVID-19 limited religious gatherings but treated comparable secular activities – such as getting haircuts and retail shopping – more favorably. *Id.* at 1297. The Supreme Court employed similar reasoning in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020), holding that a New York regulation that prohibited religious gatherings but permitted similar secular conduct violated the First Amendment where the secular and religious activities in question presented comparable contagion risks. *Id.* at 67.

100.     Three years after *the Brown* decision, in 1983, the Mississippi Legislature amended the Mississippi Code and removed the religious exemption for school-aged children.[5] The Legislature did, however, codify medical exemptions, which are still available in Mississippi today. *See* Miss. Code Ann. § 41-23-37.

---

[5] Chapter 522, *Mississippi Laws of 1983* (removing religious exemptions from the school immunization requirement with certain exceptions, and authorizing schools to furnish certificates of immunization compliance to the local health officer).

101.    Notably, Mississippi did not at that time, or any time thereafter, enact vaccination requirements for adults, including those who work within the state's education system and schools.

102.    School attendance is compulsory in Mississippi. Under Miss. Code § 37-13-91, the "custodian of . . . [a] school-age[d] child in [Mississippi] shall cause the child to enroll in and attend a public school or legitimate nonpublic school."

103.    Under the Compulsory Vaccination Law, the state Health Officer has been delegated the responsibility to specify which vaccines are mandatory for school children, to oversee the immunization reporting requirements, and to administer the state's medical exemption program.

104.    Under the statute, it is "the responsibility of the person in charge of each school to enforce the requirements for immunization" established by the Health Officer.  Miss. Code § 41-23-37.  Failure to enforce the compulsory vaccination requirements is a misdemeanor "punishable by fine or imprisonment or both." *Id.*

105.    Misdemeanors committed within the city limits, such as a violation of Miss. Code § 41-23-37, are considered "criminal offenses against the municipality" under Miss. Code Ann. § 21–13–19 and, accordingly, are prosecuted by the relevant City Prosecutor.

### *Developments Since Mississippi's Religious Exemption was Removed*

106.    Since Mississippi revoked its religious exemption to the Compulsory Vaccination Law, there have been several critical developments.  Specifically, religious objections to abortion and fetal cell entanglement in medical research have increased dramatically as relevant information became more widely known and understood; and, more importantly, relevant

constitutional jurisprudence has been fundamentally updated to require strict scrutiny review for situations like the situation at hand.

107.    It is now commonly understood that several childhood vaccines were derived directly from aborted fetal cells.  Others depend on these fetal cells for testing, design, and/or manufacture.  Most other vaccines, even if not directly associated with aborted fetal cells themselves, are made by manufacturers who profit from the use of these aborted fetal cells.  These aborted fetal cells would be illegal to harvest in Mississippi today under the state's abortion ban, and yet their continued use, and profit derived from an abortion, is condoned through the Compulsory Vaccination Law.

108.    Beginning in the 1970s, as states enacted vaccination requirements, they also began instituting religious exemptions to childhood vaccination laws, including, among many others, Mississippi's neighboring states of Alabama (1973),[6] Louisiana (1990),[7] Tennessee (1991),[8] Texas (1993),[9] Florida (2002),[10] and Arkansas (2004).[11]  To date, forty-four states have legislation allowing  school-age children to be exempt from mandatory vaccination laws for religious reasons,[12] and at least two other states have provisions grandfathering in children with a prior religious exemption.

### *Mississippi's Discretionary Exemption Process*

---

[6]  Ala. Code § 16-30-3.

[7]  La. Rev. Stat. Ann. § 17:170(A); 40:31.16.

[8]  Tenn. Code Ann. § 49-6-5001.

[9]  Tex. Health & Safety Code § 161.004.

[10]  Fla. Stat. Ann. § 1003.22.

[11]  Ark. Code Ann. § 6-18-702.

[12] *See* NATIONAL CONFERENCE OF STATE LEGISLATURES, *States with Religious and Philosophical Exemptions from School Immunization Requirements*, https://www.ncsl.org/research/health/school-immunization-exemption-state-laws (last visited Sept. 1, 2022).

109.     Mississippi has instituted a discretionary exemption to the Compulsory Vaccination Law that benefits certain individuals (secular), and deliberately excludes others (non-secular).

