# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**AMANDA BOSARGE, individually and on behalf of their minor children, et al.,**

<em>Plaintiffs,</em>

-against-

**DANIEL P. EDNEY**, in his official capacity as the State Health Officer, et al.,

<em>Defendants.</em>

Civil Action No. 1:22-cv-00233-HSO-BWR

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR DECLARATORY RELIEF, SUMMARY JUDGMENT, AND PRELIMINARY AND PERMANENT INJUNCTION

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ..................................................................................ii

**INTRODUCTION** ........................................................................................1

**STATEMENT OF FACTS** .............................................................................2

**LEGAL STANDARD** ...................................................................................11

**ARGUMENT** .............................................................................................13

**I.    PLAINTIFFS POSSESS CLEAR ENTITLEMENT TO INJUNCTIVE RELIEF UNDER THE FIRST AMENDMENT'S FREE EXERCISE CLAUSE AND HAVE ESTABLISHED THAT THE CHALLENGED LAW FACIALLY VIOLATES THE FIRST AMENDMENT**

    A.  The Compulsory Vaccination Law is not Generally Applicable.............................14

        1.  The Compulsory Vaccination Law is not generally applicable because it permits secular conduct but prohibits religious observance............................................14
        2.  The Compulsory Vaccination Law is not generally applicable because it allows for individualized discretionary review.....................................................16
        3.  The Compulsory Vaccination Law is not generally applicable because it treats secular conduct more favorably than comparable religious exercise................17

    B.  The Compulsory Vaccination Law is not Neutral....................................................18

        1.  The statute is not neutral because it favors secular conduct above comparable religious exercise...........................................................................18
        2.  The statute lacks neutrality because it codified the *Brown* decision, a case that explicitly targeted religious observance for elimination....................................20

    C.  The Compulsory Vaccination Law Will not Survive Strict Scrutiny.....................24

**II.   THE REMAINING PRELIMINARY INJUNCTION FACTORS FAVOR RELIEF**

    A.  Plaintiffs have Suffered and Continue to Suffer Irreparable Injury.......................27

    B.  The Balance of Harms and the Public Interest in Protecting Civil Liberties Weigh in Favor of Injunctive Relief.......................................................................29

**III.  CONCLUSION**.............................................................................................30

i

# TABLE OF AUTHORITIES

**Page**

*Amoco Prod. Co. v. Village of Gambell*,
    480 U.S. 531 (1987) ........................................................................12

*Armstrong v. Bd. of Educ.*,
    323 F.2d 333 (5th Cir. 1963) .........................................................12

*Awad v. Ziriax*,
    670 F.3d 1111 (10th Cir. 2012) .....................................................29

*Boone v. Boozman*,
    217 F. Supp. 2d 938 (E.D. Ark. 2002) ..........................................23

*Brown v. Stone*,
    378 So. 2d 218 (Miss. 1979) ................................................. *passim*

*BST Holdings, LLC. v. OSHA*,
    No. 21-60845 (5th Cir. Nov. 12, 2021) ..........................................25

*BST Holdings, LLC. v. OSHA*,
    17 F.4th 604 (5th Cir. 2021) ....................................................28, 29

*Byrum v. Landreth*,
    566 F.3d 442 (5th Cir. 2009) .........................................................11

*Canal Authority of the State of Florida v. Callaway*,
    489 F.2d 567 (5th Cir. 1974) .........................................................12

*Cantwell v. Connecticut*,
    310 U.S. 296 (1940)........................................................................13

*Carson v. Makin*,
    142 S. Ct. 1987 (2022) ...................................................................19

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)........................................................................12

*Church of the Lukumi Babalu Aye, Inc., v. City of Hialeah*,
    508 U.S. 520 (1993) ............................................................. *passim*

*Clinton Mun. Separate Sch. Dist. v. Byrd*,
    477 So.2d 237 (Miss. 1985) ........................................................4, 20

*Dahl v. Bd. of Trs. of W. Mich. Univ.*,
   15 F.4th 728 (6th Cir. 2021) ...................................................................9, 17

*Elrod v. Burns*,
   427 U.S. 347 (1976) .................................................................................27

*Employment Div., Dep't of Human Resources of Ore. v. Smith*,
   494 U.S. 872 (1990) .............................................................6, 14, 16, 21

*Everson v. Board of Ed. of Ewing*,
   330 U. S. 1 (1947) ....................................................................................20

*ExxonMobil Pipeline Co. v. Landry*, No.
   15-824-JWD-EWD, 2016 U.S. Dist. LEXIS 8713 (M.D. La. Jan. 26, 2016) .................13

*Fraternal Order of Police v. Newark*,
   170 F.3d 359 (3d Cir. 1999) ......................................................................9

*Fulton v. City of Philadelphia*,
   141 S. Ct. 1868 (2021) ................................................................ *passim*

*Goss v. Lopez*,
   419 U.S. 565 (1975) ..........................................................................20, 28

*Hawk Aircargo Inc., v. Chao*,
   418 F.3d 453 (5th Cir 2005) ....................................................................10

*Hill v. Rankin County, Miss. Sch. Dist.*,
   843 F. Supp. 1112 (S.D. Miss. 1993) ..................................................20, 28

*Hobbie v. Unemployment Appeals Comm'n*,
   480 U.S. 136 (1987) .................................................................................14

*Jackson Women's Health Org. v. Currier*,
   760 F.3d 448 (5th Cir. 2014) ...................................................................29

*Justin Indus., Inc. v. Choctaw Secs., L.P.*,
   920 F.2d 262 (5th Cir. 1990) ....................................................................12

*Klaassen v. Trs. of Ind. Univ.*,
   7 F.4th 592 (U.S. 7th Cir. 2021) ..............................................................17

*Kennedy v. Bremerton Sch. Dist.*,
   142 S. Ct. 2407 (2022) ............................................................................21

*Marett v. Scott*,
Civil Action No. 2:99cv244-D-B,
2000 U.S. Dist. LEXIS 5356 (N.D. Miss. Apr. 7, 2000) ..................................13

*Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*,
138 S. Ct. 1719 (2018) ...........................................................................14, 21

*Nken v. Holder*,
556 U.S. 418 (2009) ...........................................................................................29

*Roberts v. Neace*,
958 F.3d 409 (6th Cir. 2020) .........................................................................18

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
141 S. Ct. 63 (2020) ..............................................................................7, 19, 21

*Sherbert v. Verner*,
374 U.S. 398 (1963) ...........................................................................................19

*Stormans v. Selecky*,
586 F.3d 1109 (9th Cir. 2009) .......................................................................22

*Tandon v. Newsom*,
141 S. Ct. 1294 (2021) ........................................................................... *passim*

*Thomas v. Review Bd. of Indiana Employment Security Div.*,
450 U.S. 707 (1981) ...........................................................................................14

*Thoms v. Maricopa Cty. Cmty. Coll. Dist.*,
No. 2:21-CV-01781-SPL, 2021 WL 5162538 (D. Ariz. Nov. 5, 2021) ..........................15

*United States v. Seeger*,
380 U.S. 163, 185 (1965) ...............................................................................14

*Usn Seals 1-26 v. Biden*,
578 F. Supp. 3d 822 (N.D. Tex., Jan 2, 2022) .............................................8, 24

*U.S. Navy Seals 1-26 v. Biden*,
27 F.4th 336 (5th Cir. 2022) .....................................................................8, 11, 15

*W. Va. State Bd. of Educ. v. Barnette*,
319 U.S. 624 (1943) .............................................................................................2

*Wisconsin v. Yoder*,
406 U.S. 205 (1972) ...........................................................................................13

## STATUTES

Miss. Code Ann. § 21-13-91 ...............................................................................5, 28

Miss. Code § 37-1-2...........................................................................................................

