**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**AMANDA BOSARGE, individually and on behalf of their minor children, et al.,**

*Plaintiffs,*

-against-

**DANIEL P. EDNEY**, **in his official capacity as the State Health Officer, et al.,**

*Defendants.*

Civil Action No. 1:22-cv-00233-HSO-BWR

---

**MEMORANDUM OF AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO ATTORNEY GENERAL LYNN FITCH'S MOTION FOR JUDGMENT ON THE PLEADINGS OR, ALTERNATIVELY, TO DISMISS OR STAY PURSUANT TO *PULLMAN* ABSTENTION DOCTRINE [DKT. 39]**

---

**INTRODUCTION**

The central issue in this case is not in dispute because Plaintiffs and Defendant Attorney General Lynn Fitch ("**Defendant**") agree that Plaintiffs must be afforded "a religious exemption option" to vaccines mandated for school enrollment (Dkt. 39 at 1 ¶ 2), and that Miss. Code § 41-23-37 ("**the Compulsory Vaccination Law**") does not permit that option.

The only dispute is whether Plaintiffs should be forced to return to the same state court system that stripped Mississippians of their religious freedoms in the first place, or whether Plaintiffs may remain in this Court to seek relief under the First Amendment of the United States Constitution.  Defendant asks this Court to abstain from adjudicating Plaintiffs' well-pled First Amendment claim because Defendant contends the *Pullman* abstention doctrine, under *Railroad*

1

*Comm'n v. Pullman Co.*, 312 U.S. 496 (1941), requires that Plaintiffs instead initiate a separate litigation under the Mississippi Religious Freedom Restoration Act ("**MRFRA**") (Miss. Code Ann. § 11-61-1) in a Mississippi state court.

Defendant is incorrect.  The purpose of *Pullman* abstention is to avoid federal court error on a state law issue.  The concern is that if a federal court incorrectly interprets a state law, it could result in the federal court unnecessarily engaging in a constitutional analysis of the wrongly interpreted state law.  *Pullman* abstention should be rejected here because there is no risk that this Court can incorrectly interpret the law at issue in this case – the Compulsory Vaccination Law.  It clearly, as Defendant agrees, does not permit a religious exemption to its school vaccination requirements.  (*Infra* § A).

Moreover, *Pullman* abstention is only appropriate where there is an "unclear issue of state law" and the Compulsory Vaccination Law is clear and unambiguous in not permitting a religious exemption and that is the only statute being challenged in this case.  Defendant's attempt to point to the MRFRA does not change that reality nor the reality that the adoption of MRFRA has *not* guaranteed or even indicated that a religious exemption in Mississippi was even an option.  This is because the Mississippi Supreme Court, in *Brown v. Stone*, 378 So. 2d 218, 223 (Miss. 1979), has clearly held, in what is currently binding precedent in the state and in interpreting state law, **that there can be no state law that permits a religious exemption to school vaccination requirements as any such exemption would violate the Fourteenth Amendment**.  Hence, there is simply no "unclear issue of state law" – the law in Mississippi is clear that there is no religious exemption and there can be no religious exemption under state law.  (*Infra* § B).

*Pullman* abstention is also improper for a third independent reason – the challenged statute, the Compulsory Vaccination Law, is clearly unconstitutional under the First Amendment, both

facially and as applied, pursuant to the United States Supreme Court precedents in *Diocese of Brooklyn*, *Tandon,* and *Fulton.* 141 S. Ct. 63 (2020); 141 S. Ct. 1294 (2021); 141 S. Ct. 1868 (2021). These decisions make plain that because the Compulsory Vaccination Law provides for discretionary review of medical exemptions while prohibiting religious exemptions, this statute must be analyzed under strict scrutiny review. And the Compulsory Vaccination Law plainly cannot withstand strict scrutiny. As Defendant explained in her papers: "students must be offered the option of a religious exemption" because "[w]ithout a religious exemption option . . . the school vaccination scheme would substantially burden the rights of some people with sincerely-held religious objections," and that "[g]iven the prevalence of state laws providing for religious (or philosophical) exemptions from compulsory school vaccination laws in states across the country … it is not tenable to maintain that having no religious exemption option is 'the least restrictive means' of furthering a compelling governmental interest." (Dkt. 42 at 7) (citations omitted). (*Infra* § C).

*Pullman* abstention is also improper on the independent ground that it would create a state court exhaustion requirement for 42 U.S.C. § 1983 claims, which the United States Supreme Court has held is impermissible. If Defendant's argument is accepted, it would improperly create a state exhaustion requirement that would insulate the State of Mississippi from *any* direct action alleging a violation of free exercise under the First Amendment. (*Infra* § D). While any one of the four grounds standing alone renders *Pullman* abstention improper, the Fifth Circuit's totality of the circumstances approach for situations that don't have clear bars for abstention (as does exist here), it is otherwise clear that *Pullman* abstention is not appropriate. (*Infra* § E).

