**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | |
|---|---|
| **AMANDA BOSARGE, individually and on behalf of their minor children, et al.,**<br><br>*Plaintiffs,*<br><br>-against-<br><br>**DANIEL P. EDNEY**, **in his official capacity as the State Health Officer, et al.,**<br><br>*Defendants.* | Civil Action No. 1:22-cv-00233-HSO-BWR |

**MEMORANDUM OF AUTHORITIES IN SUPPORT OF PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION AND MOTION TO CONSOLIDATE THE PRELIMINARY INJUNCTION HEARING WITH A TRIAL ON THE MERITS [DKT. # 41]**

**INTRODUCTION**

Plaintiffs have established an entitlement to a preliminary injunction. They have established a likelihood of success on the merits, including because Defendant effectively agrees that the standard for a violation of the First Amendment has been met. (*Infra* § I.A). Plaintiffs have, continue to, and imminently will suffer irreparable harm, including an ongoing First Amendment violation, the additional constitutional violation of being deprived a state mandated benefit of a public education, and the irreparable harm that flows from having one's child excluded from school. (*Infra* § I.B). The balance of harms and the public interest in protecting civil liberties weigh in favor of injunctive relief, including because constitutional violations are at issue, injunctive relief will not disservice the public interest. (*Infra* § I.C).

The injunctive relief that is warranted in this case should not be limited to the Plaintiffs. The unremarkable relief that Plaintiffs seek is for the state to "recognize religious exemptions in the same manner that it recognizes secular exemptions," something that already occurs in 44 other states and Washington D.C. In seeking to limit the scope of a potential injunction, Defendant's apparent message is that Mississippi law guarantees religious freedom, but only if the family is willing and able to assert those rights in court. This should not be. (*Infra* § II).

As for Plaintiffs' motion for summary judgment, Defendant requests that it not be granted because she purportedly has five items on which she first needs discovery. Plaintiffs detail below why these five items are irrelevant or seek information already in Defendant's possession. Nonetheless, if the Court believes it is appropriate to permit Defendant an opportunity to conduct discovery, Plaintiffs request that the Court order an expedited evidentiary hearing on the merits (and, if the Court believes necessary, Plaintiffs do not oppose expedited depositions in advance of that hearing). Plaintiffs are ready and welcome the opportunity to be examined regarding their beliefs and request that such occur forthwith if necessary for final adjudication. (*Infra* § III).

I.  **PLAINTIFFS' REQUESTED PRELIMINARY INJUNCTION SHOULD BE GRANTED**

   A. *Plaintiffs Have Established a Substantial Likelihood of Success on the Merits*

Defendant does not dispute that Plaintiffs' free exercise rights have been violated by the lack of a religious exemption to Mississippi's school vaccination requirements. Rather, Defendant's position is that this Court should abstain under *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496 (1941), from adjudicating this violation under the First Amendment and instead defer to the Mississippi state courts to rule on this violation under the Mississippi Religious Freedom Restoration Act (**"MRFRA"**). However, invoking *Pullman* abstention would be improper for

2

multiple reasons as detailed in *Plaintiffs' Opposition to Defendant's Motion for Judgment on the Pleadings* which is being filed contemporaneously and incorporated as if fully set forth herein.

Moreover, by agreeing that Plaintiffs' free exercise rights have been violated under MRFRA, Defendant effectively agrees that Plaintiffs' free exercise rights have been violated under the First Amendment. This is because in explaining how the elements under MRFRA are met, Defendant by default confirmed that these same overlapping elements for establishing a First Amendment violation are also met.

