IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| AMANDA BOSARGE, *individually and on behalf of their minor children*, et al. | § § § § § | PLAINTIFFS |
| v. | § § § | Civil No. 1:22cv233-HSO-BWR |
| DANIEL P. EDNEY, *in his official capacity as the State Health Officer*, et al. | § § § § | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT LYNN FITCH'S MOTION [39] FOR JUDGMENT ON THE PLEADINGS OR, ALTERNATIVELY, TO DISMISS OR STAY PURSUANT TO *PULLMAN* ABSTENTION DOCTRINE**

BEFORE THE COURT is the Motion [39] for Judgment on the Pleadings or, Alternatively, to Dismiss or Stay Pursuant to *Pullman* Abstention Doctrine filed by Defendant Lynn Fitch, in her official capacity as the Attorney General of Mississippi (the "Attorney General"). Plaintiffs have filed a Response [54] in opposition to the Motion [39], and the Attorney General has filed a Reply [60]. Having considered the record and relevant legal authority, the Court is of the opinion that the Attorney General's Motion [39] should be denied.

I. BACKGROUND

On September 1, 2022, Plaintiffs Amanda Bosarge, Jaquelyn Butler, Kimberly Harrell, William Morgan, Pastor Paul Perkins, Brandi Renfroe, and Dr. Jeana Stanley, individually and on behalf of their minor children ("Plaintiffs"), filed

a Verified Complaint [1] for Declaratory and Injunctive Relief against Defendants Daniel P. Edney, in his official capacity as the State Health Officer; Lynn Fitch, in her official capacity as the Attorney General of Mississippi; Ashley Blackman, in her official capacity as Principal of East Central Lower Elementary School; Dr. Archie R. Mitchell, in his official capacity as Principal of Senatobia Elementary School; Allison Merit, in her official capacity as Principal of North Bay Elementary School; Dr. Ashley Allred, in her official capacity as Principal of Vancleave Upper Elementary School; and Douglas L. Tynes, in his official capacity as City Prosecutor for Ocean Springs, Mississippi ("Defendants"). *See* Compl. [1] at 1-2.[1]

Mississippi law requires that all students attending school in the State be vaccinated against "those diseases specified by the state health officer." *Id.* at 3 (quoting Miss. Code Ann. § 41-23-37). Plaintiffs allege that "Mississippi prohibits religious exemptions for these mandated vaccines," *id.*, even though there is a discretionary "medical exemption system," *id.* at 4; *see id.* at 30-31. The Complaint asserts that "Mississippi has made an unconstitutional value judgment that secular (*i.e.*, medical) motivations for opting out of compulsory immunization are permitted, but that religious motivations are not." *Id.* at 4. Plaintiffs' minor children are unvaccinated due to their parents' religious beliefs, and Plaintiffs claim that due to Mississippi Code § 41-23-37 (the "Compulsory Vaccination Law"), their children

---

[1] Plaintiffs have voluntarily dismissed their claims against Defendant Archie Mitchell, as well as all of Plaintiff William Morgan's claims. *See* Notice [62] at 1-2; Stip. [63] at 1-2. The claims of Plaintiffs Bosarge, Butler, Harrell, Perkins, Renfroe, and Stanley against Defendants Edney, Blackman, Merit, Allred, Tynes, and the Attorney General remain for resolution.

2

have not been allowed to enroll at public or private schools in the State of Mississippi, thereby infringing upon their rights under the Free Exercise Clause of the First Amendment to the United States Constitution. *See id.* at 5-23. The Complaint asks the Court to:

> A. [Enter a] preliminary and permanent injunction prohibiting Defendants, their agents, servants, employees and any other persons acting on their behalf from implementing and enforcing the Compulsory Vaccination Law challenged in this Complaint without providing the option for a religious exemption;
> B. Declare that Miss. Code § 41-23-37 is unconstitutional on its face;
> C. Declare that Miss. Code § 41-23-37 is unconstitutional as applied to Plaintiffs;
> D. Declare that Miss. Code § 41-23-37 violates Plaintiffs' First Amendment right to free exercise of religion;
> E. Grant Plaintiffs reasonable attorneys' fees and costs under 42 U.S.C. § 1988 and any other applicable authority; and
> F. For any such other and further relief as the Court deems equitable and just under the circumstances.

