UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| **AMANDA BOSARGE, individually and on behalf of their minor children, et al.,**<br><br>*Plaintiffs,*<br><br>-against-<br><br>**DANIEL P. EDNEY, in his official capacity as the State Health Officer, et al.,**<br><br>*Defendants.* | Civil Action No.<br>1:22-cv-00233-HSO-BWR |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
THEIR MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs Amanda Bosarge, Jaquelyn Butler, Kimberly Harrell, Pastor Paul Perkins, Brandi Renfroe, and Dr. Jeana Stanley (collectively, "**Plaintiffs**") and defendant Attorney General Lynn Fitch ("**Defendant**") fully briefed Plaintiffs' motion for a preliminary injunction (Dkt. 5, 41, 42, 56 and 57) and, as ordered by the Court, Plaintiffs hereby submit a supplemental brief in further support of their request for preliminary injunctive relief, including the scope and specific relief sought, in relation to Plaintiffs' challenge to Miss. Code § 41-23-37 (the "**Compulsory Vaccination Law**"). In an effort to be succinct, Plaintiffs have not repeated the facts of this case, the background of this matter, or the history of religious exemptions to vaccines in Mississippi, but, have instead, as the Court directed in a recent telephonic status conference, focused on the preliminary injunction standard, how it is met in this case, and the scope of relief sought.

1

**I.    PRELIMINARY INJUNCTION STANDARD**

The movant seeking a preliminary injunction must establish: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009).

Regarding the first element, a heightened standard applies where, as here, a party requests a mandatory injunction seeking to upend the *status quo*. In such cases, the moving party must establish a "clear entitlement to relief." *Justin Indus., Inc. v. Choctaw Secs., L.P.*, 920 F.2d 262, 268 n.7 (5th Cir. 1990). However, the Fifth Circuit has stated a preliminary injunction is appropriate where, like here, the *status quo* is clearly causing irreparable injury. *See Canal Authority of the State of Florida v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974) (when examining a request for a mandatory injunction, "the focus always must be on prevention of injury by a proper order, not merely on preservation of the status quo").

The Fifth Circuit and its District Courts carefully examine cases challenging the *status quo* and have issued mandatory injunctions where constitutional rights are at play. *See, e.g.*, *Byrum*, 566 F.3d at 449 (reversing district court's denial of a preliminary injunction sought under the First Amendment and ordering a preliminary injunction against a seventeen-year-old statute prohibiting the use of the phrase "interior designer" by unlicensed professionals); *Speaks v. Kruse*, 445 F.3d 396, 402 (5th Cir. 2006) (ordering a preliminary injunction against a fourteen-year-old chiropractor solicitation law challenged under the First Amendment); *Armstrong v. Bd. of Educ.*, 323 F.2d 333, 338 (5th Cir. 1963) (in case implicating constitutional rights, the Fifth Circuit entered an order upending the *status quo* of school segregation); *Three Expo Events, L.L.C. v. City*

*of Dallas, Texas*, 182 F.Supp.3d 614, 622 (N.D. Tex. 2016) (mandatory injunction issued on First Amendment grounds after the City of Dallas refused to enter into a contract with adult entertainment exposition).

District Courts in the Fifth Circuit have also issued mandatory injunctions in other situations, regardless of whether constitutional rights are at issue. *See, e.g.*, *Marett v. Scott*, Civil Action No. 2:99cv244-D-B, 2000 U.S. Dist. LEXIS 5356, at *12 (N.D. Miss. Apr. 7, 2000) (in case that did not implicate constitutional rights, mandatory injunction issued where the "currently existing *status quo*" was causing irreparable injury); *ExxonMobil Pipeline Co. v. Landry*, No. 15-824-JWD-EWD, 2016 U.S. Dist. LEXIS 8713, at *7 (M.D. La. Jan. 26, 2016) (same).

## II. PLAINTIFFS HAVE ESTABLISHED LIKELIHOOD OF SUCCESS ON THE MERITS AND A CLEAR ENTITLEMENT TO RELIEF

### A. *Plaintiffs' Sincere Religious Beliefs Have Been Substantially Burdened by the State*

It is not disputed, at least for purposes of this preliminary injunction motion, that Plaintiffs have sincerely held religious beliefs that are substantially burdened by Defendant's vaccination mandate. (Dkt. 1-1, 1-2, 1-3, 1-4, 1-7, and 1-8); *see also* (Dkt. 61 at 3) ("[T]he Attorney General does not question the sincerity of Plaintiffs' religious beliefs."); (Dkt. 43). While the particulars of their beliefs differ, Plaintiffs are bound together in two significant regards: their religious convictions that prevent them from vaccinating their children are deeply held and substantially burdened by the Compulsory Vaccination Law; and their decision to uphold their religious convictions has entailed significant sacrifices and caused irreparable harm.