110.     Students are not permitted to seek exemption from the required vaccines for religious reasons.  However, students are permitted to seek a medical exemption from the required vaccines.

111.     Through the plain language of the relevant statute, Mississippi has reserved discretion to accept or deny medical exemptions.  The Compulsory Vaccination Law states: "A certificate of exemption from vaccination for medical reasons may be offered on behalf of a child by a duly licensed physician and **may be accepted by the local health officer when, in his opinion,** such exemption will not cause undue risk to the community."  Miss. Code § 41-23-37 (emphasis added).  It offers no similar pathway for an exemption where the requirement substantially burdens a sincerely held religious belief.  Hence, while the plain language of the statute alone is sufficient to determine the issue of whether Mississippi has instituted an exemption scheme that includes individualized assessment, the process includes even more discretion than what may be apparent from the statute.

112.     Mississippi has instituted a system that includes two levels of personalized discretionary review.  The state has delegated private health care providers discretion to determine what broad variety of circumstances are eligible for a medical exemption, and which are not.[13] Acting on behalf of the state, these physicians conduct an individualized assessment of each potential medical exemption.  If and when the medical exemption form is signed by a physician,

---

[13] *See* Exhibit I, Medical Exemption Request Form; *also available at* https://msdh.ms.gov/ msdhsite/_static/14,0,71,688.html.  Courts may take judicial notice of information contained in official government websites under Rule 201 of the Federal Rules of Evidence.  *See, e.g., Hawk Aircargo Inc., v. Chao,* 418 F.3d 453, 457 (5th Cir 2005).

it is then submitted to the Department of Health, where it is then reviewed pursuant to the State's published Medical Exemption guidelines.[14] The Medical Exemption Request Form instructs that requests will be "reviewed on a case by case basis."[15] If the exemption is accepted, that student is permitted to attend school without having received all of the mandated vaccines.

113.    The secular exemption process is unavailable to citizens with religious objections to compulsory vaccination.  For example, Plaintiff Brandi Renfroe called the Department of Health and requested that she be able to submit a religious exemption.  Health Department officials stated they would not accept her religious exemption request, nor would any school in the state, but that she could pursue a medical exemption.  However, her children have no medical condition that would permit this.

114.    Mississippi does not merely refuse to consider religious exemptions, which is sufficient to trigger strict scrutiny under *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021) and *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336 (5th Cir. 2022), the State has taken the additional step to single out religious adherents specifically for worse treatment by publicly announcing that religious exemptions are categorically excluded from consideration.  In case there was any doubt, the Health Department's website states that it will consider medical exemptions, but not religious exemptions (exemption "**from required immunizations for religious, philosophical, or conscientious reasons is not allowed** . . . .").[16]  It is plain Mississippi's exclusion of religious objections was intentional rather than incidental.

---

[14] MISSISSIPPI DEPARTMENT OF HEALTH, *Medical Exemption Policy*, https://msdh.ms.gov/msdhsite/index.cfm/14,0,71,688,html (last visited Sept. 1, 2022).

[15] *See* Exhibit I, Mississippi Medical Exemption Request Form; *also available at* https://msdh.ms.gov/msdhsite/index.cfm/14,6296,71,pdf/MedicalExemptionRequest_139.pdf (last visited Sep. 1, 2022).

[16] *See* fn. 14 (emphasis in original).

31

115.    While Mississippi forbids even submitting a religious exemption request, the State

has granted 1,970 medical exemptions over the past six years.[17]

## COUNT

### 42 U.S.C. § 1983 – VIOLATION OF PLAINTIFFS' FIRST AMENDMENT FREE EXERCISE RIGHTS WITH RESPECT TO PLAINTIFFS' SINCERELY HELD RELIGIOUS BELIEFS

116.    Plaintiffs incorporate the allegations in the foregoing paragraphs as if set forth fully

herein.

117.    The First Amendment of the U.S. Constitution provides that: "Congress shall make

no law respecting an establishment of religion, or prohibiting the free exercise thereof."  This

clause has been incorporated against the states.  *Cantwell v. Connecticut*, 310 U.S. 296 (1940).