Miss. Code § 37-13-91..................................................................................3, 5, 28

Miss. Code § 41-23-37 ..........................................................................................*passim*

Miss. Code § 97-5-39.................................................................................5, 20, 28

Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb *et seq*.............................................8

## OTHER AUTHORITIES

ALABAMA DEPARTMENT OF HEALTH, *2019-2020 School Entry Survey,*
https://www.alabamapublichealth.gov/Immunization/assets/2020schoolsurvey_county.pdf
(last visited Sept. 2, 2022) .......................................................................................27

CENTERS FOR DISEASE CONTROL, *Vaccination Coverage and Selected Vaccines and Exemption
Rates Among Children in Kindergarten,*
https://www.cdc.gov/mmwr/volumes/71/wr/mm7116a1.htm (last visited Sept. 2, 2022) .......27

MISSISSIPPI DEPARTMENT OF HEALTH, *Medical Exemption Policy,* available at
https://msdh.ms.gov/msdhsite/index.cfm/14,0,71,688,html (last visited Sept 2, 2022)  ....10, 15

MISSISSIPPI DEPARTMENT OF HEALTH, *Mississippi Medical Exemption Request Form,*
https://msdh.ms.gov/msdhsite/_static/14,0,71,688.html (last visited Sept. 2, 2022)..........10, 17

NATIONAL CONFERENCE OF STATE LEGISLATURES, *States with Religious and Philosophical
Exemptions from School Immunization Requirements,*
https://www.ncsl.org/research/health/school-immunization-exemption-state-laws (last visited
Sept. 2, 2022) ...........................................................................................................6

PEW RESEARCH CENTER, *How religious is you state?* https://www.pewresearch.org/fact-
tank/2016/02/29/how-religious-is-your-state/?state=alabama (last visited Sept. 2, 2022)...............27

U.S. CENSUS BUREAU, *QuickFacts Mississippi,* https://www.census.gov/quickfacts/MS
(last visited Sept. 2, 2022)……………………………………………………………….25

U.S. CENSUS BUREAU, *QuickFacts QuickFacts Alabama,* https://www.census.gov/quickfacts/AL
(last visited Sept. 2, 2022)……………………………………………………………….27

## INTRODUCTION

The issue presented to this Court is purely a question of law, namely, whether the State of Mississippi can exclude from school the children of families with religious convictions that conflict with the State's vaccine requirements, while simultaneously allowing secular families to be exempt from these requirements on medical grounds. Because, on its face, this policy violates the First Amendment, Plaintiffs request preliminary and permanent injunctive relief, as well as summary judgment and declaratory relief.

As a threshold matter, it bears emphasizing that this is not a typical injunction motion that seeks immediate relief until a hearing on the merits. This case is unique in that the material facts are settled, and the matter is ripe for final resolution. Under Supreme Court precedent, Mississippi's statutory scheme of allowing medical exemptions – and discretionary review of those exemption requests – while prohibiting the possibility for religious exemptions is flagrantly unconstitutional under the First Amendment's Free Exercise Clause.

Under Miss. Code § 41-23-37, Mississippi enacted a secular medical exemption to its mandatory immunization requirements (the **"Compulsory Vaccination Law"**). Mississippi's medical exemption scheme involves an individualized discretionary review process whereby state officials can accept or deny exemption requests. However, the government has explicitly excluded families with religious objections from the state-sanctioned vaccine exemption process. Recent Supreme Court cases make clear that this policy violates the Free Exercise Clause. Additionally, in the context of government attempts to control the spread of infectious diseases, recent Fifth Circuit and Supreme Court precedent have made clear that regulatory efforts that treat *any* secular conduct more favorably than similar religious activity triggers strict scrutiny review.

The Compulsory Vaccination Law does not withstand strict scrutiny because it is not narrowly tailored to the government interests it purportedly attempts to achieve (reducing the

1

transmission of infectious disease).  Mississippi's desire to curtail infectious diseases is not, as demonstrated by the medical exemptions they grant, so urgent as to preclude secular exemptions to the State's compulsory immunization requirements.  Moreover, Mississippi does not require adults who work in the school system to be vaccinated, and does not require proof of immunization for participation in any other activities.

Admittedly, Plaintiffs are amongst the miniscule fraction of Mississippians whose religious beliefs prevent them from vaccinating their children.  However, as has been repeatedly affirmed in some of our country's most consequential jurisprudence, constitutional protections unquestionably extend to minority groups.  As Justice Jackson declared when striking legislation forcing public school students to salute the American flag, including Jehovah's Witness children, whose religion forbade the salute:

> The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts. One's right to . . . freedom of worship . . . and other fundamental rights may not be submitted to vote; they depend on the outcome of no elections.

*W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638 (1943).

As outlined more fully below, Mississippi's campaign to eliminate all religious observance in the compulsory immunization arena by instituting an exemption process that permits secular but not religious exemptions violates the Constitution.  Plaintiffs thus facially challenge Miss. Code § 41-23-37.

## **STATEMENT OF FACTS**

### *A.  Plaintiffs' Sincerely Held Beliefs Prevent them from Vaccinating their Children.*

Plaintiffs possess deeply held religious beliefs that prohibit them from vaccinating their children.[1]  While the particulars of their beliefs differ, Plaintiffs are bound together in two significant regards: (1) their religious convictions that prevent them from vaccinating their children are deeply held and substantially burdened by the Compulsory Vaccination Law, and, (2) their decision to uphold their religious convictions has entailed significant sacrifices and caused irreparable harm.

Every Plaintiff has been negatively impacted by their decision to exercise their religious beliefs.  Pastor Paul Perkins, who is also a headmaster of a Mississippi private school, cannot send his daughter to that same school.  Under Mississippi law, Pastor Perkins would be subject to criminal prosecution if he enrolled his daughter in the school he oversees.  Plaintiffs Brandi Renfroe and Dr. Jeana Stanley work and own homes in Mississippi, but uprooted their families to another state so their children could be educated in Alabama (one of the forty-four states that permits religious exemptions to vaccination requirements).  Plaintiffs William Morgan and Kimberly Harrell anticipate needing to move to another state so their children can continue their educations.  Because their children have been barred from Mississippi's educational system, these Plaintiffs residing in Mississippi homeschool their children as it is the only educational option available to them.

Each Plaintiff attempted to enroll their children in Mississippi schools and were each rejected.  Mississippi requires children between the ages of six and seventeen to be enrolled in school. *See* Miss. Code § 37-13-91.  The Mississippi Supreme Court has held that "the right to a minimally adequate public education created and entailed by the laws of this state is one we can

---

[1] See Plaintiffs' Statements of Religious Beliefs, attached as Exhibits B through H; *see also* Compl., ¶¶15-86.

only label fundamental" and that the "right to a public education is a fundamental right protected by states." *Clinton Mun. Separate Sch. Dist. v. Byrd*, 477 So.2d 237, 240 (Miss. 1985). However, Plaintiffs' children have been barred from Mississippi's educational system because of their parents' religious beliefs. Plaintiffs' children are unable to access the practical and social benefits of a typical education that their secular peers enjoy. In short, without a religious exemption, Plaintiffs are deprived of the State's guarantee of a public education for their children unless they surrender their sincerely held religious beliefs.