Defendant also argues that Plaintiffs' action should be dismissed under Rule 12(c) because MRFRA requires the state to offer Plaintiffs the option of a religious exemption and so Mississippi

law does not violate Plaintiffs' First Amendment rights.  But the Mississippi Supreme Court in *Brown*, which is the currently controlling precedent, has made clear that any state law, which would include MRFRA, that purports to provide a religious exemption to Mississippi's school vaccination requirement would violate the Fourteenth Amendment.  This is plainly why, despite the passage of MRFRA in 2014, there has been no change in Mississippi's official policy that a religious exemption is *not* permitted in Mississippi and why Plaintiffs' children continue to remain excluded from school despite making requests, in schools across the state, for a religious exemption.  The reality is that Plaintiffs have presented a well-pled complaint with factual allegations supporting a claim under the First Amendment that is plausible on its face and therefore, Defendant's motion to dismiss should be denied.  (*Infra* § II).

For all of these reasons and the reasons stated below, this case is properly before this Court and should remain here, is appropriately postured for injunctive relief, and is ripe for final resolution.  Accordingly, Plaintiffs respectfully request the Court to maintain jurisdiction over this matter and deny Defendant's petition to invoke the *Pullman* abstention doctrine.

## ARGUMENT

## I.    *PULLMAN* ABSTENTION DOES NOT APPLY AND IS OTHERWISE IMPROPER

### A.   *Pullman Abstention Is Not Applicable Because There Is No Risk That This Court Can Incorrectly Interpret the Law at Issue – the Compulsory Vaccination Law*

The purpose of *Pullman* abstention is to avoid federal court error on a state law question. *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236 (1984) ("[F]ederal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided.").  The concern is that if a federal court incorrectly interprets a state law, it could result in the federal court unnecessarily engaging in a constitutional analysis of the wrongly interpreted state law. *Id.*  As the Supreme Court has explained,

"*Pullman* abstention depends first and foremost upon an ambiguity in state law. . . . *Pullman* does not command district courts to abstain simply to permit state review of an unambiguous statute." *Lipscomb v. Columbus Mun. Separate Sch. Dist.*, 145 F.3d 238, 243 (5th Cir. 1998) (citing *City of Houston v. Hill*, 482 U.S. 451, 469 (1987).

Here, there is no risk of any error in interpreting the Compulsory Vaccination Law, which is the only statute at issue in this case.  This is because, by its express and unambiguous terms, it requires excluding a child from school who is not fully vaccinated absent a medical exemption. This law has been interpreted for decades by the State of Mississippi to prohibit religious exemptions.  No Mississippi state court has found otherwise.  Nor is it possible to see how this law could be read otherwise.  Thus, the very risk the *Pullman* abstention doctrine seeks to avoid does not exist in this case.  There simply is nothing ambiguous about the Compulsory Vaccination Law as it is clear on its face in prohibiting a religious exemption. *See Lamar Co., LLC v. City of Gulfport*, No. 1:08CV21-LG-RHW, 2008 U.S. Dist. LEXIS 120975, at *9 (S.D. Miss. May 13, 2008) (reasoning that *Pullman* abstention was improper because the constitutional claims asserted did not hinge on the interpretation of the challenged ordinance because the of plain language of the ordinance was unambiguous).

Moreover, as the Supreme Court has made clear that *Pullman* abstention is inappropriate where, as is the case here, a statute is attacked on its face as abridging the First Amendment:

> Abstention is, of course, the exception and not the rule, and we have been particularly reluctant to abstain in cases involving facial challenges based on the First Amendment.  We have held that "abstention . . . is inappropriate for cases [where] . . . statutes are justifiably attacked on their face as abridging free expression."  "In such case[s] to force the plaintiff who has commenced a federal action to suffer the delay of state-court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect."

*City of Houston v. Hill*, 482 U.S. 451, 467-68 (1987) (internal citations omitted).

This makes sense as "the aim of abstention is to obtain the correct solution to a difficult and important question of state law, **in order to facilitate the correct disposition of a federal lawsuit**." *Abstention Doctrine Today,* 125 U. Pa. L. Rev. 590, 602 (1977) (emphasis added). The disposition of this federal lawsuit does not rest on any unanswered question of Mississippi law. The question is whether the existing and clear Compulsory Vaccination Law violates the federal Constitution's First Amendment.

It is beyond argument that the Compulsory Vaccination Law unambiguously prohibits a religious exemption. Hence there is no concern a Mississippi state court would interpret the statute's plain language any differently than this Court. *See* Miss. Code § 41-23-37 ("Certificates of vaccination … shall be the only acceptable means for showing compliance with these immunization requirements" and the only exception is "for medical reasons … by a duly licensed physician."). This alone renders *Pullman* abstention inapplicable since the challenged statute is facially unambiguous and not susceptible to conflicting interpretations as contemplated under *Pullman. See, e.g.*, *City of Houston v. Hill,* 482 U.S. at 468 (holding that abstention was inappropriate in a First Amendment facial challenge to a municipal ordinance because the ordinance was unambiguous on its face).