As Defendant explains in her opposition:

> [U]nder any fair interpretation of the plain language of § 11-61-1 [MRFRA], students must be offered the option of a religious exemption. Without a religious exemption option, under MRFRA, the school vaccination scheme would substantially burden the rights of some people with sincerely-held religious objections. The school vaccination statute itself recognizes that exemptions from compulsory vaccination are appropriate in some circumstances (i.e., medical exemptions). MISS. CODE ANN. § 41-23-37. Having recognized that some exemptions are appropriate, the State must— given MRFRA—allow a mechanism for seeking an exemption based on a sincerely-held religious belief. Given the prevalence of state laws providing for religious (or philosophical) exemptions from compulsory school vaccination laws in states across the country, see NCSL 50-State Survey (Ex. "A"), it is not tenable to maintain that having no religious exemption option is "the least restrictive means" of furthering a compelling governmental interest. MISS. CODE ANN. § 11-61-1(5)(b). Plaintiffs must be afforded a religious exemption option, and that option must comport with MRFRA's compelling-interest/least-restrictive-means standard.

(Dkt. 42 at 7).

Defendant's reasoning above provides the identical reasoning for why Plaintiffs' free exercise claim must prevail under the First Amendment. The foregoing makes clear that Defendant agrees the Compulsory Vaccination Law is not a law of general applicability because by "recogniz[ing] that some exemptions are appropriate, the State must … allow a mechanism for

seeking an exemption based on a sincerely-held religious belief." *Id.* This law is also not generally applicable because, as set forth in Plaintiffs' opening brief, it allows for individual discretionary review and treats secular conduct more favorable than comparable religious conduct, neither of which Defendant contests. (Dkt. 5 at 14-18). Defendant also does not contest that the Compulsory Vaccination Law lacks neutrality, as set forth in Plaintiffs' opening brief. The challenged statute is not neutral because, on its face, it favors secular conduct above comparable religious exercise and because it codified the *Brown* decision (*Brown v. Stone*, 378 So.2d 218 (Miss. 1980)), a ruling which explicitly targeted religious observance for categorical elimination. (Dkt. 5 at 18-24).

Finally, the foregoing block quote makes clear that Defendant agrees the Compulsory Vaccination Law would not survive strict scrutiny under the First Amendment. As Defendant explained, under strict scrutiny "students must be offered the option of a religious exemption" because "[w]ithout a religious exemption option … the school vaccination scheme would substantially burden the rights of some people with sincerely-held religious objections," and that "[g]iven the prevalence of state laws providing for religious (or philosophical) exemptions from compulsory school vaccination laws in states across the country . . . it is not tenable to maintain that having no religious exemption option is 'the least restrictive means' of furthering a compelling governmental interest." (Dkt. 42 at 7). There is therefore no dispute that, as Defendant stated, "Plaintiffs must be afforded a religious exemption option" and that the Compulsory Vaccination Law does not survive strict scrutiny. *Id.* Critically, Defendant's analysis of why the challenged statute cannot withstand strict scrutiny reflects precisely why it cannot withstand a strict scrutiny analysis under the First Amendment as explained by Plaintiffs in their opening brief. (Dkt. 5 24-27).

For these reasons, and for the reasons stated in Plaintiffs' *Memorandum in Support of Their Motion for a Preliminary Injunction* (Dkt. 5), Plaintiffs have demonstrated a substantial likelihood of success on the merits.

### B. Plaintiffs Have Suffered, Continue to Suffer, and Imminently Will Suffer Irreparable Injury

While agreeing that Plaintiffs' right to freely exercise their religion is being violated, Defendant quizzically claims that this ongoing harm is nonetheless not irreparable or imminent.

Defendant asserts that because MRFRA theoretically provides an adequate remedy, there is no irreparable harm resulting from a First Amendment violation. Defendant is wrong. The Mississippi Supreme Court's ruling in *Brown* makes plain that any state law, which would include MRFRA, that purports to provide a religious exemption to school vaccination requirements would violate the Fourteenth Amendment. The reality is that even since the passage of MRFRA, schools will not even consider Plaintiffs' religious exemption requests and their children remain excluded from school. They have suffered and continue to suffer ongoing irreparable harm. This harm is the continued deprivation of a First Amendment constitutional right and "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012).