*Id.* at 40.

The Attorney General has filed a Motion [39] for Judgment on the Pleadings or, Alternatively, to Dismiss or Stay Pursuant to the *Pullman* Abstention Doctrine. *See* Mot. [39] (citing *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941)). The Attorney General contends that Plaintiffs' claims are "predicated on an erroneous interpretation of Mississippi law" because the Mississippi Religious Freedom Restoration Act ("MRFRA"), Mississippi Code § 11-61-1, requires the Mississippi State Department of Health ("MSDH") and local school authorities "to offer Plaintiffs the option of a religious exemption." *Id.* at 1. To the extent there is any uncertainty regarding whether the MRFRA compels the religious exemption that Plaintiffs seek, the Attorney General asks the Court in the alternative to

abstain under *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941), in order to permit a Mississippi court to decide that issue. *See id.* at 2.

Plaintiffs respond that the request for judgment on the pleadings should be denied because they "have presented a well-pled complaint with factual allegations supporting a claim under the First Amendment of the United States Constitution that is plausible on its face." Resp. [54] at 2. They further argue that *Pullman* abstention is not warranted because the Compulsory Vaccination Law is plainly unambiguous, even if read in conjunction with MRFRA, and because the totality of the circumstances demonstrate that abstention would be improper. *See id.* at 3.

In Reply [60], the Attorney General maintains that Plaintiffs have failed to read the MRFRA and the school vaccination statute together, as a religious exemption is purportedly "imposed as a matter of law by MRFRA," such that Mississippi law does not violate Plaintiffs' First Amendment rights. Reply [60] at 1; *see id.* at 2-5.

## II.  DISCUSSION

A.  <u>Whether the Attorney General is entitled to judgment on the pleadings</u>

1.  <u>Relevant legal authority</u>

    a.  <u>Federal Rule of Civil Procedure 12(c)</u>

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is analyzed using the same standard as that applicable to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See Laviage v. Fite*, 47 F.4th 402, 405 (5th Cir. 2022). A court must accept well-pleaded facts as true and view

those facts in the light most favorable to the plaintiff. *See PHI Grp., Inc. v. Zurich Am. Ins. Co.*, 58 F.4th 838, 841 (5th Cir. 2023). "To survive a Rule 12(c) motion, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Laviage*, 47 F.4th at 405 (quotation omitted).

A court's review is limited to the pleadings and any attachments thereto. *See PHI Grp., Inc.*, 58 F.4th at 841. The pleadings include the complaint and answer. *See* Fed. R. Civ. P. 7(a). If matters outside the pleadings are presented to and not excluded by a court, a motion for judgment on the pleadings must be treated as one for summary judgment. *See* Fed. R. Civ. P. 12(d); *Jones v. Administrators of Tulane Educ. Fund*, 51 F.4th 101, 111 (5th Cir. 2022). However, documents attached to the motion are considered part of the pleadings if they are referred to in a plaintiff's complaint and are central to her claims. *Jones*, 51 F.4th at 111. In addition, a court may permissibly "take judicial notice of matters of public record." *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).