Each Plaintiff attempted to enroll his or her children in Mississippi schools and each was rejected. Plaintiffs' children have been barred from Mississippi's public and private educational system because of their parents' religious beliefs. Plaintiffs' children are unable to access the practical and social benefits of a typical education enjoyed by their secular peers. They have been

3

barred despite the fact that Mississippi requires children between the ages of six and seventeen to be enrolled in school, *see* Miss. Code § 37-13-91, and the Mississippi Supreme Court has held "the right to a minimally adequate public education created and entailed by the laws of this state is one we can only label fundamental" and that the "right to a public education is a fundamental right protected by states." *Clinton Mun. Separate Sch. Dist. v. Byrd*, 477 So.2d 237, 240 (Miss. 1985).

### B. For a Variety of Independent Reasons, the Compulsory Vaccination Law Triggers Strict Judicial Scrutiny

Mississippi has instituted a discretionary exemption scheme to the Compulsory Vaccination Law that benefits certain individuals (secular) and deliberately excludes others (non-secular). Students are not permitted to seek exemption from the required vaccines for religious reasons. However, students *are* permitted to seek a medical exemption from the required vaccines.

Through the plain language of the relevant statute, Mississippi has reserved discretion to accept or deny medical exemptions. The Compulsory Vaccination Law states: "A certificate of exemption from vaccination for medical reasons may be offered on behalf of a child by a duly licensed physician and may be accepted by the local health officer when, in his opinion, such exemption will not cause undue risk to the community." Miss. Code § 41-23-37. It offers no similar pathway for an exemption where the requirement substantially burdens a sincerely held religious belief.

Mississippi has therefore instituted a discretionary exemption scheme to the Compulsory Vaccination Law that benefits certain individuals (citizens with secular objections to compulsory vaccination) and deliberately excludes others (religious objectors). This exemption scheme fails the First Amendment's neutrality and general applicability tests for multiple independent reasons.

First, it fails the general applicability test under *Fulton v. City of Philadelphia*, 141 S.Ct. 1868 (2021) because it permits discretionary medical exemptions which are reviewed on an

individualized basis, but prohibits a commensurate religious exemption process. *See* Dkt. 5 at 16-17. This exemption scheme lacks general applicability because it "invite[s] the government to decide which reasons for not complying with the policy are worthy of solicitude." *Id.* at 1879 (quoting *Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872, 876 (1990)). Because Mississippi has determined that religious objections are not worthy of solicitude, but that medical exemptions are, the regulation is not generally applicable.

Second, the regulation in question also lacks generally applicability under *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 531-32 (1993) and its progeny because it permits secular conduct but prohibits religious observance in a manner "that undermines the government's asserted interests in a similar way." *Id.*; *see also* Dkt. 5 at 14-16. While Mississippi outright bans religious exemptions, the State has granted 1,970 medical exemptions over the past six years, demonstrating the statute's severe under-inclusivity and consequent lack of general applicability.

Third, the Compulsory Vaccination Law fails both the neutrality and general applicability tests under *Tandon v. Newsom*, 141 S. Ct. 1294 (2021), and *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020), because it treats secular activity "more favorably" than "comparable" religious exercise. *See* Dkt. 5 at 17-20. In the context of regulations seeking to minimize the spread of infectious disease, comparability "is concerned with the risks various activities pose, not the reasons why" individuals engage in those activities. *Tandon*, 141 S. Ct. at 1294, 1296. A child with a religious exemption presents the same purported risk as a child possessing a medical exemption, and Mississippi does not require proof of immunization for any other activities, including for adults working in the school system.

The Fifth Circuit Court of Appeals in *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336 (5th Cir. 2022), concluded that processing and granting of medical exceptions, and refusal to accept religious exceptions on the same footing, rendered the policy invalid under both the Religious Freedom Restoration Act of 1993 and the First Amendment. *Id.* And, again in 2022, the Fifth Circuit found that favoritism to secular exemptions and distaste for religious exemptions is a form of prohibited discrimination. *See, e.g.*, *Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 U.S. App. LEXIS 4347 (5th Cir. 2022).