118.    Parents have the right to "direct the religious upbringing of their children" and

"when the interests of parenthood are combined with a free exercise claim […] more than merely

a 'reasonable relation to some purpose within the competency of the State' is required to sustain

the validity of the State's requirement under the First Amendment." *Wisconsin v. Yoder*, 406 U.S.

205, 233 (1972).

119.    Courts should not inquire into the validity or plausibility of a person's beliefs;

instead, the task is to determine whether "the beliefs professed [] are sincerely held and whether

they are, in [a believer's] own scheme of things, religious." *United States v. Seeger*, 380 U.S. 163,

185 (1965).

---

[17] *See* Exhibit J, Mississippi Department of Health School Immunization Report, 2021-2022, *also available at* https://msdh.ms.gov/msdhsite/_static/resources/18774.pdf (stating that 418 medical exemptions were granted in 2021; 374 in 2020; 382 in 2019; 333 in 2018; 255 in 2017; and 208 in 2016) (last visited Sept. 1, 2022).

120.    Plaintiffs' sincerely held religious beliefs that prohibit them from vaccinating their minor children have been unconstitutionally burdened by the State of Mississippi.  Plaintiffs' attempts to enroll their children in school with a religious exemption request were rejected.

121.    Mississippi has pitted Plaintiffs' consciences against educating their children. Mississippi has created a system of public education whereby it guarantees an education to every student.    *See, e.g., Hill ex rel. Hill v. Rankin County, Miss. Sch. Dist.*, 843 F.Supp. 1112, 1117 (S.D. Miss. 1993).  The Mississippi Supreme Court has held that "the right to a minimally adequate public education created and entailed by the laws of this state is one we can only label fundamental" and that the "right to a public education is a fundamental right protected by states." *Clinton Mun. Separate Sch. Dist. v. Byrd*, 477 So.2d 237, 240 (Miss. 1985).  Nevertheless, Plaintiffs' children cannot obtain a formal education without violating their religious convictions.

122.    The Free Exercise Clause of the First Amendment protects against "indirect coercion or penalties on the free exercise of religion, not just outright prohibitions." *Carson v. Makin*, 142 S. Ct. 1987 (2022) (quoting *Lyng v. Northwest Indian Cemetery Protective Assn.*, 485 U. S. 439, 450 (1988).  "In particular, we have repeatedly held that a State violates the Free Exercise Clause when it excludes religious observers from otherwise available public benefits." *Id.*

123.    However, Mississippi families with secular, medical motivations for declining compulsory immunization can be exempted from the same requirements.

124.    The State of Mississippi has made an unconstitutional value judgment that secular (*i.e.*, medical) motivations for opting out of compulsory immunization are permitted, but that religious motivations are not.

125.    While Mississippi may have a general healthcare interest in promoting childhood immunization, the First Amendment's Free Exercise Clause prohibits the government from enacting non-neutral and non-generally applicable legislation unless it is narrowly tailored to a compelling government interest.  The Free Exercise Clause "protects not only the right to harbor religious beliefs inwardly and secretly.  It does perhaps its most important work by protecting the ability of those who hold religious beliefs of all kinds to live out their faiths in daily life through the performance of (**or abstention from**) physical acts." *Kennedy v. Bremerton Sch. Dist.*, No. 21-418, 2022 U.S. LEXIS 3218, at *25-26 (June 27, 2022) (emphasis added).

126.    A government policy will not qualify as neutral if it is "specifically directed at . . . religious practice."  *Id*. at *27.  A policy can fail this test if it "discriminate[s] on its face," or if a religious exercise is otherwise its "object." *Id.*

127.    For multiple reasons, Mississippi's Compulsory Vaccination Law is neither neutral nor generally applicable.  Government regulations "are not neutral and generally applicable, and therefore trigger strict scrutiny under the free exercise clause of the First Amendment, whenever they treat **any** comparable secular activity more favorably than religious exercise." *Tandon*, 141 S. Ct. at 1296.

128.    Whether two activities are comparable for purposes of the free exercise clause depends on "the asserted government interest that justifies the regulation at issue." *Id.*  Here, with regard to regulating the conduct of its secular and religious citizens, the government holds the same interest in preventing disease.  Further, the secular and religious activities at issue are not only comparable, but they are also exactly the same (seeking exemption from compulsory vaccination).