### B. Background of Compulsory Childhood Vaccination in Mississippi.

In 1960, the Mississippi Legislature instituted certain vaccine requirements for school-age children and included a limited religious exemption. That religious exemption, however, was removed by the legislature in 1983 after the Mississippi Supreme Court, in *Brown v. Stone*, 378 So. 2d 218 (Miss. 1979), held that the existence of *any* religious exemption violated non-religious families' Fourteenth Amendment rights. *Id.* at 223. There was no such constitutional right, however, to be free from associating with unvaccinated children who possessed a medical exemption (which were available when *Brown* was decided). *Id.* at 219. The *Brown* court also did not rule that vaccinated children have a constitutional right to be free from associating with unvaccinated children or adults at church, the grocery store, or in local sports leagues.

Three years after the *Brown* decision, in 1983, the Mississippi Legislature, in a legislative formality, codified *Brown* and removed the religious exemption for school-aged children.[2] The Legislature did, however, codify secular medical exemptions, which are still available in Mississippi today. *See* Miss. Code Ann. § 41-23-37.

---

[2] Chapter 522, *Mississippi Laws of 1983* (removing religious exemptions from the school immunization requirement but instituting certain medical exceptions).

4

Notably, when enacting the medical exemption, Mississippi did not, or any time thereafter, enact vaccination requirements for adults, including those who work within the state's education system and schools, or for officials who work in the Mississippi Department of Health. Ensuing United States Supreme Court and federal district court decisions from the 1990's through present have invalidated the *Brown* ruling and Mississippi's resulting vaccination scheme that provides for medical but not religious exemptions.

School attendance is compulsory in Mississippi. Under Miss. Code § 37-13-91, the "custodian of . . . [a] school-age[d] child in [Mississippi] shall cause the child to enroll in and attend a public school or legitimate nonpublic school" and failure to comply with the law subjects the parent or guardian to potential criminal prosecution under Miss. Code § 97-5-39.  Under the Compulsory Vaccination Law, the state Health Officer has been delegated the responsibility to specify which vaccines are mandatory for school children, to oversee the immunization reporting requirements, and to administer the state's medical exemption program.  Under the statute, it is "the responsibility of the person in charge of each school to enforce the requirements for immunization." Miss. Code § 41-23-37.  Failure to enforce the compulsory vaccination requirements is a misdemeanor "punishable by fine or imprisonment or both." *Id.*

### C.   Developments Since Mississippi's Religious Exemption was Removed.

Since Mississippi revoked its religious exemption to the Compulsory Vaccination Law, there have been two critical developments that impact this case.  First, abortion and fetal cell entanglement in medical research have increased.  Second, and, more importantly, directly applicable constitutional jurisprudence has been fundamentally revised to require strict scrutiny review for situations virtually identical to the issues presented here.

Among other religious objections parents express, several childhood vaccines are made with aborted fetal cells.  Others depend on fetal cells for testing, design, and/or manufacture.

Almost all vaccines are otherwise made by manufacturers who profit from the use of aborted fetal cells. These aborted fetal cells would be illegal to harvest in Mississippi today under the state's abortion ban, and yet their continued use, and profit derived from an abortion, is condoned through the Compulsory Vaccination Law.

Beginning in the 1970s, commensurate with the institution of compulsory school vaccination requirements, states across the country began instituting or expanding religious exemptions to childhood vaccination laws. To date, forty-four states have legislation allowing school-age children to be exempt from mandatory vaccination laws for religious reasons,[3] and at least two other states have provisions grandfathering in children with a prior religious exemption.

Most importantly, after Mississippi removed its religious exemption and instituted medical exemptions to the Compulsory Vaccination Law, First Amendment jurisprudence fundamentally evolved. There have been five Supreme Court cases that are particularly relevant to the First Amendment issues at hand. Several lower court decisions have applied those decisions in situations very similar to this case.

Before *Emp't Div. v. Smith,* 494 U.S. 872 (1990), courts struggled with what level of judicial scrutiny to apply to free exercise claims. Because of the country's diversity of religious beliefs, almost every government regulation burdened, to some degree or another, a religious belief system. The *Smith* Court confronted this issue and held that laws that only "incidentally" burden religion expression ordinarily are not subject to strict scrutiny under the Free Exercise Clause, reasoning to do otherwise would be "courting anarchy." *Id.* at 888. However, the Court held that

---

[3] *See* NATIONAL CONFERENCE OF STATE LEGISLATURES, *States with Religious and Philosophical Exemptions from School Immunization Requirements,* https://www.ncsl.org/research/health/school-immunization-exemption-state-laws (last visited Sept. 2, 2022).

strict scrutiny would apply to laws that either were not **neutral** (because they targeted religious observance) or were not **generally applicable**.

A couple of years later, in *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993), the Court outlined the parameters of the neutrality and general applicability standards when examining a local ordinance that banned animal sacrifice, a practice of the Santeria faith. Because it appeared that the government had targeted religious observance for exclusion, and because the local government allowed similar secular conduct (absence of restrictions on how hunters were to dispose of an animal carcass), the Court applied strict scrutiny and struck the ordinance. *Lukumi*, 508 U.S. at 547.

More recently, the Supreme Court has protected Free Exercise rights in the face of state regulations related to infectious diseases. In *Tandon v. Newsom*, 141 S. Ct. 1294 (2021) (*per curiam*), the Supreme Court ruled that a law is not neutral and generally applicable, and thus invokes strict scrutiny review, if it treats "*any* comparable secular activity more favorably than religious exercise." *Id.* at 1296 (emphasis in original). In *Tandon,* California regulations intended to slow the spread of COVID-19 limited religious gatherings but treated comparable secular gatherings – such as getting haircuts and retail shopping – more favorably. *Id.* at 1297. The Court applied strict scrutiny and granted a preliminary injunction in favor of the religious plaintiffs. The Court employed similar reasoning in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020), holding that a New York regulation that prohibited religious gatherings but permitted similar secular gatherings violated the First Amendment where the secular and religious activities in question presented comparable contagion risks. *Id.* at 67.

A couple of months after its *Tandon* ruling, the Supreme Court examined the issue of whether a regulation is generally applicable where it provides for secular exceptions that are

unavailable to citizens with religious beliefs.  In *Fulton v. City of Philadelphia*, 141 S.Ct. 1868, 1878 (2021), the Court – in a 9-0 decision – held that the "creation of a formal mechanism for granting exceptions renders a policy not generally applicable" where that mechanism is unavailable to religious adherents.  In deciding to apply strict scrutiny, the Court observed that the regulation in question had a procedure that was subject to individualized review and approval at the "sole discretion" of a government official.  *Id.* at 1879.

Because of the COVID-19 pandemic and the variety of ensuing vaccination mandates, the *Tandon* and *Fulton* rulings have unsurprisingly received immediate attention in the federal courts. In *Usn Seals 1-26 v. Biden*, 578 F. Supp. 3d 822 (N.D. Tex., Jan 2, 2022), the federal government's mandatory COVID-19 vaccination requirements for the military were challenged by several Navy Seals who possessed religious objections to vaccination.  The policies at issue allowed both medical and religious exemptions but, in practice, the Navy was not granting religious exemptions while it was approving medical exemptions.  *Id*.  Applying *Tandon* and *Fulton*, the district court granted a preliminary injunction in favor of the Navy Seal plaintiffs, reasoning that, under the First Amendment's Free Exercise Clause, the policies were neither neutral nor generally applicable because they treated secular exemptions more favorably and because they invited "individualized assessment of the reasons why a servicemember is not vaccinated."  *Id.* at 31.  The Fifth Circuit Court of Appeals upheld the preliminary injunction in *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336 (5th Cir. 2022).  In that case, the Fifth Circuit concluded that processing and granting of medical exceptions, and refusal to accept religious exceptions on the same footing, rendered the policy invalid under both the Religious Freedom Restoration Act of 1993[4] ("**RFRA**") and the First Amendment.  *Id*.