Nonetheless, Defendant, in an attempt to invoke *Pullman*, has attempted to manufacture ambiguity where none exists. Defendant argues that, despite the Compulsory Vaccination Law's clear and unambiguous language, the Court should find that its clear terms can be ignored because of the existence of a separate statute, with separate rights, unrelated to the vaccination law: MRFRA. But Plaintiffs neither invoke nor challenge MRFRA as it is not the statute that is currently being relied upon by the State of Mississippi to exclude their children from school due

to their religious beliefs.  Nor has any defendant relied upon MRFRA to permit Plaintiffs' children to attend school.  Indeed, for years, Plaintiffs have waited and prayed their children would be able to attend school without violating their religious beliefs, and they are still, as of this writing, awaiting notification from any defendant or school in this state that their children can attend school without complying with the Compulsory Vaccination Law.  MRFRA has not changed that fact.

The reality is simple.  Despite attempts to enroll them in school, Plaintiffs' children remain excluded from all public and private schools throughout the state because of the Compulsory Vaccination Law, despite the passage of MRFRA in 2014.  (Dkt. 1, Verified Compl. at ¶¶ 18, 31, 32, 46, 56, 66, 86).  The passage of MRFRA has also not changed the Mississippi Department of Health's public position which, as stated in all bold on its website, is: "**Exemption from required immunizations for religious . . . reasons is not allowed under Mississippi law**." [1]

And as discussed in the next section, the reason that MRFRA is of no moment, and why the Compulsory Vaccination Law remains the unambiguous controlling law, is because the Mississippi Supreme Court has expressly held in *Brown* that the First Amendment does not afford a religious exemption to the Compulsory Vaccination Law *and* that any Mississippi law that provides for any religious exemption to the Compulsory Vaccination Law would violate the Fourteenth Amendment.  This precedent thus holds that neither MRFRA nor any other Mississippi state law can provide for a religious exemption without violating the Fourteenth Amendment.  In fact, this precise argument has been repeatedly made by representatives in the Mississippi legislature when opposing bills introduced over the last several years seeking to adopt a religious

---

[1] *See* Exhibit A, *Medical Exemption Policy*; *also available at* Mississippi State Department of Health, https://msdh.ms.gov/msdhsite/_static/14,0,71,688.html  (last visited Dec. 5, 2022).  Also, the Fifth Circuit has determined that courts may take judicial notice of governmental websites.  *See Hawk Aircargo, Inc. v. Chao*., 418 F.3d 453, 457 (5th Cir. 2005) (taking judicial notice of approval by the National Mediation Board published on the agency's website); *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (per curiam) (Fifth Circuit taking judicial notice of Texas agency's website).

exemption for attending school in Mississippi.  *See* Declaration of Jameson Taylor, Exhibit B at ¶ 4 ("In my conversations with [Mississippi] lawmakers and other policymaker, the Mississippi Supreme Court case of *Brown v. Stone* was definitively cited as a reason why legislation establishing a religious exemption to vaccination is not a viable option in Mississippi.").

Accordingly, the only question before this Court is whether the Compulsory Vaccination Law, on its face, and as it currently exists and is being implemented, violates the First Amendment. This Court is uniquely qualified to resolve this question, which is purely a matter of interpreting the United States Constitution.  And in adjudicating this question, the *Pullman* abstention doctrine simply does not apply because the Compulsory Vaccination Law unambiguously prohibits Plaintiffs' children from attending school despite their parents sincerely held religious beliefs to the contrary in blatant violation of Plaintiffs' First Amendment rights.  In other words, there is nothing ambiguous about the plain meaning, text, and real-world implementation of the Compulsory Vaccination Law for a state court to first resolve before this Court can adjudicate whether, on its face and as implemented for decades, it violates Plaintiffs' free exercise rights under the *First Amendment.*

### B.   MRFRA Also Does Not Otherwise Create an "Unclear Issue of State Law" Because Mississippi's Supreme Court Has Held the Fourteenth Amendment Prohibits Any State Law, including MRFRA, from Providing a Religious Exemption

Defendant's reliance on MRFRA in an attempt to create ambiguity with regard to the Compulsory Vaccination Law in order to invoke *Pullman* abstention also fails because MFRFA does not create any "unclear issue of state law."  *Moore v. Hosemann*, 591 F.3d 741, 745 (5th Cir. 2009) (for *Pullman* abstention to be appropriate, the case "must involve (1) a federal constitutional challenge to state action and (2) *an unclear issue of state law* that, if resolved, would make it unnecessary for [the federal court] to rule on the federal constitutional question." (emphasis added)

(citing *Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Committee*, 283 F.3d 650, 653 (5th Cir. 2002)).