Moreover, these First Amendment violations have already occurred, and are ongoing, regardless of whether Mississippi has also violated and continues to violate MRFRA. *See New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 358-59, 363 (1989) ("When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction. . . . The right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied. . . . [T]here is . . . no doctrine requiring abstention merely

5

because resolution of a federal question may result in the overturning of a state policy.") (internal quotation marks omitted).

Exclusion from school is an irreparable constitutional harm. This is because Mississippi's Constitution combined with the Fourteenth Amendment guarantees a free public-school education, and hence categorically excluding Plaintiffs' children from the state's education system constitutes irreparable harm. *See Hill v. Rankin County, Miss. Sch. Dist.*, 843 F. Supp. 1112 (S.D. Miss. 1993) at 1117 (Mississippi Code Section 37-1-2 provides Mississippi schoolchildren the right to a free public education); *see also Goss v. Lopez,* 419 U.S. 565 (1975) (when state law creates a right to public education, that right becomes protected by the Due Process Clause of the Fourteenth Amendment). Further, even the interruption or denial of an education can constitute irreparable harm. *See, e.g., Ala. Coushatta v. Big Sandy Sch.*, 817 F. Supp. 1319, 1336-37 (E.D. Tex. 1993) (finding irreparable harm where "Native American students would be placed in the deplorable position of choosing between the free exercise of their religious beliefs and obtaining an adequate education" if they did not comply with school's hair length policy).

Plaintiffs cite *Elrod* and *Tandon* (*Tandon v. Newsom*, 141 S. Ct. 1294 (2021)) in their opening brief for the well-established proposition that deprivation of free exercise rights under the First Amendment, even for limited periods of time, constitutes irreparable harm. Defendant attempts to distinguish these cases on the ground that they involve the government trying to "compel or prohibit some discrete, imminent action." But this is *precisely* what is occurring: Plaintiffs' children are being prohibited from attending school in Mississippi, a harm which has occurred every day since they were eligible to attend school, including today, and will continue tomorrow and every school day henceforth unless Plaintiffs are afforded injunctive relief. The harm in *Elrod* was simply the *threat* of termination for not belonging to a specific political party

(which in itself was a violation of the First Amendment). Here, the threat has been realized: because of their constitutionally protected religious beliefs, these parents did not vaccinate their children and so they were prohibited from attending school. It is unclear why Defendant finds this situation any better than "mandate[ing] COVID vaccination on threat of terminating employment." (Dkt. 42 at 12). The irreparable harm here *is* clear and specific: Plaintiffs' children cannot attend school unless Plaintiffs violate their sincerely held religious beliefs against compulsory vaccination. *See, e.g.*, *Doster v. Kendall*, No. 22-3497/3702, 2022 U.S. App. LEXIS 32847, at *61 (6th Cir. Nov. 29, 2022) (finding sufficient irreparable harm where Plaintiffs were merely threatened with possible discharge from the Air Force for their decision to decline receiving a COVID-19 vaccine, in violation of the Air Force's vaccination mandate); *BST Holdings v. Occupational Safety & Health Admin.*, 17 F.4th 604, 618 (5th Cir. 2021) (finding irreparable injury was sufficiently demonstrated where OSHA's COVID-19 vaccination mandate threatened "to substantially burden the liberty interests of reluctant individual recipients put to a choice between their job(s) and their jab(s)"); *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012) (finding sufficient irreparable harm where it was substantially likely First Amendment violations had occurred, and, therefore no further showing of irreparable harm was necessary); *U.S. Navy SEALs 1-26 v. Biden*, 578 F. Supp. 3d 822, 834 (N.D. Tex. 2022) (finding that Navy Seal plaintiffs had sufficiently demonstrated irreparable injuries where they were non-deployable while their religious exemptions to the military's COVID-19 vaccination mandate were pending).