In this case, the parties have submitted various exhibits in connection with the Attorney General's Motion [39]. Some are properly before the Court, some are not. For instance, the Attorney General has attached an article from the National Conference of State Legislatures' ("NCSL") website, *see* Ex. [39-1], which Plaintiffs cited in their Complaint, and which is central to their claims, *see* Compl. [1] at 3 n.3, 29 n.12. Plaintiffs have also attached to their Response the Mississippi State Department of Health's Medical Exemption Policy. *See* Ex. [54-1]. Plaintiffs referred to this Policy in their Complaint, and it is also central to their claims. *See*

Compl. [1] at 31 n.14. Therefore, the Court may properly consider the NCSL article [39-1] and the Medical Exemption Policy [54-1] in resolving the Attorney General's Motion [39]. *See* Fed. R. Civ. P. 12(d); *Jones*, 51 F.4th at 111.

However, Plaintiffs have submitted three additional exhibits which fall outside the pleadings. *See* Ex. [54-2] (Declaration of Jameson Taylor); Ex. [54-3] (opinion article from the Clarion Ledger); Ex. [54-4] (Associated Press article). It does not appear that Plaintiffs referred to these documents in their Complaint, nor are they central to Plaintiffs' claims. *See* Compl. [1]. The Court will therefore exclude these three exhibits [54-2], [54-3], [54-4] from consideration and will treat the Attorney General's Motion [39] as one properly for judgment on the pleadings, rather than as one for summary judgment. *See* Fed. R. Civ. P. 12(d); *Jones,* 51 F.4th at 111.

    b.    <u>The Free Exercise Clause</u>

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. The "free exercise" component of the First Amendment applies to states through the Fourteenth Amendment, rendering "the legislatures of the states as incompetent as Congress to enact such laws." *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).

The Supreme Court has held that "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Fulton v. City of Philadelphia,* 141 S. Ct. 1868, 1876 (2021) (quotation

omitted). In considering whether a plaintiff's rights under the Free Exercise Clause are infringed, a court must determine whether the plaintiff's religious exercise has been burdened and whether the burden the government has imposed is constitutionally permissible. *Id.* A plaintiff bears the burden of showing an infringement of his rights under the Free Exercise Clause, and if he does so, "the focus then shifts to the defendant to show that its actions were nonetheless justified and tailored consistent with the demands of [Supreme Court] case law." *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2421 (2022).

To establish a free exercise violation, a plaintiff may show that "a government entity has burdened his sincere religious practice pursuant to a policy that is not neutral or generally applicable." *Id.* at 2422 (quotation omitted). If a plaintiff makes this showing, then there is a First Amendment violation unless the government satisfies "strict scrutiny by demonstrating its course was justified by a compelling state interest and was narrowly tailored in pursuit of that interest." *Id.* (quotation omitted).

In determining whether a law is neutral or generally applicable, "[a] law is not generally applicable if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions." *Fulton,* 141 S. Ct. at 1877 (quotation omitted). A law also fails to be generally applicable "if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Id.* A policy is not neutral if it is "specifically directed at religious practice,"

meaning that it either "discriminates on its face" or "religious exercise is otherwise its object." *Kennedy*, 142 S. Ct. at 2422 (quotations omitted). "Failing either the neutrality or general applicability test is sufficient to trigger strict scrutiny." *Id.*

Where strict scrutiny applies, government policy survives "only if it advances interests of the highest order and is narrowly tailored to achieve those interests," meaning that "so long as the government can achieve its interests in a manner that does not burden religion, it must do so." *Fulton*, 141 S. Ct. at 1881 (quotation omitted). When considering the governmental interests at issue, a court must not rely on "broadly formulated interests"; instead, it "must scrutinize the asserted harm of granting specific exemptions to particular religious claimants." *Id.* (quotation omitted). The relevant question in analyzing the government's interest is not whether it has a compelling interest in enforcing its policies generally, but whether it has such an interest in denying a religious exemption to a plaintiff. *Id.*

    c.    <u>Relevant Mississippi law</u>

The statute Plaintiffs challenge here, Mississippi Code § 41-23-37, provides in relevant part as follows:

> Whenever indicated, the state health officer shall specify such immunization practices as may be considered best for the control of vaccine preventable diseases. A listing shall be promulgated annually or more often, if necessary.
>
> Except as provided hereinafter, it shall be unlawful for any child to attend any school, kindergarten or similar type facility intended for the instruction of children (hereinafter called "schools"), either public or private, with the exception of any legitimate home instruction program as defined in Section 37-13-91, Mississippi Code of 1972, for ten (10) or less children who are related within the third degree computed according to the civil law to the operator, *unless they shall first have been*

8

> *vaccinated against those diseases specified by the state health officer.*
>
> *A certificate of exemption from vaccination for medical reasons* may be offered on behalf of a child by a duly licensed physician and may be accepted by the local health officer when, in his opinion, such exemption will not cause undue risk to the community.
>
> \* \* \*
>
> If a child shall offer to enroll at a school without having completed the required vaccinations, the local health officer may grant a period of time up to ninety (90) days for such completion when, in the opinion of the health officer, such delay will not cause undue risk to the child, the school or the community.   No child shall be enrolled without having had at least one (1) dose of each specified vaccine.
>
> \* \* \*
>
> It shall be the responsibility of the person in charge of each school to enforce the requirements for immunization. Any child not in compliance at the end of ninety (90) days from the opening of the fall term must be suspended until in compliance, unless the health officer shall attribute the delay to lack of supply of vaccine or some other such factor clearly making compliance impossible.
>
> Failure to enforce provisions of this section shall constitute a misdemeanor and upon conviction be punishable by fine or imprisonment or both.

Miss. Code Ann. § 41-23-37 (emphasis added).   The face of the statute affords no exemption for religious beliefs, and the Complaint alleges that this constitutes "an unconstitutional value judgment that secular (*i.e.,* medical) motivations for opting out of compulsory immunization are permitted, but that religious motivations are not."   Compl. [1] at 33.

The Attorney General maintains that the existence of the MRFRA remedies any constitutional defect in the Compulsory Vaccination Law.   *See* Mem. [40] at 1, 3, 6-8.   The stated purpose of the MRFRA is to:

> (a) To restore the compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398 (1963), and *Wisconsin v. Yoder*, 406 U.S. 205 (1972), and to guarantee its application in all cases where free

9

          exercise of religion is substantially burdened; and
(b)      To provide a claim or defense to persons whose religious exercise is substantially burdened by government.

Miss. Code Ann. § 11-61-1(3).

     In *Sherbert* and *Yoder*, the Supreme Court "looked beyond broadly formulated interests justifying the general applicability of government mandates and scrutinized the asserted harm of granting specific exemptions to particular religious claimants." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 431 (2006) (citing *Sherbert*, 374 U.S. at 410; *Yoder*, 406 U.S. at 213, 221). In other words, the Supreme Court applied strict scrutiny even if a law was generally applicable but infringed a plaintiff's free exercise rights. *See generally id.* The Supreme Court subsequently narrowed the application of strict scrutiny in free exercise cases and held that the compelling interest test does not apply to a valid and neutral law of general applicability, even if the law requires conduct that an individual's religion proscribes. *See Emp. Div., Dep't of Hum. Res. v. Smith*, 494 U.S. 872, 878-82 (1990)). In response to *Smith* and other developments in the law, Mississippi enacted the MRFRA in an effort to restore the compelling interest test set forth in *Sherbert* and *Yoder* by codifying it as state law. *See* Miss. Code Ann. § 11-61-1(3).[2]

---

[2] In *Smith*, the Supreme Court "largely repudiated the method of analysis" in *Sherbert* and *Yoder* and held that "neutral, generally applicable laws that incidentally burden the exercise of religion usually do not violate the Free Exercise Clause of the First Amendment." *Holt v. Hobbs*, 574 U.S. 352, 356-57 (2015) (citing *Smith*, 494 U.S. at 878-82). Following the *Smith* decision in 1990, Congress enacted the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc, *et seq.*, and the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb, *et seq.*, "in order to provide very broad protection for religious liberty." *Id.* at 356. Because the Supreme Court later held

10

Under the MRFRA,

(5)(a) Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in paragraph (b) of this subsection.