Finally, for preservation purposes, Plaintiffs highlight that this case also presents hybrid Free Exercise clause claims under *Employment Division v. Smith*, 494 U.S. 872 (1990), as this case involves the right of parents to make educational decisions, which also invokes strict scrutiny.

### C. The Compulsory Vaccination Law Cannot Withstand Strict Scrutiny

The Compulsory Vaccination Law fails strict scrutiny because the State has shown that its interests are not, in fact, compelling for purposes of burdening First Amendment religious exercise and because the regulation at issue is not narrowly tailored. As the Court explained,

> Where strict scrutiny applies, government policy survives "only if it advances interests of the highest order and is narrowly tailored to achieve those interests," meaning that "so long as the government can achieve its interests in a manner that does not burden religion, it must do so." When considering the governmental interests at issue, a court must not rely on "broad formulated interests"; instead, it "must scrutinize the asserted harm of granting specific exemptions to particular religious claimants."

*Bosarge v. Edney*, 1:22-cv-00233-HSO-BWR, at 8 (S.D. Miss. Mar. 17, 2023) (Dkt. 65) (quoting *Fulton*, 141 S. Ct. at 1881). Meaning, "[t]he relevant question in analyzing the government's interest is not whether it has a compelling interest in enforcing its policies generally, but whether it has such an interest in denying a religious exemption to a plaintiff." *Id.*

6

Of course, having triggered strict scrutiny, the Compulsory Vaccination Law cannot stand. That is because Defendant must show narrow tailoring, which "requires the government to show that measures less restrictive of the First Amendment activity could not address its interest in reducing the spread of [disease]." *Tandon,* 141 S. Ct. at 1294, 1296. Where, as here, Defendant provides secular exemptions to their requirements, she "must show that the religious exercise at issue is more dangerous than those activities even when the same precautions are applied." *Id*. But Defendant has never even attempted to demonstrate that the secular exemptions permitted are less dangerous than the religious exemptions that are prohibited. Thus, the exemptions permitted for secular reasons must also suffice for religious exemptions. *Id.*

Mississippi cannot show that its interest is sufficiently compelling for purposes of restricting First Amendment religious freedoms. While the state may have a generalized public health interest in counteracting the spread of communicable diseases, its interest is apparently not so urgent as to prohibit secular exceptions. A "law cannot be regarded as protecting an interest of the highest order when it leaves appreciable damage to that supposedly vital interest unprohibited." *Church of Lukumi*, 508 U.S. at 547.

In the context of similar mandatory immunization requirements, courts across the country have rejected claims of a compelling interest where the government grants secular medical exceptions to otherwise mandatory immunization requirements. *See, e.g.*, *U.S. Navy Seals*, 27 F.4th at 352 (Navy's decision to grant medical exemptions to its mandatory vaccination policy was a "telltale sign that the government's interest in enacting a liberty-restraining pronouncement [was] not in fact compelling"); *Schelske v. Austin*, No. 6:22-CV-049-H, 2022 U.S. Dist. LEXIS 229432, at *67 (N.D. Tex. Dec. 21, 2022) (same); *Doster v. Kendall*, 54 F.4th 398, 423 (6th Cir. 2022)

(The existence of secular exemptions to compulsory vaccination policy "produc[ed] substantial harm" to the Air Force's "health and readiness interests" it "claim[ed] to be compelling.").

Even if Mississippi could demonstrate a sufficiently compelling interest, the Compulsory Vaccination Law nonetheless fails strict scrutiny because it lacks narrow tailoring. If the government can achieve its interests in a manner "that does not burden religion," narrow tailoring requires that it do so. *Bosarge v. Edney*, 1:22-cv-00233-HSO-BWR, at 8 (S.D. Miss. Mar. 9, 2023) (Dkt. 65). Here, however, Mississippi has failed to meet the precise tailoring the First Amendment requires. Rather, as explicitly stated in the *Brown* case and as evidenced in the subsequent legislative removal of the prior religious exemption, the State's actual intention was to eradicate any possibility for religious exercise in the compulsory vaccination arena. *See* Dkt. 5 at 20-23.