34

129.     Additionally, the government "fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Fulton,* 141 S. Ct. at 1877 (internal citations omitted).  Mississippi's elevation of secular objections above religious objections is not the result of random happenstance, but rather of deliberate exclusion. The Mississippi Legislature intentionally erased a pre-existing religious exemption, and in close temporal proximity enacted a medical exemption to the Compulsory Vaccination Law.

130.     Even if Mississippi could show that it did not target religious conduct for intentional exclusion (it cannot), its mandatory immunization regulations invoke heightened scrutiny because the statute fails the general applicability test.

131.     A law "lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Id.*  While Mississippi may have a general healthcare interest in promoting childhood vaccination, its interest is not so extraordinary as to prohibit an exemption for secular reasons, which poses a similar contagion hazard as a hypothetical religious exemption.  Further, Mississippi does not prohibit unvaccinated children from attending camp, visiting public libraries or museums, or from interacting with their peers in any other way.  Nor does Mississippi require that adult faculty, staff members, or school visitors provide proof of immunization.

132.     Mississippi's vaccination laws fail the general applicability test on additional, alternative grounds because the medical exemption system provides for individualized discretionary review.  "The creation of a formal mechanism for granting exceptions renders a policy not generally applicable . . . ." *Id.* at 1879.

133.     In such instances, the government may not refuse to extend the possibility for an exemption "to cases of religious hardship without compelling reason."  *Id.* at 1872.

134.    Because its medical exemption process provides for discretionary review at multiple levels, Mississippi's Compulsory Vaccination Law fails the general applicability test. Mississippi has instituted a system of customized review – delegated first to private physicians and second to the State Epidemiologist and Deputy State Epidemiologist – who at each level conduct individualized review of every exemption in order to make a determination.

135.    Therefore, for multiple reasons, Mississippi's Compulsory Vaccination Law invokes heightened judicial scrutiny.

136.    Mississippi's Compulsory Vaccination Law cannot withstand strict scrutiny because it is not narrowly tailored.  In the context of government regulations targeting infectious disease, "narrow tailoring requires the government to show that measures less restrictive of the First Amendment activity could not address its interest" in reducing disease.  *Tandon*, 141 S. Ct. at 1296-97.  Where utilization of such less restrictive means is required, the government "may no more create an underinclusive statute, one that fails truly to promote its purported compelling interest, than it may create an overinclusive statute, one that encompasses more protected conduct than necessary to achieve its goal."  *Lukumi,* 508 U.S. at 578.

137.    Regarding under-inclusivity, where the government permits secular activities, such as a medical exemption, "it must show that the religious exercise at issue is more dangerous." *Tandon*, 141 S. Ct. at 1297.

138.    When a law is over-inclusive, its "broad scope . . . is unnecessary to serve the interest, and the statute fails for that reason."  *Lukumi*, 508 U.S. at 578.

139.    Mississippi's Compulsory Vaccination Law cannot withstand heightened scrutiny because it is both over-inclusive and under-inclusive relative to the state interests it purportedly attempts to achieve.  Instead of regulating with the surgical precision necessary to avoid conflict

with its citizens' free exercise rights, Mississippi has deployed a blunt legislative hammer and, in one stroke, obliterated every possibility for religious observance.

140.   Mississippi's compulsory immunization scheme is under-inclusive because it only applies to children in a school setting.  The mandate does not apply to non-school attending children (who regularly and unavoidably interact with their peers) nor to adults in the state, who comprise over 76% of Mississippi's population.[18]

141.   The Compulsory Vaccination Law is also under-inclusive because children possessing a religious exemption would pose no greater threat than their secular peers with a medical exemption.  Moreover, the immunization requirements do not apply to adults who are employed in Mississippi's school system, or to school visitors.

142.   Further, the existence of a religious exemption for attending school would have an immaterial impact in the number of individuals vaccinated in Mississippi overall given that it does not apply to adults.  Nor would the existence of a religious exemption materially impact the overall percentage of vaccinated school children.

143.   Given that Mississippi boasts of the highest vaccination rates in the country,[19] allowing a religious exemption for a handful of students, just as secular medical exceptions are permitted, would constitute an actual attempt at narrow tailoring.