---

[4] 42 U.S.C. §§ 2000bb *et seq.*

The Fifth Circuit has found that such favoritism to secular exemptions and distaste for religious exemptions is a form of prohibited discrimination. *See, e.g., Sambrano v. United Airlines, Inc.*, 2022 U.S. App. LEXIS 4347 (5th Cir. 2022). *See, e.g., Fraternal Order of Police v. Newark*, 170 F.3d 359 (3d Cir. 1999) (holding that rule allowing medical exemptions to police department's "no facial hair" policy, while prohibiting religious exemptions, violated the First Amendment).

In October of 2021, a few months after *Fulton* was decided, the Sixth Circuit Court of Appeals confronted a Western Michigan University COVID-19 vaccination requirement for student athletes that allowed for medical exemptions, and upheld a preliminary injunction against the policy after examining it under strict scrutiny. *Dahl v. Bd. of Trs. of W. Mich. Univ.*, 15 F.4th 728, 730 (6th Cir. 2021). The University had rejected all religious exemption requests and the district court issued a preliminary injunction in favor of the student athletes on grounds that the policy violated their free exercise rights. *Id.* Although the policy allowed for the possibility of a religious exemption, the Sixth Circuit Court of Appeals, applying *Fulton*, upheld the preliminary injunction for violation of their free exercise rights on grounds that both the religious and medical exemptions were to be "considered on an individual basis," triggering strict scrutiny, and religious exemptions were universally denied. *Id.* at 733.

### D.  Mississippi's Discretionary Medical Exemption Process.

Mississippi has instituted a discretionary exemption to the Compulsory Vaccination Law that benefits certain individuals (secular), and deliberately excludes others (non-secular). Students are not permitted to seek exemption from the required vaccines for religious reasons. However, students are permitted to seek a medical exemption from the required vaccines.

Through the plain language of the relevant statute, Mississippi has reserved discretion to accept or deny medical exemptions. The Compulsory Vaccination Law states: "A certificate of

exemption from vaccination for medical reasons may be offered on behalf of a child by a duly licensed physician and **may be accepted by the local health officer when, in his opinion,** such exemption will not cause undue risk to the community." Miss. Code § 41-23-37 (emphasis added). It offers no similar pathway for an exemption where the requirement substantially burdens a sincerely held religious belief.  Hence, while the plain language of the statute alone is sufficient to determine the issue of whether Mississippi has instituted an exemption scheme that includes individualized assessment, the process includes even more discretion than what may be apparent from the statute.

Mississippi has instituted a system that includes two levels of personalized discretionary review.  The state has delegated private health care providers discretion to determine what broad variety of circumstances are eligible for a medical exemption, and which are not.[5]  Acting on behalf of the state, these physicians conduct an individualized assessment of each potential medical exemption.  If and when the medical exemption form is signed by a physician, it is then submitted to the Department of Health, where it is then reviewed pursuant to the State's published Medical Exemption guidelines.[6]  The Medical Exemption Request Form instructs that requests will be "reviewed on a case by case basis."[7]  If the exemption is accepted, that student is permitted to attend school without having received all of the mandated vaccines.

---

[5]  *See* Exhibit J, Medical Exemption Request Form; *also available at* https://msdh.ms.gov/msdhsite/index.cfm/14,6296,71,pdf/MedicalExemptionRequest_139.pdf (last visited Sep. 2, 2022).

[6]  MISSISSIPPI DEPARTMENT OF HEALTH, *Medical Exemption Policy*, https://msdh.ms.gov/msdhsite/index.cfm/14,0,71,688,html (last visited Sept. 2, 2022). Courts may take judicial notice of information contained in official government websites under Rule 201 of the Federal Rules of Evidence. *See, e.g., Hawk Aircargo Inc., v. Chao,* 418 F.3d 453, 457 (5th Cir 2005).

[7] *See* Exhibit J.

The secular exemption process is unavailable to citizens with religious objections to compulsory vaccination.  For example, Plaintiff Brandi Renfroe called the Department of Health and requested that she be able to submit a religious exemption.  Health Department officials stated they would not accept her religious exemption request, nor would any school in the state, but that she could pursue a medical exemption.  *See* Compl. ¶ 46.  However, her children have no medical condition that would permit this.

Mississippi not only refuses to consider religious exemptions, which is sufficient under *Fulton*, 141 S.Ct. 1868 and *Navy Seals*, 27 F.4th 336 to trigger strict scrutiny, the State has taken the additional step to single out religious adherents specifically for worse treatment by publicly announcing that religious exemptions are categorically excluded from consideration.  In case there was any doubt, the Health Department's website states that it will consider medical exemptions, but not religious exemptions (exemption "**from required immunizations for religious, philosophical, or conscientious reasons is not allowed** . . . .").[8]  It is plain Mississippi's exclusion of religious objections was intentional rather than incidental.

## LEGAL STANDARD

Injunction: The movant seeking a preliminary injunction must establish: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest."  *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009).

---

[8]  MISSISSIPPI DEPARTMENT OF HEALTH, *Medical Exemption Policy*, https://msdh.ms.gov/msdhsite/index.cfm/14,0,71,688,html (last visited Sept. 2, 2022).

Summary Judgment: Plaintiffs also submit that there are no genuine issues of fact in this matter, and that they are entitled to judgment as a matter of law. Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court views the evidence in a light most favorable to the non-movant. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). The non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Consolidation on the merits: Because this matter involves only questions of law, Plaintiffs also seek consolidation of the trial on the merits with the preliminary injunction under FRCP 65(a)(2) – seeking a permanent injunction. The elements of a permanent injunction are essentially the same as those for a preliminary injunction "with the exception that the plaintiff must show actual success on the merits rather than a mere likelihood of success." *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987).

Regarding the first element in the preliminary injunction context, a heightened standard applies where, as here, a party requests a mandatory injunction seeking to upend the *status quo*. In such cases, the moving party must establish a "clear entitlement to relief." *Justin Indus.*, *Inc. v. Choctaw Secs.*, *L.P.*, 920 F.2d 262, 268 n.7 (5th Cir. 1990). While mandatory injunctions are granted in some circumstances, the Fifth Circuit has stated they are appropriate where the currently existing *status quo* is clearly causing irreparable injury. *See Canal Authority of the State of Florida v. Callaway*, 489 F.2d 567, 576 (5th Cir.1974) (when examining a request for a mandatory injunction, "the focus always must be on prevention of injury by a proper order, not merely on preservation of the *status quo*"); *see also Armstrong v. Bd. of Educ.*, 323 F.2d 333, 338 (5th Cir. 1963) (in case implicating constitutional rights, the Fifth Circuit entered an order upending the

*status quo* of school segregation); *Marett v. Scott*, Civil Action No. 2:99cv244-D-B, 2000 U.S. Dist. LEXIS 5356, at *12 (N.D. Miss. Apr. 7, 2000) (in case that did not implicate constitutional rights, mandatory injunction issued where the "currently existing *status quo*" was causing irreparable injury); *ExxonMobil Pipeline Co. v. Landry*, No. 15-824-JWD-EWD, 2016 U.S. Dist. LEXIS 8713, at *7 (M.D. La. Jan. 26, 2016) (same).

## ARGUMENT

### I.   PLAINTIFFS POSSESS CLEAR ENTITLEMENT TO INJUNCTIVE RELIEF UNDER THE FIRST AMENDMENT AND HAVE ESTABLISHED THAT THE CHALLENGED LAW FACIALLY VIOLATES THE FIRST AMENDMENT

Plaintiffs possess clear entitlement to relief because the Compulsory Vaccination Law fails the general applicability and neutrality tests on multiple fronts and therefore invokes strict scrutiny review.  The regulation cannot survive strict scrutiny because it is not narrowly tailored to achieve the State's goal of decreasing transmission of infectious diseases.