The *Brown* decision, in which the Mississippi Supreme Court held that any religious exemption to school vaccine requirement would violate the Fourteenth Amendment, remains controlling precedent in Mississippi. *Brown*, 378 So. 2d at 223. MRFRA therefore does not create an "unclear issue of state law" because the Mississippi Supreme Court has categorically held that any state law that provided a religious exemption to school vaccination requirements would violate the Fourteenth Amendment.[2] *Id.* ("[T]he exemption of children of parents whose religious beliefs conflict with the immunization requirements, would discriminate against the great majority of children whose parent have no such religious convictions. To give it effect would result in a violation of the Fourteenth Amendment to United State Constitution . . . .").

Leaving no doubt that MRFRA does not create an "unclear issue of state law," the standard under MRFRA to determine a violation of free exercise is **the same standard that existed when *Brown* was decided**. As noted by Defendant, the Mississippi Legislature enacted MRFRA

> for the dual purposes of (1) restoring the compelling interest test as set forth in *Sherbert v. Verner,* 374 U.S. 398 (1963), and *Wisconsin v. Yoder*, 406 U.S. 205 (1972) [the test that applied to free exercise claims when *Brown* was decided], and to guarantee its application in all cases where free exercise of religion is substantially burdened; and (2) providing a claim or defense to persons whose religious exercise is substantially burdened by government.

(Dkt. 40 at 6).

---

[2] While that interpretation is binding upon Mississippi state courts, the Mississippi Supreme Court's interpretation of the Fourteenth Amendment is not binding upon this Court. *See Cunningham v. California*, 549 U.S. 270, 293, n.16 (2007) (Federal courts do not defer to state court interpretations of federal constitutional law.).

After the *Sherbert* and *Yoder* standard was overturned by *Emp't Div. v. Smith,* 494 U.S. 872 (1990), many states, including Mississippi, responded by enacting religious freedom legislation that restored the pre-*Smith* standard.  *Brown* was decided under the pre-*Smith* standard which is the same standard that exists under MRFRA.  Hence, the standard under MRFRA for determining a free exercise violation is the same standard used in *Brown* when it decided that there is no First Amendment right to a religious exemption *and* that any state law providing a religious exemption to school vaccination requirements would violate the Fourteenth Amendment. Mississippi's highest court has thus provided a clear and controlling answer to the question of whether there is or could be a religious exemption to school vaccination requirements in Mississippi.  In fact, it could not be any clearer.

This is why, despite the passage of MRFRA in 2014, the *Brown* holding has been frequently invoked to oppose the passage of Mississippi bills seeking to enact a religious exemption.  *See* Declaration of Jameson Taylor, Exhibit B at ¶4.  On this same score, after MRFRA was passed in 2014, Dr. Alton Cobb, the head of the Mississippi Department of Health at the time the *Brown* ruling was issued, even praised the lack of a religious exemption in Mississippi and attributed that reality to *Brown.*  *See* Clarion Ledger, *Vaccination is a Legitimate Issue for the State,* Exhibit C.

And the proof is in the pudding.  MRFRA has in no way whatsoever changed the reality for parents with religious beliefs that are contrary to one or more vaccinations required for school. Their children remain excluded from school.  Despite its passage in 2014, MRFRA has simply done nothing to change that reality.  No defendant in this case, nor any other Mississippi school, nor any official has permitted any of Plaintiffs' children to attend school.  Plaintiffs have each attempted to enroll their children in Mississippi schools in the years since the passage of MRFRA,

and all schools and health department officials with whom Plaintiffs have interacted instructed them, consistent with *Brown* and the Compulsory Vaccination Law and despite the passage of MRFRA, that Mississippi does *not* permit religious exemptions. (Dkt. 1, Verified Compl. at ¶¶ 18, 31, 32, 46, 56, 66, 86). These officials, despite MRFRA on the books, continue to enforce the plain and unambiguous language of *Brown* and the Compulsory Vaccination Law, as plainly stated in all bold on the Mississippi State Department of Health website: "**Exemption from required immunizations for religious . . . reasons is not allowed under Mississippi law**."[3]

In sum, *Pullman* abstention is inappropriate because there is not an "unclear issue of state law." Therefore, in addition to the fact that the plain language of the Compulsory Vaccination law alone renders *Pullman* abstention improper because it is unambiguous on its face in prohibiting religious exemptions, the existence of MRFRA does not otherwise create any "unclear issue of state law" because of the Mississippi Supreme Court's existing precedent in *Brown*.[4]

---

[3] See footnote 1.