In fact, if evicted from federal court under *Pullman* as Defendant seeks, the irreparable constitutional harm Plaintiffs have already endured will be further aggravated as Plaintiffs, despite the clear ongoing First Amendment violation, would be required to embark on a lengthy and costly journey in state court, where they will eventually, at the least, have to convince the Mississippi

7

Supreme Court to overturn itself. In the interim, while awaiting that inevitable adverse outcome, the constitutional harms will accrue with impunity.

Defendant also claims there is no imminent harm because Plaintiffs either homeschool or have attended (or will attend) school out of state. (Dkt. 42 at 11). Said another way, Defendant argues that because the Plaintiffs' rights have been infringed upon for a period of time and Plaintiffs have been forced to look for alternatives to public education, Defendant can freely continue to violate those rights.

Defendant ignores that the very fact that Plaintiffs are forced to homeschool or have been compelled to seek an education for their children out-of-state itself constitutes irreparable injury; that harm is ongoing and reoccurs every day as each of them is being deprived an education in a Mississippi school unless their parents sacrifice their sincerely held religious beliefs and comply with the Compulsory Vaccination Law's requirements. But for Mississippi's unconstitutional compulsory vaccination scheme, Plaintiffs Kimberly Harrell, Pastor Paul Perkins, William Morgan, and Amanda Bosarge would not be forced to continue to homeschool their children every day, the only option available to them in Mississippi, and an option that entails considerable professional and financial costs which are ongoing and imminent. *See, e.g.*, Dkt. 1, Verified Compl., at ¶¶ 23, 33-36, 47-49, 58-60, 67, 74, 78-79, and 86.[1]

Indeed, there is a long history of the Supreme Court holding that the denial of benefits afforded to others due to a person's religious beliefs is a First Amendment Free Exercise harm. *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012 (2017) (ineligibility of grants

---

[1] Similarly, Plaintiffs Dr. Jeana Stanley and Brandi Renfroe would not have been forced to move to Alabama, at significant cost, to educate their children (Dkt. 1, Verified Compl., at ¶¶ 41, 74). Were Mississippi to have an immunization policy that comported with the First Amendment's requirements, Plaintiffs would educate their children in Mississippi's school system. *See* Dkt. 1, Verified Compl., at ¶¶ 22, 24, 31, 32, 46, 56, 66, 76, 86.

afforded to others violated the First Amendment's Free Exercise Clause); *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707 (1981) (denial of unemployment benefits to someone who was terminated due to his religious beliefs violated the Free Exercise Clause); *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021) (refusal to contract with a group unless its members agreed to violate their First Amendment religious beliefs violated the Free Exercise Clause); *Sherbert v. Verner*, 374 U.S. 398 (1968) (benefits cannot be conditioned on relinquishment of religious rights); *Hobbie v. Unemployment Appeals Com.*, 480 U.S. 136 (1987) (same).

This is an ongoing, irreparable injury. *BST Holdings*, 17 F.4th at 618; *Opulent Life Church*, 697 F.3d at 295; *U.S. Navy SEALs 1-26*, 578 F. Supp. 3d at 834; *Elrod*, 427 U.S. at 373. Plaintiffs' injuries – past, ongoing, and imminent – are irreparable and therefore support injunctive relief.

### C. The Balance of Harms and the Public Interest in Protecting Civil Liberties Weigh in Favor of Injunctive Relief

If the Court agrees Plaintiffs have a likelihood of success on the merits, the balance of harms and public interest factors likewise strongly favor injunctive relief. These two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). This is because "the government interest *is* the public interest." *United States v. Texas*, 566 F. Supp. 3d 605, 690 (W.D. Tex. 2021) (emphasis in original).

Defendant asserts that balance of harms and public interest factors weigh against an injunction primarily on the ground that Plaintiffs failed to establish constitutional deprivations, which, in turn, hinges on whether Defendant's *Pullman* abstention argument has merit. However, *Pullman* abstention would be improper for multiple reasons as detailed in *Memorandum of Authorities in Support of Plaintiffs' Opposition to Attorney General Lynn Fitch's Motion for Judgment on the Pleadings or, Alternatively, to Dismiss or Stay Pursuant to Pullman Abstention Doctrine*, Dkt. 55.