(b) Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person:
  (i) Is in furtherance of a compelling governmental interest; and
  (ii) Is the least restrictive means of furthering that compelling governmental interest.

(6) A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against the government . . . .

Miss. Code Ann. § 11-61-1(5)-(6).[3]

The MRFRA defines "Government" as "any branch, department, agency, instrumentality or political subdivision of the State of Mississippi and any official or other person acting under color of law of the State of Mississippi."  Miss. Code Ann. § 11-61-1(4)(a).  And according to the statute, it "applies to all state laws, rules, regulations and any municipal or county ordinances, rules or regulations and the implementation of those laws, whether statutory or otherwise, and whether adopted before or after July 1, 2014," and "[a]ny such law, rule, regulation or ordinances adopted after July 1, 2014, shall be subject to this section unless such law explicitly

---

the RFRA as applied to the states was unconstitutional under the Fourteenth Amendment, *see City of Boerne v. Flores*, 521 U.S. 507, 529-36 (1997), "many states passed their own versions of the law," *Warner v. City of Boca Raton*, 267 F.3d 1223, 1227 (11th Cir. 2001).  Mississippi's MRFRA is one such example.

[3] The MRFRA permits a person whose religious exercise has been burdened to assert a state-law claim under the statute.  *See* Miss. Code Ann. § 11-61-1(6).  Plaintiffs in this case have not asserted any state-law claims under MRFRA.  *See* Compl. [1].

excludes such application by reference to this section." Miss. Code Ann. § 11-61-1(7).

The Attorney General takes the position that the MRFRA requires the Mississippi State Department of Health and local school authorities to afford Plaintiffs' minor children a religious exemption option from the vaccination statute. *See* Mem. [40] at 1, 5-8. According to the Attorney General, the MRFRA essentially "saves" the vaccination regime from Plaintiffs' First Amendment claims. *See id.*

2.  Analysis

Plaintiffs' Complaint alleges that their children are unvaccinated due to their parents' (Plaintiffs') religious beliefs, and that they have been prevented from enrolling in schools in Mississippi because the Compulsory Vaccination Law does not afford a religious exemption from the school vaccination requirement. *See* Compl. [1] at 5-23. Plaintiffs raise facial and as-applied challenges to the statute and claim that Defendants have violated their rights under the Free Exercise Clause of the First Amendment by not providing such an exemption. *See id.* The Attorney General does not dispute that, read in isolation and in the absence of the MRFRA, the Compulsory Vaccination Law would not survive strict scrutiny and thus would violate the Free Exercise Clause of the First Amendment. *See, e.g.*, Rebuttal [60] at 3 (agreeing that "§ 41-23-37 could not withstand strict scrutiny if state law did not provide a religious-exemption mechanism," but arguing that "the state law in question is not simply § 41-23-37 but rather § 41-23-37 plus MRFRA."

(emphasis in original)).

In matters of statutory interpretation, a court begins with the text of the statute, by looking at the relevant statutory provision, which may be "clarified by the remainder of the statutory scheme." *United States v. Palomares*, 52 F.4th 640, 642-43 (5th Cir. 2022) (quotation omitted).  A court must "consider the text holistically, accounting for the full text, language as well as punctuation, structure, and subject matter."  *Id.* at 643 (quotation omitted).

The Attorney General admits in her briefing that the lack of a religious exemption to the Compulsory Vaccination Law does not constitute the least restrictive means of furthering a compelling governmental interest, *see, e.g.*, Rebuttal [60] at 3, but contends that the "MRFRA can and should be read to require provision of a religious-exemption option," *id.* at 5.  Plaintiffs counter that, "despite the passage of MRFRA in 2014, there has been no change in Mississippi's official policy that a religious exemption is *not* permitted in Mississippi," which is "why Plaintiffs' children continue to remain excluded from school despite making requests, in schools across the state, for a religious exemption."  Mem. [55] at 4 (emphasis in original).