Defendant's opposition to Plaintiffs' motion for a preliminary injunction, in fact, did not dispute that Plaintiffs' free exercise rights have been violated by the lack of a religious exemption to the Compulsory Vaccination Law. As the Court explained, "The Attorney General does not dispute that, read in isolation and in the absence of MRFRA, the Compulsory Vaccination Law would not survive strict scrutiny and thus would violate the Free Exercise Clause of the First Amendment." *Bosarge v. Edney,* 1:22-cv-00233-HSO-BWR, at 12 (S.D. Miss. Mar. 9, 2023) (Dkt. 65) (citing Dkt. 60 and agreeing that "§ 41-23-37 could not withstand strict scrutiny if state law did not provide a religious-exemption mechanism"); *see also* Dkt. 40 at 7 (Defendant stating that "given the prevalence of state laws providing for religious (or philosophical) exemptions from compulsory school vaccination laws in states across the country . . . it is not tenable to maintain that having no religious exemption option is 'the least restrictive means' of furthering a compelling governmental interest.").

Therefore, considering these factors, Plaintiffs have demonstrated a likelihood of success on the merits and a clear entitlement to relief.

### III.     PLAINTIFFS HAVE ESTABLISHED IRREPARABLE HARM

Plaintiffs have and are continuing to endure ongoing irreparable injuries. Plaintiffs' children cannot attend school unless Plaintiffs violate their sincerely held religious beliefs. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). That extends to the loss of "free exercise rights 'for even minimal periods of time.'" *Tandon,* 141 S. Ct. 1294 at 1297.

Here, the violation of Plaintiffs' First Amendment Free Exercise rights alone constitutes irreparable injury as a matter of law. *Id. See also Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012) (finding sufficient irreparable harm where it was substantially likely First Amendment violations had occurred, and, therefore no further showing of irreparable harm was necessary); *U.S. Navy Seals 1-26*, 27 F.4th 336, 348 (finding that a vaccination mandate against religious beliefs was irreparable harm because it would "crush Plaintiffs' free exercise of religion"). And factors in addition to constitutional violations can be sufficient to demonstrate irreparable harm. *See, e.g.*, *Doster v. Kendall*, 54 F.4th 398 (6th Cir. 2022) (finding irreparable harm where Plaintiffs were merely threatened with possible discharge from the Air Force for refusing a vaccine that violated their beliefs); *BST Holdings v. Occupational Safety & Health Admin.*, 17 F.4th 604, 618 (5th Cir. 2021) (finding irreparable injury was sufficiently demonstrated where OSHA's vaccination mandate threatened "to substantially burden the liberty interests of reluctant individual recipients put to a choice between their job(s) and their jab(s)"); *U.S. Navy SEALs 1-26*, 578 F. Supp. 3d 822, 834 (finding that Navy Seal plaintiffs had sufficiently

9

demonstrated irreparable injuries where they were non-deployable while their religious exemptions to the military's vaccination mandate were pending).

Additionally, the Supreme Court has repeatedly held that the denial of benefits due to a person's religious beliefs when those benefits are afforded to others is a First Amendment harm. *See Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012 (2017) (ineligibility of grants afforded to others violated the First Amendment Free Exercise Clause); *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707 (1981) (denying unemployment benefits to those terminated due to their religious beliefs violated the Free Exercise Clause); *Fulton*, 141 S. Ct. 1868 (refusal to contract with a group unless its members agreed to violate their religious beliefs violated the Free Exercise Clause*); Sherbert v. Verner*, 374 U.S. 398 (1968) (benefits cannot be conditioned on relinquishment of religious rights); *Hobbie v. Unemployment Appeals Com.*, 480 U.S. 136 (1987) (same).

Moreover, putting aside the First Amendment, the categorical exclusion of Plaintiffs' children from school alone is a separate and independent irreparable constitutional harm because Mississippi's Constitution combined with the Fourteenth Amendment guarantees a free public-school education. *See Hill v. Rankin County, Miss. Sch. Dist.*, 843 F. Supp. 1112, 1117 (S.D. Miss. 1993) (Mississippi Code provides schoolchildren the right to a free public education); *see also Goss v. Lopez*, 419 U.S. 565, 95 (1975) (when state law creates a right to public education, that right becomes protected by the Due Process Clause of the Fourteenth Amendment). Even the interruption or denial of an education can constitute irreparable harm. *See, e.g.*, *Ala. Coushatta v. Big Sandy Sch.*, 817 F. Supp. 1319, 1336-37 (E.D. Tex. 1993) (finding irreparable harm where "Native American students would be placed in the deplorable position of choosing between the free exercise of their religious beliefs and obtaining an adequate education" if they did not comply

10

with school's hair length policy). Here, Plaintiffs' children are prohibited from attending school in Mississippi, a harm which has occurred every day since they were eligible to attend school, including today, and will continue tomorrow and every day henceforth absent injunctive relief.