---

[18] *See* U.S. CENSUS BUREAU, *QuickFacts Mississippi*, https://www.census.gov/quickfacts/MS (stating that 76.5% of Mississippi's population is over the age of 18) (last visited Sept. 1, 2022).

[19] *See* MISSISSIPPI DEPARTMENT OF HEALTH, *What Parents Should Know About Childhood Immunization*, http://www.msdh.state.ms.us/msdhsite/_static/14,15556,71.html ("Mississippi has one of the most successful childhood immunization programs in the nation . . . . [where] over 99% of children who enter kindergarten" are vaccinated) (last visited Sept. 1, 2021); *see also* CENTERS FOR DISEASE CONTROL, *CDC Morbidity and Mortality Weekly Report*, *Vaccination Coverage and Selected Vaccines and Exemption Rates Among Children in Kindergarten*, https://www.cdc.gov/mmwr/volumes/71/wr/mm7116a1.htm (stating that only **.**1% of Mississippi kindergarteners possess a medical exemption) (last visited Sept. 1, 2022).

144.    Because Mississippi's Compulsory Vaccination Law is simultaneously too narrow and too broad to fulfill the government interests in supposedly attempts to accomplish, the regulation lacks the narrow tailoring necessary to survive strict scrutiny review.

145.    Accordingly, the presence of a medical exemption and the intentional removal of a religious exemption through the Compulsory Vaccination Law, has violated and continues to violate Plaintiffs' rights to free exercise of religion under the First Amendment.

146.    "The loss of First Amendment freedoms, for even minimal periods of time unquestionably constitutes irreparable injury." *U.S. Navy Seals*, 27 F.4th at 348 (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  Because of Defendants' actions, Plaintiffs have suffered and continue to suffer irreparable harm.

147.    Absent injunctive and declaratory relief against Miss. Code § 41-23-37 and injunctive relief against Defendants, Plaintiffs will have been and will continue to be harmed.

148.    Plaintiffs are entitled to a declaration that Defendants violated their First Amendment rights to free exercise of religion and an injunction against Defendants' actions as they relate to Mississippi's Compulsory Vaccination Law.  Additionally, Plaintiffs are entitled to the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

## INJUNCTIVE RELIEF ALLEGATIONS

149.    Plaintiffs incorporate the allegations in the foregoing paragraphs as if set forth fully herein.

150.    Plaintiffs allege that both on its face and as applied, the Compulsory Vaccination Law violates their First Amendment rights and their right to be free from unlawful statutes.

151.    Plaintiffs are being and will continue to be irreparably harmed unless this Court enjoins Defendants from enforcing the Compulsory Vaccination Law.

152.    Plaintiffs have no plain, speedy, and adequate remedy at law to prevent Defendants from enforcing the Compulsory Vaccination Law.

153.    If not enjoined by this Court, Defendants will continue to implement and enforce the Compulsory Vaccination Law in violation of Plaintiffs' constitutional rights.

154.    Accordingly, injunctive relief is appropriate.

## DECLARATORY RELIEF ALLEGATIONS

155.    Plaintiffs incorporate the allegations in the foregoing paragraphs as if set forth fully herein.

156.    Plaintiffs are entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201. An actual and substantial controversy exists between Plaintiffs and Defendants as to their legal rights and duties with respect to whether Mississippi's Compulsory Vaccination Law, which allows for secular but not religious exemptions, violates the United States Constitution.

157.    The case is presently justiciable because the Compulsory Vaccination Law and absence of any religious exemption to the same applies to Plaintiffs and their children, who are currently harmed by being excluded from school.