Before examining the issues of general applicability and neutrality, and whether the law can survive strict scrutiny, several foundational issues should be addressed first.

The First Amendment of the U.S. Constitution provides that: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."  This clause has been incorporated against the states.  *Cantwell v. Connecticut*, 310 U.S. 296 (1940).

Parents have the right to "direct the religious upbringing of their children" and "when the interests of parenthood are combined with a free exercise claim [...] more than merely a 'reasonable relation to some purpose within the competency of the State' is required to sustain the validity of the State's requirement under the First Amendment."  *Wisconsin v. Yoder*, 406 U.S. 205, 233 (1972).

The Supreme Court has repeatedly recognized that "[t]he free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires."

13

*Employment Div. v. Smith*, 494 U.S. 872, 877 (1990).  "In applying the Free Exercise Clause, courts may not inquire into the truth, validity, or reasonableness of a claimant's religious beliefs." *Hobbie v. Unemployment Appeals Comm'n*, 480 U.S. 136, 144 n.9, (1987).  The "guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect." *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 715-16 (1981).

"Courts are not arbiters of scriptural interpretation," *id.,* and should not inquire into the validity or plausibility of a person's beliefs; instead, the task is to determine whether "the beliefs professed [] are sincerely held and whether they are, in [a believer's] own scheme of things, religious."  *United States v. Seeger*, 380 U.S. 163, 185 (1965).

While the right of free exercise does not relieve citizens of their obligations to comply with a valid and neutral law of general applicability, "[t]he Free Exercise Clause commits government itself to religious tolerance," and a law that is not neutral or generally applicable "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *Lukumi*, 508 U.S. at 531-32.  Strict scrutiny review is triggered if the law in question either is not generally applicable, or if it lacks neutrality.  *See, e.g., Fulton,* 141 S. Ct. 1868, 1877 (lack of general applicability alone triggered strict scrutiny review); *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1729 (2018) (non-neutrality alone invoked strict scrutiny).

    **A.**    ***The Compulsory Vaccination Law is not Generally Applicable.***

The Compulsory Vaccination Law fails the general applicability test for three independent reasons:

    **1.  The Compulsory Vaccination Law is not generally applicable because it permits secular conduct but prohibits religious observance.**

The regulation in question is not generally applicable because it allows secular conduct but forbids similar religious conduct.  A law "lacks general applicability if it prohibits religious

conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton*, 141 S. Ct. 1868, at 1877 (citing *Lukumi*, 508 U.S. at 542-46).

It is undisputed that Mississippi enacted secular exceptions to its childhood vaccination program and openly prohibits religious exemptions. The Mississippi State Department of Health website, in bold font, states: "**[e]xemption from required immunizations for religious . . . reasons is not allowed under Mississippi law**."[9]

While Mississippi forbids even submitting a religious exemption request, the State has granted 1,970 medical exemptions over the past six years.[10] The Fifth Circuit recently upheld a preliminary injunction against the Navy's compulsory COVID-19 vaccination requirements, even though the Navy allowed service members to seek both medical and religious exemptions to the policy. *U.S. Navy Seals*, 27 F.4th 336, 339. The Navy had granted 17 medical exemptions to other Navy Seals but had not granted any religious exemptions. *Id.* at 348. The Fifth Circuit found a likely violation of RFRA and the First Amendment and upheld the injunction. *Id.* at 353.

This case presents more egregious constitutional violations than what was present in *Navy Seals.* The Navy had granted a handful of medical exemptions, and, at least in theory, allowed for religious exemptions to its compulsory vaccination policy. In contrast, Mississippi has granted 1,970 medical exemptions to its Compulsory Vaccination Law in the past six years, but outright prohibits its citizens from seeking religious exemption. *See also Thoms v. Maricopa Cnty. Cmty. Coll. Dist.*, No. CV-21-01781-PHX-SPL, at *16 (D. Ariz. Nov. 5, 2021) (concluding that a

---

[9] MISSISSIPPI DEPARTMENT OF HEALTH, *Medical Exemption Policy*, https://msdh.ms.gov/msdhsite/index.cfm/14,0,71,688,html (last visited Sept. 2, 2022).

[10] *See* Exhibit K, Mississippi Department of Health School Immunization Report, 2021-2022; *also available at* https://msdh.ms.gov/msdhsite/_static/resources/18774.pdf (stating that 418 medical exemptions were granted in 2021; 374 in 2020; 382 in 2019; 333 in 2018; 255 in 2017; and 208 in 2016).

college's COVID-19 vaccine policy was not generally applicable, triggering strict scrutiny under the First Amendment, because "Plaintiffs presented evidence . . . that Defendant has made at least one exception" to the policy).

Further, Mississippi cannot show that an unvaccinated child with a religious exemption undermines the State's asserted interests any more than an unvaccinated child with a medical exemption.

### 2. The Compulsory Vaccination Law is not generally applicable because it allows for individualized discretionary review.

The law in question fails the general applicability test on alternative grounds because the medical exemption system invites "the government to consider the particular reasons for a person's conduct by providing 'a mechanism for individualized exemptions.'" *Fulton*, 141 S. Ct. at 187 (quoting *Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 884 (1990)). "'[W]here the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of religious hardship without compelling reason.'" *Id.* (quoting *Smith*, 494 U.S. at 884).

It is undisputed that Mississippi has instituted a system of customized review for secular exemptions that is unavailable to citizens who possess religious objections to mandatory immunization. Through the plain language of the relevant statute, the State gave itself latitude to accept or deny secular exemptions on an individualized basis. The Compulsory Vaccination Law states: "A certificate of exemption from vaccination for medical reasons may be offered on behalf of a child by a duly licensed physician and **may be accepted by the local health officer when, in his opinion**, such exemption will not cause undue risk to the community." Miss. Code § 41-23-37 (emphasis added).

Further, Mississippi instituted a two-tiered system of customized review – delegated first to private physicians and second to the State Epidemiologist and Deputy State Epidemiologist –

who at each level conduct individualized assessment of every exemption request. Further confirming the discretionary nature of this process, the Medical Exemption Request Form itself states that medical exemption requests will be "reviewed on a case by case basis."[11]

The Sixth Circuit recently upheld a preliminary injunction against a university's COVID-19 vaccination mandate because the policy contained an individualized review process. *Dahl*, 15 F.4th 728, at 736. Even though the policy in question allowed for both medical and religious exemptions, the Sixth Circuit held that the policy was not generally applicable because the university had retained "discretion to extend exemptions in whole or in part." *Id.* In contrast, months before the *Dahl* decision, the Seventh Circuit held that the University of Indiana's vaccine mandate was neutral and generally applicable, and therefore subject to rational basis review, because it provided the possibility of a *non-discretionary* religious exemption to students. *Klaassen v. Trs. of Ind. Univ.*, 7 F.4th 592, 592 (U.S. 7th Cir. 2021).

### 3. The statute is not generally applicable because it treats secular conduct more favorably than comparable religious exercise.