[4] At best, Defendant is asking this Court to require Plaintiffs to go to Mississippi state court and spend years litigating up to its highest court in in a bid to, *inter alia*, overturn *Brown*. No doubt, *Pullman* never imagined requiring any plaintiff to engage in a multi-year risk-fraught adjudicatory process to overturn clear existing controlling precedent in the state's highest court, while the plaintiff's First Amendment free exercise rights are clearly and plainly being violated. *See, e.g., City of Houston,* 482 U.S. at 467-68; *Harman v. Forsennius,* 380 U.S. 528, 535 (1965); *Entertainment Software Ass'n v. Foti*, 451 F. Supp. 2d 823, 826 (M.D. La. 2006); *Dombrowski v. Pfister*, 380 U.S. 479, 489-90 (1965). Also, the practical reality is that the First Amendment guarantees Plaintiffs' constitutional rights, **while MRFRA does not and has not**. Even assuming *Brown* does not exist, there is also nothing preventing the Mississippi Legislature from repealing MRFRA or codifying in statute the approach in *Brown* that no state law can afford a religious exemption to vaccination. Notably, the Illinois Legislature recently repealed its Health Care Right of Conscience Act after citizens utilized its protections to assert religious objections to COVID-19 vaccine mandates. *See* Exhibit D, *Prtizker Signs COVID-19 Amendment to Illinois Health Care Right of Conscience Law*, CBS Chicago (Nov. 9, 2021), *also available at* https://www.cbsnews.com/chicago/news/gov-jb-pritzker-signs-covid-19-exemption-illinois-health-care-right-of-conscience-act/.

### C. *Pullman Abstention Is Also Improper Because the Challenged Statute is Clearly Unconstitutional*

*Pullman* abstention is improper for another independent reason.  Where a law is clearly unconstitutional, *Pullman* abstention does not apply.  *See Thornburgh v. American College of Obstetricians*, 476 U.S. 747, 756 (1986); *see also Babbitt v. United Farm Workers Nat'l.*, 442 U.S. 289, 305-12 (1979).  Federal courts simply need not defer to state courts and delay adjudication on state law or conduct that plainly is violating the Constitution.  *See, e.g.*, *City of Houston*, 482 U.S. at 467-68; *see also Harman v. Forsennius*, 380 U.S. 528, 535 (1965).

Defendant does not dispute that Plaintiffs' free exercise rights have been violated by the lack of a religious exemption to Mississippi's school vaccination requirements.  And not only does Defendant expressly agree that Plaintiffs' free exercise rights have been violated under MRFRA, but Defendant also effectively agrees Plaintiffs' free exercise rights have been violated under the First Amendment.  This is because, in explaining how the elements under MRFRA are met, Defendant by default confirmed that these same overlapping elements for establishing a First Amendment violation are also met.

As Defendant explains in her opposition:

> …students must be offered the option of a religious exemption. Without a religious exemption option, under MRFRA, the school vaccination scheme would substantially burden the rights of some people with sincerely-held religious objections.  The school vaccination statute itself recognizes that exemptions from compulsory vaccination are appropriate in some circumstances (i.e., medical exemptions).  Miss. Code Ann. § 41-23-37.  Having recognized that some exemptions are appropriate, the State must— given MRFRA—allow a mechanism for seeking an exemption based on a sincerely-held religious belief.  Given the prevalence of state laws providing for religious (or philosophical) exemptions from compulsory school vaccination laws in states across the country, see NCSL 50-State Survey (Ex. "A"), it is not tenable to maintain that having no religious exemption option is "the least restrictive means" of furthering a compelling governmental interest.

> MISS. CODE ANN. § 11-61-1(5)(b).  Plaintiffs must be afforded a religious exemption option, and that option must comport with MRFRA's compelling-interest/least-restrictive-means standard.

(Dkt. 42 at 7).

Defendant's reasoning above provides the identical reasoning for why the Compulsory Vaccination Law is unconstitutional and why Plaintiffs' free exercise claim must prevail under the First Amendment.  The foregoing makes clear that Defendant agrees the Compulsory Vaccination Law it not a law of general applicability because by "recogniz[ing] that some exemptions are appropriate, the State must … allow a mechanism for seeking an exemption based on a sincerely-held religious belief."  *Id.*  This law is also not generally applicable because, as set forth in Plaintiffs' opening brief, it allows for individual discretionary review and treats secular conduct more favorable than comparable religious conduct, neither of which Defendant contests.  (Dkt. 5 at 14-18).  Defendant also does not contest that the Compulsory Vaccination Law lacks neutrality, as set forth in Plaintiffs' opening brief.  The challenged statute is not neutral because, on its face, it favors secular conduct above comparable religious exercise and because it codified the *Brown* decision, which explicitly targeted religious observance for categorical elimination.  (Dkt. 5 at 18-24).