And since the Compulsory Vaccination Law violates the First Amendment, both facially and as applied (*see* discussed *supra* § I.A), Defendant's contention that injunctive relief may potentially disrupt the operations of the health department and local school systems is of no event. *See, e.g.*, *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 458 n.9 (5th Cir. 2014) (an injunction will not disserve the public interest where "it will prevent constitutional deprivations") (*citing Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.")).

Moreover, it must be emphasized that Plaintiffs seek the exact same relief under the First Amendment (the option for a religious exemption) as Defendant asserts MRFRA compels. *See* (Dkt. 42 at 11) ("MRFRA requires a religious exemption option."). From MRFRA's enactment in 2014 to present, Defendant apparently concedes Mississippi families whose religious beliefs prevent them from vaccinating their children have had their religious freedoms violated because there has been, and continues to be, no option for a religious exemption in Mississippi. Presumably, those past, ongoing, and imminent violations have not served the public interest. Nor could any possible administrative burden associated with requiring the state officials to dutifully consider religious exemptions (under a process similar to how medical exemptions are considered, and as they are in 44 other states and in Washington, D.C.) outweigh the ongoing harms to religious liberty in Mississippi.

Considering these factors, Defendant cannot demonstrate that the public interest or the balancing of the harms requires Mississippi families to discard their religious convictions, and their constitutional rights, so that their children can benefit from a formal education. Additionally, Defendant cannot credibly argue that the public interest requires that the government compound

10

these constitutional and dignitary harms by causing Plaintiffs to continue suffering significant sacrifices should they maintain their religious beliefs.

## II. IN THE EVENT THE COURT DETERMINES INJUNCTIVE RELIEF IS WARRANTED, THE RELIEF SHOULD NOT BE LIMITED IN SCOPE

Defendant requests, should the Court grant a preliminary injunction, relief be "limited to the named plaintiffs." (Dkt. 42 at 14). In seeking injunctive relief, Plaintiffs seek a straightforward, unremarkable remedy: that the state be required to "recognize religious exemptions in the same manner that it recognizes secular exceptions." (Dkt. 5 at 30).

It is hard to conceive how the relief sought could be legitimately restricted to the seven named Plaintiffs. In formulating remedies in such cases, as in any equity case, the nature of the violation determines the scope of the remedy. *Swann v. Charlotte-Mecklenburg Board of Education*, 402 U.S. 1, 16 (1971). Because the statute, at issue here, is unconstitutional as applied to any parent or child who has a sincere religious objection to it, the scope of the injunction should extend to prohibit enforcement of it against any such persons, and there is a significant body of case law that supports this application. *See, e.g.*, *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786 (2011) (upholding flatly enjoining unconstitutional statute); *Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274 (5th Cir. 1996) (upholding flatly enjoining unconstitutional Mississippi statute, statewide).

Again, given that these First Amendment violations necessarily extend to all Mississippi families whose religious beliefs preclude them from seeking a formal education in Mississippi's school system. An unconstitutional statute's continued enforcement should not be permitted in the case of any Mississippi citizen who is similarly situated to the named Plaintiffs: a constitutional violation to one is a constitutional violation to all. Otherwise, were injunctive relief granted that


was limited to the named Plaintiffs only, such a limitation would not only generate severe inefficiencies, it would also require duplicative litigation and perpetuate constitutional harms.

Defendant argues for a limitation in scope on the grounds that broad injunctive relief could potentially interfere with "the administration or enforcement of the school vaccination scheme provided for" under the Compulsory Vaccination Law. (Dkt. 42 at 14). But permitting religious accommodations in the same manner that secular accommodations are permitted to the same law can hardly be classified as an interference. In seeking a limitation in scope, Defendant's apparent message is that Mississippi law guarantees religious freedoms, but only if the family is willing and able to assert those rights in court. This cannot be.