The Court is of the view that, at this stage of the proceedings, the Complaint pleads sufficient facts, if accepted as true, to state a legal claim to relief that is plausible on its face.  *See Laviage*, 47 F.4th at 405.  Plaintiffs allege that because of their religious beliefs and due to the facial and as-applied infirmities in the vaccination law, their free exercise rights are burdened in that their children are

13

unable to attend public or private school in Mississippi.

As it relates to Plaintiffs' as-applied challenge, the Complaint [1] contains sufficient facts plausibly alleging that even if the Compulsory Vaccine Law does not on its face violate the Free Exercise Clause, Defendants' application and enforcement of that law have had the effect of doing so.  *See, e.g.,* Compl. [1] at 10 (alleging that one plaintiff attempted to enroll her daughter in school, "was instructed to fill out a proof of immunization form," and was referred to the Mississippi Department of Health when she inquired whether the school would consider her religious exemption request, and when she called, a Health Department represented advised her that "Mississippi does not do any religious exemptions"), 13 (stating that another plaintiff attempted to enroll her children in a school with religious exemption documentation, was informed by school administrators that "Mississippi only accepts medical exemptions," was referred to the Mississippi Department of Health to verify, and was told when she called the Department of Health that "Mississippi would consider medical exemption requests, but not religious exemptions").

Plaintiffs further argue that the MRFRA does not save the vaccination statute because no change has occurred since the MRFRA's enactment, which is why Plaintiffs' children continue to be unable to attend Mississippi schools in spite of their requests for a religious exemption from the vaccination requirement.  *See* Mem. [55] at 4.  The Court finds that the above facts, if accepted as true, constitute sufficient factual matter to state a claim to relief that is plausible on its face, and

that judgment on the pleadings would therefore not be appropriate.  *See Laviage*, 47 F.4th at 405.

B.      Should the Court abstain under *Pullman*?

The Attorney General argues that, if the Court finds any uncertainty as to whether the MRFRA mandates the religious-exemption option that Plaintiffs seek, it should nevertheless abstain from deciding this case under *Pullman* until a Mississippi state court can first decide that issue.  *See* Mot. [39] at 2.   Under the *Pullman* abstention doctrine, "federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided."  *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984).  *Pullman* abstention is a discretionary doctrine permitting a court to decline to decide a case over which it would otherwise have jurisdiction.  *See Word of Faith World Outreach Ctr. Church, Inc. v. Morales*, 986 F.2d 962, 966 (5th Cir. 1993).

The purpose of *Pullman* abstention is "to avoid resolving the federal question by encouraging a state-law determination that may moot the federal controversy."  *San Remo Hotel, L.P. v. City & Cnty. of San Francisco*, 545 U.S. 323, 339 (2005).  In this way, *Pullman* abstention avoids "both unnecessary adjudication of federal questions and needless friction with state policies."  *Midkiff*, 467 U.S. at 236 (quotation omitted). "If the state courts would be likely to construe the statute in a fashion that would avoid the need for a federal constitutional ruling or otherwise significantly modify the federal claim, the argument for abstention is strong."

15

*Harris Cnty. Comm'rs Ct. v. Moore*, 420 U.S. 77, 84 (1975).

The Supreme Court has explained that "*Pullman* abstention is limited to uncertain questions of state law because abstention from the exercise of federal jurisdiction is the exception, not the rule." *Midkiff*, 467 U.S. at 236 (quotation omitted). A federal court need not abstain under *Pullman* "when a state statute is not fairly subject to an interpretation which will render unnecessary adjudication of the federal constitutional question." *Id.* In other words, "[i]f the statute is not obviously susceptible of a limiting construction, then even if the statute has never been interpreted by a state tribunal it is the duty of the federal court to exercise its properly invoked jurisdiction." *City of Houston v. Hill*, 482 U.S. 451, 468 (1987) (quotation omitted). In short, if there is no uncertain question of state law, abstention is not required. *See id.*; *Midkiff*, 467 U.S. at 236-37.