Plaintiffs have also been irreparably harmed on additional fronts. Plaintiffs are threatened with criminal prosecution under Miss. Code § 97-5-39 should they fail to educate their children, and Plaintiff Pastor Paul Perkins is subject to additional criminal prosecution under Miss. Code § 37-13-91 were he to enroll his daughter in the school where he serves as headmaster.

Plaintiffs have also endured significant practical and financial hardships for upholding their religious convictions. *BST Holdings, L.L.C.*, 17 F.4th 604, 618 (determining burdens of certain regulatory compliance and monetary injuries as sufficiently irreparable). Every Plaintiff has suffered for his or her decision to maintain his or her religious beliefs. Plaintiffs Dr. Jeana Stanley and Brandi Renfroe uprooted their families and moved to Alabama so that their children could be educated in a state that permits religious exemptions, while traveling back and forth to Mississippi to maintain their Mississippi-based careers. Plaintiff Kimberly Harrell is preparing to move to another state so her children can obtain a formal education. Plaintiffs Amanda Bosarge, Kimberly Harrell, and Pastor Paul Perkins, at significant financial and professional costs, have been forced to homeschool their children, the only option Mississippi permits absent a medical exemption. Plaintiffs' injuries – past, ongoing, and imminent – are irreparable and support injunctive relief.

## IV. PLAINTIFFS HAVE ESTABLISHED THAT THE PUBLIC INTEREST AND BALANCE OF HARMS TILT IN THEIR FAVOR

The balance of harms and public interest preliminary injunction factors likewise strongly favor an injunction. "These factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). An injunction will not disserve the public interest where "it will prevent constitutional deprivations." *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 458

n.9 (5th Cir. 2014). In fact, "injunctions protecting First Amendment freedoms are always in the public interest." *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013).

Since the Compulsory Vaccination Law violates the First Amendment, both facially and as applied, any contention that injunctive relief poses an unacceptable burden on the health department and/or local school systems is meritless. In any event, forty-four other states and Washington D.C. have seamlessly instituted religious exemption processes, typically with a simple form submitted by a parent seeking a religious exemption. Indeed, Mississippi already has a mechanism for accepting exemptions; it just accepts only secular ones, and could easily incorporate a religious exemption process into that established process.

Even during an international pandemic, the public interest and balance of harms is not so great as to suspend the Constitution. *See Catholic Diocese v. Cuomo*, 141 S. Ct. at 66; *Tandon*, 141 S. Ct. 1294 at 1297; *Texas Democratic Party v. Abbott*, 961 F.3d 389, 413 (5th Cir. 2020) ("We do not suspend the Constitution during a pandemic."). Here, where there is no pandemic, that is at least equally as true. Plaintiffs' First Amendment rights do not evaporate merely because the State invokes a purported interest in infectious diseases. Defendant's sledgehammer approach to religious believers is also irrational given that the Defendant's interest is not so compelling as to forbid medical exemptions, does not require proof of immunization in nearly any other context or for adults (who constitute more than 76% of the state's population), and forty-four states, including all of Mississippi's adjacent neighbors, permit a religious exemption to their childhood immunization requirements.

Moreover, Plaintiffs seek the exact same relief under the First Amendment as the Attorney General asserts that the Mississippi Religious Freedom Restoration Act ("**MRFRA**") compels. *See* Dkt. 42 at 11 (asserting that "MRFRA requires a religious exemption option"). While *Brown v.*

*Stone*, 378 So. 2d 218 (Miss. 1979) prevents MRFRA from affording a religious exemption, the Attorney General has made clear that she believes the Mississippi legislature, when enacting MRFRA, believed it was in the public interest to provide a religious exemption for schoolchildren.

Considering these factors, Defendant cannot demonstrate that the public interest or the balancing of the harms requires Mississippi families to discard their religious convictions, and their constitutional rights, so that their children can benefit from a formal education. Additionally, Defendant cannot credibly argue that the public interest requires the government to compound these constitutional and dignitary harms by causing Plaintiffs to continue suffering and making significant sacrifices should they maintain their religious beliefs.

## V.   SCOPE OF RELIEF

Plaintiffs respectfully request the same scope of relief as provided for in their complaint: "A preliminary … injunction prohibiting Defendants, their agents, servants, employees and any other persons acting on their behalf from implementing and enforcing the Compulsory Vaccination Law challenged in this Complaint without providing the option for a religious exemption." (Dkt. 1 at 40). Plaintiffs' requested relief is therefore narrowly tailored to only seeking injunctive relief against the Compulsory Vaccination Law to the extent it prohibits a mechanism for families to seek a religious exemption. Such an injunction would leave in place Defendant's ability to enforce the Compulsory Vaccination Law against families that are not asserting a religious exemption.

Plaintiffs request that the Court, if it finds the foregoing relief insufficient, also grant "such other and further relief as the Court deems equitable and just under the circumstances." *Id.* The Supreme Court has held that this form of catch-all pleading allows a district court to award any appropriate relief at law or in equity—including relief that the parties do not specifically request in subsequent briefing. *See, e.g.*, *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2307

(2016) ("[O]nce a case is brought, no general categorical line bars a court from making broader pronouncements of invalidity in properly 'as-applied' cases" (quoting Richard Fallon, *As-Applied and Facial Challenges and Third-Party Standing*, 113 Harv. L. Rev. 1321, 1339 (2000)); Fed. R. Civ. P. 54(c) (A "final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.").

In formulating remedies in cases involving constitutional violations, as in any equity case, the nature of the violation determines the scope of the remedy. *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 16 (1971). Because the statute at issue is unconstitutional as applied to any parent or child who has a sincere religious objection to it, the scope of any injunction should extend to prohibit enforcement of it against such persons, and there is a significant body of case law that supports this application. *See, e.g.*, *Brown v. Entm't Merchs. Ass'n,* 564 U.S. 786 (2011) (upholding flatly enjoining unconstitutional statute); *Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274 (5th Cir. 1996) (upholding enjoining unconstitutional Mississippi statute).

Plaintiffs merely request that Mississippi families be afforded a process to seek a potential religious exemption, just as other families can seek a medical exemption.[1] We have proposed an order that outlines the relief sought.

## **CONCLUSION**

Plaintiffs possess clear entitlement to preliminary injunctive relief. Mississippi permits discretionary secular exemptions while it simultaneously prohibits religious exemptions to its mandatory immunization scheme. On its face, and for a variety of independent reasons, this policy

---

[1] Forty-four other states possess an uncomplicated and easily administered religious exemption process. For example, the following is a copy of Louisiana's religious exemption form for attending school: https://ldh.la.gov/assets/oph/Center-PHCH/Center-PH/immunizations/statement-of-exemption-from-immunizations.pdf

violates the First Amendment. Plaintiffs respectfully request this Court grant the motion for a preliminary injunction prohibiting Defendants, their agents, servants, employees and any other persons acting on their behalf from implementing and enforcing the Compulsory Vaccination Law against families asserting religious objections to the State's vaccination requirements without providing the option for a religious exemption.

Dated: March 24, 2023

Respectfully submitted,

SIRI & GLIMSTAD LLP

/s/ *Walker D. Moller*

Walker Moller, Attorney
Mississippi Bar Number: 105187
1005 Congress Avenue
Suite 925-C36
Austin, TX 78701
Tel: (512) 265-5622
Fax: (646) 417-5967
wmoller@sirillp.com

Aaron Siri, Esq.*
Elizabeth A. Brehm, Esq.*
Catherine Cline, Esq.*
745 Fifth Ave, Suite 500
New York, NY 10151
Tel: (212) 532-1091
Fax: (646) 417-5967
aaron@sirillp.com
ebrehm@sirillp.com
ccline@sirillp.com

Christopher Wiest, Attorney*
25 Town Center Blvd., Suite 104
Crestview, KY 41017
Tel: (513) 257-1895
Fax: (859) 495-0803
chris@cwiestlaw.com

15

Attorneys for Plaintiffs
*Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2023, a true and correct copy of *Plaintiffs' Supplemental Memorandum in Support of Their Motion for Preliminary Injunction* was served by CM/ECF on all counsel or parties of record. I certify under penalty of perjury that the foregoing is true and correct.

Dated this 24th day of March, 2023.

BY: /s/ ***Walker D. Moller***

Walker Moller, Attorney
Mississippi Bar Number: 105187
1005 Congress Avenue
Suite 925-C36
Austin, TX 78701
Tel: (512) 265-5622
Fax: (646) 417-5967
wmoller@sirillp.com