158.    Declaratory relief is therefore appropriate to resolve this controversy.

## PRAYER FOR RELIEF

Pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, it is appropriate and proper that a declaratory judgment be issued by this Court, declaring that the Compulsory Vaccination Law is unconstitutional.  Pursuant to 28 U.S.C. § 2202 and Fed. R. Civ. P. 65, it is appropriate and hereby requested that the Court issue preliminary and permanent injunctions prohibiting Defendants from enforcing the Compulsory Vaccination Law.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment against Defendants and provide Plaintiffs with the following relief:

A.   A preliminary and permanent injunction prohibiting Defendants, their agents, servants, employees and any other persons acting on their behalf from implementing and enforcing the Compulsory Vaccination Law challenged in this Complaint without providing the option for a religious exemption;

B.   Declare that Miss. Code § 41-23-37 is unconstitutional on its face;

C.   Declare that Miss. Code § 41-23-37 is unconstitutional as applied to Plaintiffs;

D.   Declare that Miss. Code § 41-23-37 violates Plaintiffs' First Amendment right to free exercise of religion;

E.   Grant Plaintiffs reasonable attorneys' fees and costs under 42 U.S.C. § 1988 and any other applicable authority; and

F.   For any such other and further relief as the Court deems equitable and just under the circumstances.

Dated: September 1, 2022.

Respectfully submitted,

SIRI & GLIMSTAD LLP

/s/ *Walker D. Moller*
Walker D. Moller, Attorney
Mississippi Bar Number: 105187
501 Congress Avenue
Suite 150 – #343
Austin, TX
Tel: (512) 265-5622
Fax: (646) 417-5967
wmoller@sirillp.com

Aaron Siri, Esq.*
Elizabeth A. Brehm, Esq.*
Catherine Cline, Esq.*
745 Fifth Ave, Suite 500
New York, NY 10151
Tel: (212) 532-1091
Fax: (646) 417-5967
aaron@sirillp.com
ebrehm@sirillp.com
ccline@sirillp.com

Christopher Wiest*
25 Town Center Blvd., Suite 104
Crestview, KY 41017
Tel: (513) 257-1895
Fax: (859) 495-0803
chris@cwiestlaw.com

*Attorneys for Plaintiffs*

*pro vac vice* to be submitted

## VERIFICATION OF AMANDA BOSARGE

I, Amanda Bosarge, a citizen of the United States and of Mississippi, have read the foregoing Complaint and know the contents thereof as to myself, that the same is true to my own knowledge and as to all other matters on information and belief and I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on this __1__ day of September 2022 in Moss Point, Mississippi.

Amanda Bosarge

**VERIFICATION OF JAQUELYN BUTLER**

I, Jaquelyn Butler, a citizen of the United States and of Mississippi, have read the

foregoing Complaint and know the contents thereof as to myself, that the same is true to my own

knowledge and as to all other matters on information and belief and I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on this   1   day of September 2022 in  Olive Branch , Mississippi.


_Jacquelyn Butler_

Jaquelyn Butler

## VERIFICATION OF KIMBERLY HARRELL

I, Kimberly Harrell, a citizen of the United States and of Mississippi, have read the foregoing Complaint and know the contents thereof as to myself, that the same is true to my own knowledge and as to all other matters on information and belief and I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on this ___ day of September 2022 in Brandon, Mississippi.

Kimberly Harrell

## VERIFICATION OF WILLIAM MORGAN

I, William Morgan, a citizen of the United States and of Mississippi, have read the foregoing Complaint and know the contents thereof as to myself, that the same is true to my own knowledge and as to all other matters on information and belief and I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on this 1st day of September 2022 in Senatobia , Mississippi.

William Morgan

## VERIFICATION OF PASTOR PAUL PERKINS

I, Paul Perkins, a citizen of the United States and of Mississippi, have read the foregoing

Complaint and know the contents thereof as to myself, that the same is true to my own

knowledge and as to all other matters on information and belief and I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on this *1ST* day of September 2022 in *Ocean Springs* Mississippi.

_____

Pastor Paul Perkins

## VERIFICATION OF BRANDI RENFROE

I, Brandi Renfroe, a citizen of the United States, have read the foregoing Complaint and know the contents thereof as to myself, that the same is true to my own knowledge and as to all other matters on information and belief and I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on this 1st day of September 2022 in Grand Bay, Alabama

Brandi Renfroe

**VERIFICATION OF DR. JEANA STANLEY**

I, Jeana Stanley, a citizen of the United States, have read the foregoing Complaint and know the contents thereof as to myself, that the same is true to my own knowledge and as to all other matters on information and belief and I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on this _1_ day of September 2022 in _____Biloxi, MS_____.


_Jeana Stanley, DPT_

Dr. Jeana Stanley