Mississippi's mandatory vaccination program is not generally applicable for additional a third independent reason. Government regulations are not "generally applicable, and therefore trigger strict scrutiny under the free exercise clause of the First Amendment, whenever they treat *any* comparable secular activity more favorably than religious exercise." *Tandon*, 141 S. Ct. 1294, at 1296 (emphasis in original) (citations omitted). Whether two activities are comparable for purposes of the free exercise clause depends on "the asserted government interest that justifies the regulation at issue." *Id.* In the context of regulations seeking to minimize the spread of infectious

---

[11] *See* Exhibit J, Medical Exemption Request Form.

disease, comparability "is concerned with the risks various activities pose, not the reasons why" individuals engage in those activities.  *Id.*

Here, with regard to regulating the conduct of its secular and religious citizens, Mississippi holds the same interest in preventing infectious disease.  Further, the secular and religious activities at issue (non-vaccination) are not only comparable, they are exactly the same.  The reasons for opting out of compulsory immunization is the only thing that differs.  The government cannot "assume the worst when people [exercise their religion] but assume the best when people [engage in secular activities].'"  *Id.* at 1297 (quoting *Roberts v. Neace*, 958 F.3d 409, 414 (6th Cir. 2020) (per curiam)).

### B.     The Compulsory Vaccination Law is Not Neutral.

The regulation invokes strict scrutiny review on alternative grounds because it is not neutral.  It lacks neutrality for two distinct reasons:

####      1.     The statute is not neutral because it favors secular conduct above comparable religious exercise.

When examining whether a law has passed the neutrality test, "[f]acial neutrality is not determinative."  *Lukumi*, 508 U.S. 520, at 534.  The government violates its duty of neutrality not only in the rare occasions when it targets religious exercise for exclusion on the face of a regulation; non-neutrality is implied where the government treats *any* secular conduct more favorably than similar religious exercise.  *Tandon*, 141 S. Ct. at 1296.  In such instances, the regulation simultaneously fails both the general applicability and neutrality tests.  *See, e.g., Lukumi*, 508 U.S. at 531 ("Neutrality and general applicability are [interrelated], and . . . failure to satisfy one requirement is a likely indication that the other has not been satisfied"); *see also Tandon*, 141 S. Ct. at 1296 (government regulations "are not neutral and generally applicable and therefore trigger strict scrutiny under the free exercise clause of the First Amendment, whenever

18

they treat *any* comparable secular activity more favorably than religious exercise" (*citing Diocese of Brooklyn*, 141 S. Ct. at 67) (emphasis in original)).

The *Tandon* and *Diocese of Brooklyn* rulings are especially relevant because, like here, both cases confronted the tension between First Amendment free exercise rights and government attempts to counteract the spread of infectious disease.  The COVID-19 pandemic presented a dramatically greater and more imminent public health risk than what exists in this case.  Nonetheless, the *Tandon* Court struck down the regulation in question under the First Amendment because it restricted at-home religious exercise while permitting secular activities that posed similar risks of COVID-19 transmission.  *Id.* at 1297.  The Supreme Court reached a similar conclusion in *Diocese of Brooklyn*, holding that New York had violated its duty of neutrality under the First Amendment by restricting access to houses of worship while permitting access to secular facilities.  *Diocese of Brooklyn*, 141 S. Ct. at 66.

Again, the secular and religious activities at issue here (non-vaccination) are not only comparable, they are precisely the same.  It is immaterial that Mississippi also prohibits non-vaccination for other secular reasons – it "is no answer that a State treats some comparable secular businesses or other activities as poorly as or even less favorably than the religious exercise at issue." *Tandon*, 141 S. Ct. at 1296.  Consequently, considering these factors, the Compulsory Vaccination Law lacks neutrality.

Where a regulation fails the neutrality test, the government cannot exclude religious adherents from otherwise available public benefits.  *See, e.g., Carson v. Makin*, 142 S. Ct. 1987, 1996 (2022) (finding Maine's tuition assistance program was not neutral and striking it under the First Amendment because it paid for private school tuition, provided the schools were not religious); *see also Sherbert v. Verner*, 374 U. S. 398, 404 (1963) ("It is too late in the day to doubt

that the liberties of religion and expression may be infringed by the denial of or placing of conditions upon a benefit or privilege"); *see also Everson v. Board of Ed. of Ewing*, 330 U. S. 1, 16 (1947) (the government "cannot exclude" individuals "*because of their faith, or lack of it*, from receiving the benefits of public welfare legislation.")).

Here, the government has prohibited Plaintiffs' children from attending school if they persist in exercising their religious beliefs, even though Mississippi has guaranteed a free public-school education and requires that Plaintiffs educate their children. *See, e.g., Clinton School District*, 477 So.2d at 240 (the Mississippi Supreme Court held that "the right to a minimally adequate public education created and entailed by the laws of this state is one we can only label fundamental" and that the "right to a public education is a fundamental right protected by states"); *see also Hill v. Rankin County, Miss. Sch. Dist.*, 843 F. Supp. 1112, 1117 (S.D. Miss. 1993) (holding that that Mississippi Code Section 37-1-2 provides Mississippi schoolchildren the right to a free public education); *see also Goss v. Lopez,* 419 U.S. 565 (holding that when a state law creates a right to public education, that right becomes protected by the Due Process Clause of the Fourteenth Amendment).[12]   Mississippi goes far beyond merely excluding Plaintiffs from a publicly available benefit.  Plaintiffs are subject to criminal prosecution under Miss. Code § 97-5-39 if they fail to educate their children.  Yet, the State prohibits them from placing their children in the educational system should they maintain their religious beliefs.

> ### 2.    The statute lacks neutrality because it codified the *Brown* decision, a ruling that explicitly targeted religious observance for exclusion.

The Compulsory Vaccination Law lacks neutrality on separate grounds because it was enacted as a direct consequence of a state court decision whose stated objective was to eliminate

---

[12] To the extent Plaintiffs possess a fundamental right under the Fourteenth Amendment, that right overlaps with their First Amendment rights.

certain religious exercise.   In *Brown v. Stone,*[13] the Mississippi Supreme court held that *any* legislation permitting exemption to compulsory vaccination "because of [one's] religious" beliefs violated other citizen's constitutional rights.   *Brown,* 378 So. 2d at 223.   The *Brown* court, however, held that opting out of vaccination for secular reasons was valid.   Such reasoning would never pass constitutional muster today, and, ironically, under *Smith,*[14] *Lukumi,*[15] *Masterpiece Cakeshop,*[16] *Diocese of Brooklyn*,[17] and *Tandon,*[18] the *Brown* court's rationale provides smoking gun evidence of non-neutrality.

A government policy will not qualify as neutral if it is "specifically directed at . . . religious practice."   *Kennedy v. Bremerton Sch. Dist.,* 142 S. Ct. 2407 (2022) (citations omitted).   A policy can fail this test if it is facially discriminatory or if a religious exercise is otherwise its "object."   *Id.*   Thus, a law will be found to violate the Free Exercise Clause if it was enacted "because of," not merely "*in spite of*" its restrictions on religious practice.   *Lukumi*, 508 U.S. at 540.

Factors relevant to the assessment of governmental neutrality include "the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decisionmaking body."   *Masterpiece Cakeshop*, 138 S. Ct. at 1731 (citations omitted).   Because "it is virtually impossible to determine the singular motive of a collective legislative body," courts often assign less weight to this element. *Lukumi*, 508 U.S. at 558 (Scalia, J., concurring in part and concurring in the judgment); *see also*

---

[13] 378 So. 2d 218.

[14] 494 U.S. 872.

[15] 508 U.S. 520.

[16] 138 S. Ct. 1719.

[17] 141 S. Ct. 63.

[18] 141 S. Ct. 1294.

*Stormans v. Selecky*, 586 F.3d 1109, 1131 (9th Cir. 2009) ("while the analysis of legislative history is proper in the equal protection context, the law is unsettled regarding the scope of its consideration in the free exercise arena.").

But here the motivation is manifest. The Compulsory Vaccination Law, as it exists today, was enacted "because of" the Mississippi Supreme Court's extraordinary (and unconstitutional) decision to place proactive restrictions on religious exercise. The Legislature's subsequent removal of the State's limited religious exemption was a formality – it simply codified what the *Brown* court had effectively already decreed. The opinion itself provides conclusive evidence that eliminating religious exercise was the primary objective.

The *Brown* court confronted the simple issue of whether the First Amendment's Free Exercise Clause protected religious adherents not covered by the State's limited religious exemption. Far from shielding a legislative act (the limited religious exemption) from a constitutional challenge, the *Brown* court took the extraordinary additional step and unsheathed a sword against *all* religious adherents who maintained objections to compulsory vaccination, including those who had up to that date been protected under the statute. In fact, according to *Brown*, religious citizens who dared to attempt religious observance in the mandatory vaccination arena were themselves violating the Constitution. The court held that the presence of a religious exception "which would provide for the exemption of children of parents whose religious beliefs conflict with the immunization requirements, would discriminate against the great majority of children whose parents have no such religious convictions . . . and would result in a violation of the Fourteenth Amendment." *Brown,* 378 So. 2d. at 223. However, unvaccinated secular school children possessing medical exemptions (available at that time) somehow would not violate other children's Fourteenth Amendment rights.

22

That the *Brown* court explicitly targeted religious observance while shielding secular exemptions, and that the State Legislature thereafter removed the religious exemption, is fundamental to the First Amendment neutrality inquiry.  The Compulsory Vaccination Law, as it exists today, is a codification of the *Brown* holding.  Considering the disparate treatment of religious and secular activity in the plain language of the opinion, and the explicit targeting of religious observance for elimination, the singular object of the decision and the subsequent legislative removal was to eradicate certain religious exercise, in clear violation of subsequent U.S. Supreme Court decisions.  *See, e.g., Lukumi*, 508 U.S. at 542 (the First Amendment's neutrality requirements prohibit government actors from taking action that has "as their object the suppression of religion"); *see also Fulton*, 141 S. Ct. at 1877 (the government "fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature.").  Since 2013, the Mississippi Legislature has proposed bills on an annual basis that would establish a comprehensive religious exemption, but the constitutionality of enacting such legislation in Mississippi has been called into serious question because of the *Brown* decision, acting as a roadblock to passage of these bills.

However, forty-four states have codified religious or philosophical exemptions to childhood vaccination requirements, and not one of those statutes has been declared unconstitutional.  Moreover, an Arkansas federal district court examined a situation very similar to *Brown*, but arrived at the opposite conclusion.  Arkansas previously had a limited religious exemption similar to Mississippi's at issue in *Brown*.  In *Boone v. Boozman*,[19] and a mother who possessed religious objections unrecognized by the Arkansas statute challenged the limited religious exemption on First Amendment grounds.  *Boone v. Boozman*, 217 F. Supp. 2d 938, 951

[19] 217 F. Supp. 2d 938.

23

(E.D. Ark. 2002). In direct contrast *Brown*, the *Boozman* court held that the limitation of the statutory exemption to a "recognized church or religious denomination" violated the Free Exercise Clause. *Id.* Arkansas soon thereafter enacted a religious exemption, that is not limited to certain groups, which remains the law today.

In sum, for numerous independent reasons, Mississippi's Compulsory Vaccination Law is neither neutral nor generally applicable, and therefore triggers strict scrutiny review.

### C.    The Compulsory Vaccination Law will not Survive Strict Scrutiny.

A law burdening religious exercise "that is not neutral or not of general application must undergo the most rigorous of scrutiny." *Lukumi*, 508 U.S. at 546 (citations omitted). Such regulations can "survive strict scrutiny only if it advances "interests of the highest order" and is "narrowly tailored to achieve those interests." *Fulton,* 141 S. Ct. at 1881 (citations omitted). Moreover, "a law cannot be regarded as protecting an interest of the highest order when it leaves appreciable damage to that supposedly vital interest unprohibited." *Lukumi*, 508 U.S. at 547. It bears noting that where the government permits secular exceptions to a policy, it is the **burden of the government** to "show that the religious exercise at issue is more dangerous" than the secular exemptions if it is to deny religious exemptions. *Tandon*, 141 S. Ct. 1294 at 1297.

While Mississippi may have a meaningful interest in preventing the transmission of infectious disease, its interest is apparently not so compelling as to cause it to restrict secular exemptions to mandatory immunization. Courts have found the asserted compelling interest in preventing the spread of disease as not compelling where the government actor grants secular exceptions to the policy. *Usn Seals 1-26 v. Biden*, 578 F. Supp. 3d 822 (N.D. Tex., Jan 2, 2022).

Further, Mississippi's interest here is not nearly as urgent as the government's interest in controlling the spread of COVID-19. Yet, courts across the country – including the U.S. Supreme Court, on several occasions – have struck down government attempts to counteract the pandemic

where the regulations in question infringed upon First Amendment rights and were not narrowly tailored.

Even if the State's interests are sufficiently compelling, Mississippi's Compulsory Vaccination Law cannot withstand strict scrutiny because it is not narrowly tailored.  In the context of government regulations targeting infectious disease, "narrow tailoring requires the government to show that measures less restrictive of the First Amendment activity could not address its interest" in reducing transmission of the targeted disease.  *Id.* at 1296-97.  Where utilization of such less restrictive means is required, the government "may no more create an underinclusive statute, one that fails truly to promote its purported compelling interest, than it may create an overinclusive statute, one that encompasses more protected conduct than necessary to achieve its goal." *Lukumi*, 508 U.S. at 578.

Mississippi's Compulsory Vaccination Law cannot withstand heightened scrutiny because it is both over-inclusive and under-inclusive relative to the state interests it purportedly attempts to achieve.  Mississippi's compulsory immunization scheme is under-inclusive because it only applies to children in a school setting.  The mandate does not apply to non-school attending children (who regularly interact with their peers in other settings) nor to adults in the state, who comprise over 76% of Mississippi's population.[20]  Mississippi does not require adults to provide proof of vaccination for any activities, including employment in state government, accessing state parks or government buildings, or entering into any store, library, playground or restaurant.  Nor does Mississippi require proof of immunization for children to participate in recreational sports leagues or any other group children's activities.  *See BST Holdings, LLC. v. OSHA.*, No. 21-60845,

---

[20] *See* U.S. CENSUS BUREAU, *QuickFacts Mississippi*, https://www.census.gov/quickfacts/MS (stating that 76.5% of Mississippi's population is over the age of 18) (last visited Sept. 2, 2022).

13 (5th Cir., Nov. 12, 2021) ("underinclusiveness of this sort is often regarded as a telltale sign that the government's interest in enacting a liberty-restraining pronouncement is not in fact 'compelling.").

Even if the State's interest in immunizing its citizens could somehow logically be limited exclusively to children in a formal school setting, the law in question is still inescapably underinclusive because it permits medical exemptions. If children with a medical exemption can safely attend school, there is no reason a child with a religious exemption cannot as well. Mississippi cannot demonstrate that non-receipt of a vaccine for religious reasons poses any more risk to their objectives than does non-receipt of a vaccine for medical reasons. *See Tandon*, 141 S. Ct. at 1296, 1297 ("Comparability is concerned with the risks various activities pose . . . . Where the government permits other activities to proceed with precautions, it must show that the religious exercise at issue is more dangerous than those activities even when the same precautions are applied. Otherwise, precautions that suffice for other activities suffice for religious exercise too.").

The immunization scheme also fails to capture conduct necessary to achieve the government's apparently limited interest in controlling transmission only within school buildings because the requirements do not apply to adults who are employed in Mississippi's schools, or to school visitors.

Additionally, the Compulsory Vaccination Law is overbroad as Mississippi can achieve its goal of reducing the rates of communicable disease through less restrictive means. The existence of a religious exemption would have an immaterial impact in the number of individuals vaccinated in Mississippi overall. It also would be a miniscule, non-material percentage as compared to the number of vaccinated school children. For example, Alabama, tied with Mississippi as the most

religious state in the country,[21] and a state that is demographically very similar to Mississippi, has

a religious exemption to vaccination that is easy to obtain. Yet the total number of religious *and*

medical exemptions was less than 0.8 percent of all schoolchildren in Alabama in the 2020 school

year[22] and an even more miniscule .1% of the total population of Alabama.[23]   Similarly, the

medical and religious exemption rates are also minuscule and insignificant in the surrounding

states of Louisiana, Arkansas, and Tennessee,[24] each of which also have an easily obtained

religious exemption.

However, instead of regulating with the surgical precision necessary to avoid conflict with

its citizens' free exercise rights, Mississippi has deployed a blunt legislative hammer and, in one

stroke, obliterated every possibility for religious observance.   Accordingly, because it cannot

withstand strict scrutiny review, the Compulsory Vaccination Law is unconstitutional.

## II.      THE REMAINING PRELIMINARY INJUNCTION ELEMENTS FAVOR RELIEF

### A.      *Plaintiffs have Suffered and Continue to Suffer Irreparable Injury.*

Plaintiffs have endured irreparable injury.   "The loss of First Amendment freedoms, for

even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427

U.S. 347, 373 (1976).   That extends to the loss of "free exercise rights 'for even minimal periods

of time.'" *Tandon*, 141 S.Ct. 1294 at 1297.

---

[21]  *See* PEW RESEARCH CENTER, *How religious is you state?* https://www.pewresearch.org/fact-tank/2016/02/29/how-religious-is-your-state/?state=alabama (last visited Sept. 2, 2022).

[22]  *See* Exhibit L, Alabama Department of Public Health, 2019-20 School Entry Survey; *also available at* https://www.alabamapublichealth.gov/Immunization/assets/2020schoolsurvey_county.pdf

[23]  U.S. CENSUS BUREAU, *QuickFacts Alabama,* https://www.census.gov/quickfacts/AL  (last visited Sept. 2, 2022) (stating that Alabama's population is 5,039,877).

[24]  CENTERS FOR DISEASE CONTROL, *Vaccination Coverage and Selected Vaccines and Exemption Rates Among Children in Kindergarten – United States, 2020-21 School Year*, https://www.cdc.gov/mmwr/volumes/71/wr/mm7116a1.htm (last visited Sept. 2, 2022).

Here, the violation of Plaintiffs' First Amendment rights alone constitutes irreparable injury as a matter of law.  *Id*.  However, Plaintiffs have been irreparably harmed on additional fronts.  Plaintiffs' children are categorically evicted from the State's educational system, even though Mississippi's Constitution combined with the Fourteenth Amendment guarantees a free public-school education.  *See Hill*, 843 F. Supp. at 1117 (holding that that Mississippi Code Section 37-1-2 provides Mississippi schoolchildren the right to a free public education); *see also Goss v. Lopez*, 419 U.S. 565 (1975) (holding that when a state law creates a right to public education, that right becomes protected by the Due Process Clause of the Fourteenth Amendment).  Every Plaintiff attempted to obtain a religious exemption to the State's mandatory immunization policy, and all were summarily rejected.  Moreover, Plaintiffs are threatened with criminal prosecution under Miss. Code § 97-5-39 should they fail to educate their children.  Plaintiff Pastor Paul Perkins is subject to additional criminal prosecution under Miss. Code § 37-13-91 were he to enroll his daughter in the school where he serves as headmaster.

Further, Plaintiffs have endured significant practical and financial hardships for upholding their religious convictions.  Recently, the Fifth Circuit recognized that the OSHA vaccine mandate for employers with 100 or more employees "threatens to substantially burden the liberty interests of reluctant individual recipients put to a choice between their job(s) and their jab(s)."  *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021).  Every Plaintiff has suffered professionally for their decision to maintain their religious beliefs.  Plaintiffs Dr. Jeana Stanley and Brandi Renfroe uprooted their families and moved from Mississippi to Alabama so their children could be educated in a state that permits religious exemptions.  Plaintiffs Kimberly Harrell and William Morgan are preparing to move to another state so their children can obtain a formal education.  Plaintiffs William Morgan, Amanda Bosarge, Kimberly Harrell, and Pastor Paul

Perkins, at significant financial and professional costs, have been forced to homeschool their children, the only option Mississippi permits for children absent a medical condition.  *See BST Holdings*, 17 F.4th at 618 (determining burdens of certain regulatory compliance and monetary injuries as sufficiently irreparable).  Plaintiffs' injuries – past, ongoing, and imminent – cannot be remedied by a later-issued court order.

> **B.    The Balance of Harms and the Public Interest in Protecting Civil Liberties Weigh in Favor of Injunctive Relief.**

The balance of harms and public interest preliminary injunction factors likewise strongly favor an injunction.  "These factors merge when the Government is the opposing party."  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  An injunction will not disserve the public interest where "it will prevent constitutional deprivations."  *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 458 n.9 (5th Cir. 2014) (citing *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.")).

This axiom does not evaporate merely because the State invokes an interest in preventing the transmission of contagious diseases.  As outlined above, the Compulsory Vaccination Law not only fails strict scrutiny; Mississippi's lack of a religious exemption is manifestly irrational. Mississippi boasts one of the highest childhood vaccination rates in the country;  its interest is not so compelling as to forbid medical exemptions; the State does not require proof of immunization for adults (who constitute more than 76% of the state's population), out-of-state visitors, or for any other activities; and forty-four states, including all of Mississippi's adjacent neighbors, permit a religious exemption to their childhood immunization requirements.

Considering these factors, Mississippi cannot demonstrate that the public interest requires Mississippi families to discard their religious convictions, and their constitutional rights, so their children can benefit from a formal education.  Additionally, Mississippi cannot credibly argue the

public interest requires that the government to compound these constitutional and dignitary harms by causing Plaintiffs to continue suffering significant personal and professional sacrifices (including the threat of criminal prosecution) should they maintain their religious beliefs.

### CONCLUSION

The facts necessary to resolve this case are undisputed and Plaintiffs possess clear entitlement to declaratory and injunctive relief, and summary judgment in their favor. Mississippi prohibits religious exemptions, but permits discretionary secular exemptions to its mandatory immunization scheme. On its face, this policy violates the First Amendment. Accordingly, Plaintiffs respectfully request this Court to grant the motion for summary judgment, declaratory relief, and a preliminary or permanent injunction against the Compulsory Vaccination Law, to require the State to recognize religious exemptions in the same manner that it recognizes secular exceptions.

Dated: September 2, 2022

Respectfully submitted,

SIRI & GLIMSTAD LLP

/s/ *Walker D. Moller*
Walker Moller, Attorney
Mississippi Bar Number: 105187
501 Congress Avenue
Suite 150 – #343
Austin, TX 78701
Tel: (512) 265-5622
Fax: (646) 417-5967
wmoller@sirillp.com

Aaron Siri, Esq.*
Elizabeth A. Brehm, Esq.*
Catherine Cline, Esq.*
745 Fifth Ave, Suite 500
New York, NY 10151
Tel: (212) 532-1091
Fax: (646) 417-5967

aaron@sirillp.com
ebrehm@sirillp.com
ccline@sirillp.com

Christopher Wiest, Attorney*
25 Town Center Blvd., Suite 104
Crestview, KY 41017
Tel: (513) 257-1895
Fax: (859) 495-0803
chris@cwiestlaw.com

*Attorneys for Plaintiffs*

*pro hac vice* to be submitted