Finally, the foregoing block quote makes clear that Defendant agrees the Compulsory Vaccination Law would not survive strict scrutiny under the First Amendment.  As noted by Defendant, under strict scrutiny, "students must be offered the option of a religious exemption" because "[w]ithout a religious exemption option … the school vaccination scheme would substantially burden the rights of some people with sincerely-held religious objections," and that "[g]iven the prevalence of state laws providing for religious (or philosophical) exemptions from compulsory school vaccination laws in states across the country . . . it is not tenable to maintain

that having no religious exemption option is 'the least restrictive means' of furthering a compelling governmental interest." (Dkt. 42 at 7). There is therefore no dispute that, as Defendant stated, "Plaintiffs must be afforded a religious exemption option" and that the Compulsory Vaccination Law does not survive strict scrutiny. Critically, Defendant's analysis of why the challenged statute cannot withstand strict scrutiny reflects precisely why it cannot withstand a strict scrutiny analysis under the First Amendment as detailed by Plaintiffs in their opening brief. (*See* Dkt. 5 at 24-27).[5] *See also Dombrowski v. Pfister*, 380 U.S. 479, 489-90 (1965) (holding "the abstention doctrine is inappropriate for cases such as the present one where . . . statutes are justifiably attacked on their face as abridging free expression, or as applied for the purpose of discouraging protected activities.").

Defendant does not contest that the Compulsory Vaccination Law fails to comport with the requirements of the First Amendment rendering it plainly unconstitutional, and on that separate and independent basis *Pullman* abstention would be inappropriate.

### D. Pullman Abstention Is Improper on Independent Grounds as it Would Create a State Court Exhaustion Requirement for 42 U.S.C. § 1983 Claims

*Pullman* abstention should not be invoked for another independent and critical reason. If Defendant's argument that Plaintiffs must resort exclusively to MRFRA is accepted, it would create a state court exhaustion requirement in Mississippi to *any* claim under 42 U.S.C. § 1983 for violation of free exercise under the First Amendment. The United States Supreme Court has made

---

[5] The Compulsory Vaccination Law is clearly unconstitutional, both facially and as applied, pursuant to the United States Supreme Court precedents in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020), *Tandon v. Newsom*, 141 S. Ct. 1294 (2021), and *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021) which make clear this law cannot withstand strict scrutiny because it provides for discretionary review of medical exemptions while prohibiting religious exemptions. A recent Fifth Circuit decision further supports that this law cannot withstand strict scrutiny. *See U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336 (5th Cir. 2022) (holding that the Navy's compulsory COVID-19 vaccination policy was subject to and did not withstand strict scrutiny review where it granted secular medical exemptions at disproportionately high rates relative to religious exemption requests).

clear it abhors state laws or schemes that seek to insulate the state from the reach of 42 U.S.C. § 1983.  *See Haywood v. Drown*, 556 U.S. 729 (2009) (holding that a state "may not shut the courthouse door to federal claims that it considers at odds with its local policy.").  The Supreme Court has also been very clear that where "there are no ambiguities in the statute for the state courts to resolve, and -- absent issues of state law that might affect the posture of the federal constitutional claims -- this Court has uniformly held that individuals seeking relief under 42 U.S.C. § 1983 need not present their federal constitutional claims in state court before coming to a federal forum." *Zablocki v. Redhail*, 434 U.S. 374, 379 n.5 (1978).

Hence, where a plaintiff can successfully prove, by a clear and substantial likelihood of success on the merits, that a person acting under color of law deprived him of a right guaranteed by the Constitution, the plaintiff need not demonstrate exhaustion of state remedies as federal law imposes no such requirement and overlapping state remedies are generally irrelevant to the question of whether a constitutional cause of action exists.  *See Creel v. City of Baton Rouge*, No. 20-880-SDD-EWD, 2021 U.S. Dist. LEXIS 43203 (M.D. La. Mar. 8, 2021) (holding that relief for civil rights violations "does not require exhaustion of state law remedies or procedures").

Thus, Defendant, responsible for enforcing a law that clearly and wrongfully denies Plaintiffs free exercise under the First Amendment, now seeks to improperly create a judicial requirement that every free exercise claim brought in federal court challenging a state law must first be adjudicated by none other than Defendant in state court under MRFRA.  This attempt to create such a hurdle to bringing a free exercise claim in federal court should not be countenanced.  To do otherwise at best creates years of delay in obtaining any relief and in many instances would nullify the ability to bring a First Amendment free exercise claim in a Mississippi federal court.

It also undercuts the ability of federal courts to adjudicate the Constitution if federal courts need to abstain to permit state courts to first address state constitutional provisions or state laws such as MRFRA, that essentially codify federal constitutional provisions.  The Supreme Court observed that a contrary rule to the foregoing "would convert abstention from the exception into the general rule." *Examining Board of Engineers, Architects and Surveyors v. Otero,* 426 U.S. 572, 598 (1976)*; see also Wisconsin v. Constantineau,* 400 U.S. 433 (1971); *Nissan Motor Corp. In U.S.A. v Harding,* 739 F.2d 1005, 1008 (5th Cir. 1984) (The Fifth Circuit has repeatedly emphasized that "abstention is the exception, not the rule.").  The danger of converting abstention into the general rule is even more concerning "in a suit seeking review of a statute which will purportedly exert a chilling effect on First Amendment rights." *Red Bluff Drive-In, Inc. v. Vance,* 648 F.2d 1020, 1032 (5th Cir. 1981).

When it comes to protected rights under the Constitution, justice delayed often results in justice denied.  The Fifth Circuit and the Supreme Court have held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012).  Defendant's approach would result in the irreparable injury to Plaintiffs to last for at least many more years.  That result must be rejected.

In sum, this Court should decline the opportunity to make MRFRA an exhaustion requirement for any First Amendment claim in Mississippi, especially where the claimed MRFRA right is already barred by the Mississippi Supreme Court as unconstitutional.

### E.  Totality of the Circumstances

While each of the specific reasons detailed above in sections A through D, standing alone, support that *Pullman* abstention does not apply, when taken together and considering the totality

of the circumstances, *Pullman* abstention clearly does not apply. As the Fifth Circuit has explained:

> [T]he extraordinary decision to stay federal adjudication requires more than an ambiguity in state law and a likelihood of avoiding constitutional adjudication. A district court must carefully assess the totality of circumstances presented by a particular case. This requires a broad inquiry which should include consideration of the rights at stake and the costs of delay pending state court adjudication.

*Duncan v. Poythress*, 657 F.2d 691, 697 (5th Cir. 1981); *see also Lipscomb v. Columbus Mun. Separate Sch. Dist.*, 145 F.3d 238, 243 (5th Cir. 1998); *Baran v. Port of Beaumont Navigation Dist.*, 57 F.3d 436, 442 (5th Cir. 1995) ("For a federal court adjudication to be stayed under Pullman, more than an ambiguity in state law and a likelihood of avoiding a constitutional ruling is required. Rather, the district court must assess the totality of the circumstances presented by a particular case, considering the rights at stake and the costs of delay pending state court adjudication.").

The totality of the circumstances here dictate not applying *Pullman* abstention. As detailed above, *Pullman* does not apply because the Compulsory Vaccination Law is plainly unambiguous (*supra* § A), MRFRA does not create an "unclear issue of state law" (*supra* § B), the violation of Plaintiff's First Amendment right is clear under Supreme Court precedent (*supra* § C), and it is improper to create a state exhaustion requirement (*supra* § D). While each of these four reasons standing alone are sufficient to render *Pullman* abstention improper, there is one more reason to not abstain.

That *Pullman* abstention is utilized only in extraordinary circumstances is unsurprising, given that the doctrine is particularly vulnerable to misuse and abuse. The improper use of *Pullman* abstention to create costs and delays, which only prolong and further exacerbate the underlying constitutional harm, for political and other purposes, was observed almost immediately

after its inception.  *See Abstention Doctrine Today,* 125 U. Pa. L. Rev. 590, 602 (1977) (discussing "whether delay is not sometimes the *aim* of the abstention procedure, and the desirability of obtaining a clarifying state decision [is] simply the *excuse* for the delay."); *see also Entertainment Software Ass'n v. Foti*, 451 F. Supp. 2d 823, 826 (M.D. La. 2006) ("*Pullman* abstention is rarely appropriate in cases based on the First Amendment because the delay that results from abstention will itself chill the exercise of the rights that the plaintiffs seek to protect by suit") (internal citations omitted).

Here, sending Plaintiffs into the never-never land of the state court system to spend years shadowboxing against *Brown* reflects a use of *Pullman* that various courts and other judicial scholars have warned against.  *See, e.g., id.* at 602.  ("When … a lawsuit presents a federal constitutional attack on a state program that does not seem politic at the moment to resolve, abstention may appear a convenient device for removing the parties from federal court, for the time being at least"); *see also England v. La. State Bd. of Med. Exam'rs*, 375 U.S. 411, 425, 84 S. Ct. 461, 470 (1964) ("Some litigants have long purses.  Many, however, can hardly afford one lawsuit, let alone two.  Shuttling the parties between state and federal tribunals is a sure way of defeating the ends of justice . . . . The parties are entitled -- absent unique and rare situations -- to adjudication of their rights in the tribunals which Congress has empowered to act.") (Douglas, J., concurring)).

Sending Plaintiffs into the state court system will not only create years of delay, but it will also generate substantial costs both financially and personally.  Most importantly and critically, Plaintiffs' children will remain excluded from school indefinitely despite clear First Amendment violations.  This is irreparable harm that will be held in suspension without remedy for years, when this Court has the authority to address them here and now.

Considering the totality of the circumstances, let alone each independent factor as detailed above, it is respectfully submitted that this Court should reject *Pullman* abstention in this case.

## II.   OPPOSITION TO DEFENDANT'S 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant contends that Plaintiffs "have failed to state legally cognizable claim, and their complaint should be dismissed pursuant to FED. R. CIV. P. 12 (c)" based on a theory that the Compulsory Vaccination Law, when read in conjunction with MRFRA, eliminates Plaintiffs' First Amendment claims as a matter of law.  (Dkt. 40 at 10).

"The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 1999).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

Plaintiffs have presented a well-pled complaint with factual allegations supporting a claim under the First Amendment that is plausible on its face.

Under the directly on-point Supreme Court decisions of *Church of the Lukumi Babalu Aye, Inc., v. City of Hialeah*, 508 U.S. 520 (1993), *Brooklyn,* 141 S. Ct., *Tandon,* 141 S. Ct., and *Fulton,* 141 S. Ct., the Compulsory Vaccination Law violates the First Amendment's Free Exercise Clause,

both facially and as applied, because it allows for discretionary medical exemptions but outright prohibits religious exemptions.  That the challenged statute is unconstitutional both facially and as applied is underscored by the fact that Plaintiffs were each rejected when they attempted to enroll their children in schools throughout the state after requesting a religious exemption, and that, in response, various state officials instructed that Mississippi does not allow for a religious exemption.  (*See* Doc. 1, Verified Compl. at ¶¶ 31, 32, 46, 56, 66, 76, 85).

Indeed, after reviewing the Complaint and the challenged statute, Defendant concedes that Plaintiffs' religious freedoms have been violated.  More importantly for purposes of the pending motion for judgement on the pleadings, Defendant does not argue that the Compulsory Vaccination Law would survive the First Amendment's general applicability or neutrality tests, or that the law possesses the requisite narrow tailoring to survive strict scrutiny review.  To the contrary, Defendant concedes the challenged statute is **not** narrowly tailored and therefore cannot survive strict judicial scrutiny.  (*See, e.g.*, Dkt. 40 at 7 "[I]t is not tenable to maintain that having no religious exemption option is the 'least restrictive means' of furthering a compelling governmental interest.").  Rather, Defendant's 12(c) motion for judgment on the pleadings is based on the novel theory that Mississippi cannot violate the First Amendment if it has also violated MRFRA, even though the argument that MRFRA affords a religious exemption is invalid as a matter of constitutional law under the governing Mississippi Supreme Court precedent in *Brown*.

In seeking 12(c) dismissal, Defendant essentially asks the Court to ignore that the clear language of the Compulsory Vaccination Law violates the First Amendment, to ignore the existence of *Brown*, and to instead and nonetheless require Plaintiff to seek relief under MRFRA rather than the First Amendment.  (*See, e.g.*, Dkt. 40 at 7-8).  That irrational result cannot be the law.

MRFRA was passed in 2014 and yet Mississippi has not provided Plaintiffs any protection for their religious beliefs.  This is because the judicial, legislative, and executive branches in the state understand that the Mississippi Supreme Court has ruled that the existence of any religious exemption in the compulsory vaccination arena in Mississippi would violate the Fourteenth Amendment of the Constitution.  The passage of MRFRA following *Brown* has not called into question the holding in *Brown*, as MRFRA simply returned Mississippi law to *Sherbert's* compelling interest test, which was the same test that existed when *Brown* was decided.  The Mississippi Legislature also comprehends that MRFRA does not give rise to a religious exemption option, as evidenced by the fact that it has considered and rejected a religious exemption bill each year since MRFRA was passed (and, according to Defendant, is considering such a bill in the upcoming session).  The executive branch also knows that the Compulsory Vaccination Law does not permit a religious exemption option as executive branch officials enforced its requirements against Plaintiffs despite MRFRA's existence.  Considering these factors, the Compulsory Vaccination Law, even with MRFRA in place, has violated and continues to violate Plaintiffs' First Amendment rights – both facially and as applied – and this Court is best suited to adjudicate this claim and provide relief.

Plaintiffs have presented a well-pled complaint containing allegations supporting a claim under the First Amendment that is plausible on its face.  Plaintiffs respectfully request that Defendant's Motion for Judgment on the Pleadings under FED. R. CIV. P. 12 (c) be denied.

## **CONCLUSION**

Plaintiffs respectfully request this Court deny, in its entirety Defendant's motion for judgment on the pleadings or to dismiss or stay pursuant to the *Pullman* abstention doctrine.

Dated: December 5, 2022

                           Respectfully submitted,

                           SIRI & GLIMSTAD LLP

BY:      *s/ Walker D. Moller*
           Walker D. Moller attorney
           Mississippi Bar Number: 105187
           501 Congress Avenue
           Suite 150 – #343
           Austin, TX 78701
           Tel: (512) 265-5622
           Fax: (646) 417-5967
           wmoller@sirillp.com

           Aaron Siri, Esq.
           Elizabeth A. Brehm, Esq.
           Catherine Cline, Esq.
           745 Fifth Ave, Suite 500
           New York, NY 10151
           Tel: (212) 532-1091
           Fax: (646) 417-5967
           aaron@sirillp.com
           ebrehm@sirillp.com
           ccline@sirillp.com

           Christopher Wiest
           25 Town Center Blvd., Suite 104
           Crestview, KY 41017
           Tel: (513) 257-1895
           Fax: (859) 495-0803
           chris@cwiestlaw.com

           *Attorneys for Plaintiffs*