Moreover, the injunctive relief Plaintiffs seek is not extraordinary. Plaintiffs do not seek a court order that their children or the children of any other family with religious convictions against compulsory vaccination be admitted to school upon the issuance of the injunctive relief requested herein. Plaintiffs merely request that Mississippi families be afforded a process to seek a potential religious exemption, just as other families can seek a medical exemption to attend school for one or more required vaccinations. This is a straightforward remedy that can be seamlessly applied across the state, as evidenced by the forty-four other states that possess a straightforward and easily administered religious exemption process.

**III. PLAINTIFFS' MOTION UNDER RULE 65(a)(2) SHOULD BE GRANTED ON THE CURRENT PAPERS *OR* IF THE COURT BELIEVES IT CANNOT BE DECIDED ON THE PAPERS, PLAINTIFFS WITHDRAW THE REQUEST TO CONSOLIDATE THE PRELIMINARY INJUNCTION WITH TRIAL ON THE MERITS DUE TO THE UPCOMING SPRING SCHOOL TERM**

Plaintiffs believe that final adjudication can be made based on the papers currently pending before the Court, as detailed below. But given the upcoming spring semester that starts in January, if the Court believes that final adjudication cannot be made on the current papers, Plaintiffs respectfully withdraw the portion of their motion seeking to consolidate their request for a preliminary injunction with a trial on the merits.

In the Verified Complaint, Plaintiff each submitted a detailed statement of their religious beliefs describing the sincerity and religious nature of the beliefs that prevent full compliance with the Compulsory Vaccination Law. (*See* Dkt. 1, Exhibits A - E, and G-H). The Verified Complaint further described how Plaintiffs – a group that includes a pastor and several families who have served as missionaries overseas – have maintained their beliefs at significant cost. Several plaintiffs moved out of state as a direct consequence of their religious beliefs that prevent them from vaccinating their children. Other Plaintiffs homeschool their children due to their religious beliefs against vaccination. All Plaintiffs desire their children to obtain a formal education in a Mississippi school but have been prevented from seeking that option as a direct consequence of their religious beliefs. A more in-depth description that further substantiates the level of each Plaintiffs' sincerity can be discerned in the Verified Complaint. (*See* Dkt. 1, Verified Compl. ¶¶ 15 – 86). In short, Plaintiffs provided ample grounds to demonstrate that their religious beliefs are indeed sincere.

Plaintiffs in fact provide a level of detail to support their sincerely held beliefs that far exceed that required in all 44 states that provide for a religious exemption, where typically all that

is required is for the parent to check-the-box to claim the exemption. Defendant nonetheless asserts that a consolidation under Rule 65(a)(2) is improper because Defendant has not been afforded the opportunity to conduct discovery.

In doing so, Defendant critically does not claim there is any factual dispute with regard to the central issue in this case, which is whether the Compulsory Vaccination Law affords a medical exemption but not a religious exemption. Defendant even acknowledges Mississippi law is being violated by the lack of a religious exemption where there is a medical exemption. Nonetheless, Defendant strains out five items which she claims to need discovery, none of which are relevant to the core dispute in this case nor would reveal information that should prevent final adjudication on the merits:

First, Defendant asks to conduct discovery as to "the vaccination status and history of Plaintiffs' children, including relevant medical history that may prevent Plaintiffs from vaccinating their respective children." (Dkt. 44 at 6). Defendant does not need discovery as to the vaccination status of each of Plaintiffs' children since it is already in possession of this information because the "Mississippi Child Immunization Act of 1994 established a centralized registry to be operated by the Department of Health for health care providers to report all childhood immunizations given in the state."[2] As for Defendant's claimed need to conduct discovery to determine if one or more of Plaintiffs' children may have a medical condition preventing vaccination (and if they did, query why they would not seek a medical exemption), it would not negate the violation of their free exercise right to assert their religious beliefs as a basis for an exemption on equal footing with their secular reason for an exemption.

---

[2] *See Mississippi Immunization Registry*, available at https://msdh.ms.gov/msdhsite/_static/31,0,136.html.

Second, Defendant also asks to conduct discovery as to "the school enrollment history of Plaintiffs' children." (Dkt 44 at 6). This information is irrelevant to any claim or defense because if some of Plaintiffs' children are enrolled outside of the state, which they are as detailed in their declarations, it does not remedy the ongoing *per se* constitutional violation of excluding them from school in Mississippi. (*See* discussion *supra* § II). As for whether they want to know if any of Plaintiffs' children are currently or previously enrolled in a Mississippi school, *Brown* has been the controlling law since 1979 and prohibited Plaintiffs' children, who are all minors, from attending school at any time since birth. If they were enrolled, then the school could not comply with Miss. Code Ann. § 41-23-37 which, as Defendant points out, requires that "[w]ithin one hundred twenty (120) days after the opening of each fall term …, the person in charge of each school shall certify to the local or county health officer that all children enrolled are in compliance with the immunization requirements." (Dkt 42 at 5).

Third, Defendant also asks to conduct discovery as to "the specific reasons that Plaintiffs' children were allegedly denied enrollment in Mississippi schools." (Dkt 44 at 6). Plaintiffs attested that they were each denied enrollment because a Mississippi school expressly stated that a religious exemption to the Compulsory Vaccination Law was not an option in Mississippi. (Dkt 1 ¶¶ 31, 32, 46, 56, 66, 76, 85). The verified complaint even attached the email communication from the school with one of the Plaintiffs which said: "We have looked and searched trying to find a way to get your child enrolled without the immunizations. But unfortunately, there is no exemption from the immunizations due to religious beliefs." (Dkt 1-6). But even if there were other reasons beyond non-compliance with the Compulsory Vaccination Law for why Plaintiffs

15

children were denied enrollment, it would not negate the violation of Plaintiffs' First Amendment rights parent to the Compulsory Vaccination Law.[3]

Fourth, Defendant asks to conduct discovery "regarding the factual basis for each plaintiff's decision not to enroll his or her child(ren) in Mississippi schools, and to the extent to which homeschooling, relocation, or commuting to an out-of-state school may be predicated on or influenced by reasons other than a given plaintiffs' religious convictions." (Dkt 44 at 6, 7). This discovery is irrelevant because each Plaintiff sought to enroll their child(ren) in a Mississippi school with a religious exemption to vaccination and were rejected on that basis in violation of the First Amendment. Moreover, even if there were other factors influencing the decision to homeschool or attend an out of state school, it cannot negate that each Plaintiff requested a religious exemption to the Compulsory Vaccination Law and had same rejected in violation of the First Amendment. In reality, the Court need look no further to find a facial violation of the First Amendment than the "Medical Exemption Policy" page of the Mississippi State Department of Health website which says that "exemptions … will be accepted based on the Medical Exemption guidelines below" but that "**Exemption from required immunizations for religious . . . reasons is not allowed under Mississippi law**."[4] (emphasis in original).

Finally, Defendant asks to conduct discovery "against Plaintiffs and/or other defendants regarding the factual basis for Plaintiffs' allegations of actual or threatened enforcement of Mississippi's school vaccination requirements in connection with their children. Such facts may be relevant to [determine] … the extent to which Plaintiffs have … sued the proper defendants."

---

[3] Moreover, every Plaintiff tried to enroll their child in a public school and hence, again, the information for why they were rejected is available to Defendant.

[4] See Exhibit A, *Medical Exemption Policy*, Mississippi State Department of Health, https://msdh.ms.gov/msdhsite/_static/14,0,71,688.html (last visited Dec. 1, 2022).

16

(Dkt. 44 at 7). This is why Plaintiffs have sued every potential party (including those personally involved in preventing their enrollment in school) that could be relevant for redressing Plaintiffs' injuries in order to avoid any argument that any potentially relevant defendant has not been sued and Defendant has not identified any missing party to this action that prevents final adjudication.

Moreover, without pointing to a single word in any of Plaintiffs' declarations to contest sincerity, this proposed inquiry is the equivalent of a modern-day Spanish Inquisition, in this case challenging the Christian beliefs professed by each Plaintiff and is highly disfavored. *See, e.g.*, *Employment Div. v. Smith*, 494 U.S. 872, 887 (1990) ("[I]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds. Repeatedly and in many different contexts, we have warned that courts must not presume to determine . . . the plausibility of a religious claim."); *United States v. Ballard*, 322 U.S. 78, 86-87 (1944) ("Men may believe what they cannot prove. They may not be put to proof of their religious doctrines or beliefs"). Courts "'must refuse to dissect religious tenets just because the believer['s] . . . beliefs are not articulated with the clarity and precision that a more sophisticated person might employ.'" *Davis*, 765 F.3d at 487 (*Davis v. Fort Bend Cnty.*, 765 F.3d 480 (5th Cir. 2014)) (*quoting A.A. v. Needville Indep. Sch. Dist.*, 611 F.3d 248, 261 (5th Cir. 2010) (internal citations omitted)).

While the Supreme Court has warned against adversarial inquisitions into the credibility of an individual's religious beliefs, Plaintiffs acknowledge that courts have held that some determination of the sincerity of an individual's proclaimed beliefs may be made by a defendant when a plaintiff seeks First Amendment protections. *See, e.g.*, *Wisconsin v. Yoder,* 406 U.S. 205, 215-16, (1972); *Theriault v. Carlson*, 495 F.2d 390, 394-95 (5th Cir. 1974); *Tinsley v. Pittari*, 952

17

F. Supp. 384, 391 (N.D. Tex. 1996). Plaintiffs respectfully submit, however, that as detailed above, it should be possible to enter final judgment based on the current record.

Nonetheless, to the extent that the Court believes it is appropriate to permit Defendant an opportunity to conduct discovery on the five items it identified and question Plaintiffs regarding the sincerity of their beliefs, Plaintiffs withdraw the portion of their motion seeking consolidation of its motion for preliminary injunction with trial on the merits and ask that the Court dismiss such portion of their motion without prejudice. Plaintiffs do not want to delay adjudication of their motion for preliminary injunction because they pray that a preliminary injunction may issue in time to require a religious exemption process for this upcoming Spring school semester.

## CONCLUSION

Plaintiffs respectfully request this Court to grant a preliminary injunction against the Compulsory Vaccination Law, requiring recognition of religious exemptions in the same manner that it recognizes secular exceptions. Plaintiffs further request that any such relief be extended to all Mississippi families whose First Amendment rights have been violated by the Compulsory Vaccination Law. Finally, Plaintiffs request that this Court grant final adjudication on the merits *or* if it believes additional discovery need be afforded to Defendant before rendering same, dismissing the portion of Plaintiffs motion seeking final adjudication without prejudice.

Dated: December 5, 2022

                                        Respectfully submitted,
                                        **SIRI & GLIMSTAD LLP**

BY:
                                        */s/ Walker Moller*
                                        Walker D. Moller, Attorney
                                        Mississippi Bar Number: 105187
                                        501 Congress Avenue
                                        Suite 150 – #343
                                        Austin, TX 78701

Tel: (512) 265-5622
Fax: (646) 417-5967
wmoller@sirillp.com


Aaron Siri, Esq.
Elizabeth A. Brehm, Esq.
Catherine Cline, Esq.
745 Fifth Ave, Suite 500
New York, NY 10151
Tel: (212) 532-1091
Fax: (646) 417-5967
aaron@sirillp.com
ebrehm@sirillp.com
ccline@sirillp.com

Christopher Wiest
25 Town Center Blvd., Suite 104
Crestview, KY 41017
Tel: (513) 257-1895
Fax: (859) 495-0803
chris@cwiestlaw.com

*Attorneys for Plaintiffs*