Plaintiffs bring both facial and as-applied challenges to the constitutionality of the Mississippi Compulsory Vaccination Law. *See* Compl. [1] at 40. A facial challenge to the constitutionality of the statute presents a "pure question of law," *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 662 (5th Cir. 2006), while an as-applied challenge considers whether the statute is unconstitutional as interpreted and enforced against Plaintiffs, *see, e.g., Roy v. City of Monroe*, 950 F.3d 245, 250 (5th Cir. 2020).

The Attorney General suggests this Court should abstain to the extent there is any uncertainty whether MRFRA compels the religious exemption that Plaintiffs seek in order to allow a Mississippi court to decide that issue. *See* Mot. [39] at 2.

Plaintiffs respond that *Pullman* abstention is not warranted because Mississippi Code § 41-23-37 is unambiguous, even if read in conjunction with MRFRA, and because the totality of the circumstances demonstrate that abstention would be improper.   *See* Resp. [54] at 3.

In considering whether to abstain under *Pullman* with respect to Plaintiffs' facial challenge, the relevant question is whether the state statutes are "fairly subject to an interpretation which will render unnecessary adjudication of the federal constitutional question"; if not, the Court need not abstain.   *Midkiff*, 467 U.S. at 236 (quotation omitted); *see Hill*, 482 U.S. at 468.   In other words, the Court must consider whether the Compulsory Vaccine Law's language is plain and unambiguous or whether the statute's constitutionality can "turn upon a choice between one or several alternative meanings."   *Hill*, 482 U.S. at 468 (quotation omitted).

In essence, the Compulsory Vaccination Law requires a child to "first have been vaccinated against those diseases specified by a state health officer" before she may attend school, unless the child receives a "certificate of exemption from vaccination for medical reasons."   Miss. Code Ann. § 41-23-37.   On the face of the statute, there is no religious exemption permitted to the vaccine requirement.   *See id.*   In turn, the MRFRA provides that the State shall not "substantially burden a person's exercise of religion," unless it "demonstrates that application of the burden to the person: (i) Is in furtherance of a compelling governmental interest; and (ii) Is the least restrictive means of furthering that compelling governmental interest."

17

Miss. Code Ann. § 11-61-1(5). This provision applies to all State laws, which the Attorney General argues would include the Mississippi Compulsory Vaccination Law. *See* Miss. Code Ann. § 11-61-1(7). The text of both statutes is plain and unambiguous, and their constitutionality does not "turn upon a choice between one or several alternative meanings." *Hill*, 482 U.S. at 468. *Pullman* abstention would therefore not appropriate as to Plaintiffs' facial challenge. *See id.*

Nor would a state court's determination in favor of the Attorney General as to the facial challenge moot the federal controversy with respect to Plaintiffs' as-applied challenge, as this Court would still have to address whether the manner in which the State applies or enforces the vaccination regime violates Plaintiff's free exercise rights. This further militates against abstention. *See generally San Remo Hotel, L.P.*, 545 U.S. at 339. In short, the Court finds that abstention would not be appropriate in this case.

## III. CONCLUSION

To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result. The Attorney General's Motion [39] for Judgment on the Pleadings or, Alternatively, to Dismiss or Stay Pursuant to *Pullman* Abstention Doctrine is not well taken and will be denied.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion [39] for Judgment on the Pleadings or, Alternatively, to Dismiss or Stay Pursuant to

*Pullman* Abstention Doctrine filed by Defendant Lynn Fitch, in her official capacity as the Attorney General of Mississippi, is **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 9th day of March, 2023.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE