**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**AMANDA BOSARGE, ET AL.**                                    **PLAINTIFFS**

**VS.**                                   **Civil Action No. 1:22-cv-00233-HSO-BWR**

**DANIEL P. EDNEY, in his official capacity
as the State Health Officer, ET AL.**                         **DEFENDANTS**

---

<u>**DEFENDANT ATTORNEY GENERAL LYNN FITCH'S MEMORANDUM RESPONSE
IN OPPOSITION TO PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT
OF THEIR MOTION FOR PRELIMINARY INJUNCTION [DKT. #69]**</u>

---

**INTRODUCTION**

Plaintiffs' motion for preliminary injunction should be denied for the reasons set forth in the Attorney General's oppositional response memorandum [Dkt. #42] filed previously. The Attorney General re-urges the arguments set forth therein. Furthermore, Plaintiffs do not meet the standard for a facial challenge under the Free Exercise Clause. This case may only properly be viewed as an "as-applied" challenge to Mississippi law. Plaintiffs have made no legally cognizable showing to the contrary.

If the Court is inclined to grant a preliminary injunction, it should be limited in scope to afford a religious-exemption option to the named plaintiffs exclusively, and it should be directed to the proper defendants. Any broader relief would exceed this Court's Article III jurisdiction and the limits of its equitable power. The Attorney General respectfully submits that under no circumstances should this Court prohibit the administration or enforcement of Mississippi's school vaccination statute, MISS. CODE ANN. § 41-23-37, nor should any injunctive relief purport to enjoin the Attorney General, who has no authority to enforce Mississippi's school vaccination statute.

1

## ARGUMENT

I.  **THE ATTORNEY GENERAL RE-URGES HER PREVIOUSLY-ASSERTED ARGUMENTS IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION.**

The Attorney General adopts and incorporates by reference, as if fully and completely set forth herein, the arguments and authorities set forth at pages 4-13 of her memorandum of authorities in support of her response in opposition to Plaintiffs' motion for preliminary injunction [Dkt. #42], filed previously.  She briefly re-urges those arguments here in specific response to Plaintiffs' supplemental memorandum [Dkt. #69].

First, the Attorney General respectfully maintains that Plaintiffs are not likely to prevail on the merits.  Dkt. #42 at 4-8.  Plaintiffs continue to maintain otherwise.  Dkt. #69 at 3-9.  The Court is aware of these arguments, but the Attorney General emphasizes a key point:  Plaintiffs have at most established a likely "as-applied" violation of their First Amendment rights.  *See, e.g.*, Dkt. #69 at 4-6.  They have not established that Mississippi's school vaccination statute is facially unconstitutional.  MISS. CODE ANN. § 41-23-37 (the school vaccination statute) and MISS. CODE ANN. § 11-61-1 (the Mississippi Religious Freedom Restoration Act ("MRFRA")), construed conjunctively, require the Mississippi State Department of Health ("MSDH") and local school authorities to afford Plaintiffs a religious-exemption option.  Thus, Plaintiffs' complaint is at most that, in practice, some defendants are not applying this view of Mississippi law.  But that is only an as-applied claim—not a facial challenge.

That point is driven home by Plaintiffs' argument that the vaccination statute does not satisfy strict scrutiny. Plaintiffs say that in analyzing a governmental interest in not affording a religious exemption, the relevant question is whether the government has a compelling interest in denying an exemption "to a plaintiff." Dkt. #69 at 6.  That means that if Plaintiffs have established

a likelihood of merits success at this preliminary-injunction stage, they have done so only for *themselves*—the six named plaintiffs before the Court.  They have not sought class treatment.  As a result, this Court would be able to rule at most that strict scrutiny is likely not satisfied by denying a religious-exemption mechanism to the six named plaintiffs (and their children).  Faced only with Plaintiffs' as-applied showing, the Court could not make a broader merits ruling.

Second, the Attorney General respectfully maintains that Plaintiffs cannot demonstrate a substantial threat of impending irreparable injury.  Dkt. #42 at 10-12.  The Court is aware of the arguments to the contrary.  *See, e.g.*, Dkt. #69 at 9-11.  Here, too, the Attorney General emphasizes one point, about the scope of any harm showing that Plaintiffs have made.  If the Court were to conclude that Plaintiffs had established irreparable harm, then—as with Plaintiffs' merits showing—the Court would be able to conclude at most that Plaintiffs have established irreparable harm to the named plaintiffs (and their children).  Plaintiffs themselves repeatedly frame the alleged harms in terms of their rights and those of their children.  *See, e.g., id.* at 9 ("Plaintiffs' First Amendment Free Exercise rights"), 10 ("the categorical exclusion of Plaintiffs' children from school"), 11 ("Plaintiffs are threatened with criminal prosecution").  And Plaintiffs emphasize the particular harms to the named plaintiffs.  *See, e.g., id.* at 11 ("Plaintiffs Dr. Jeana Stanley and Brandi Renfroe uprooted their families and moved to Alabama," "Plaintiff Kimberly Harrell is preparing to move to another state," "Plaintiffs Amanda Bosarge, Kimberly Harrell, and Pastor Paul Perkins . . . have been forced to homeschool").  Just as Plaintiffs have made—at most—only an as-applied showing of a likely constitutional violation, they have sought to demonstrate irreparable harm only as to themselves and their children. Any ruling that Plaintiffs have established irreparable harm must be cabined accordingly.

Third, the Attorney General respectfully maintains that the balance of equities and the public interest favor denying a preliminary injunction. Dkt. #42 at 12-13. The Court is aware of the arguments to the contrary. *See, e.g.*, Dkt. #69 at 11-13. The Attorney General again emphasizes one point: Plaintiffs' showing on the equities is, at most, a showing only for the named plaintiffs. If this case involved a class of a million plaintiffs, the equities could be weighed very differently. Yet this Court has before it only a showing by a handful of plaintiffs—and any injunctive relief must be tailored to the correspondingly limited showing.

## II. IF THE COURT IS INCLINED TO GRANT A PRELIMINARY INJUNCTION, IT SHOULD BE APPROPRIATELY LIMITED IN SCOPE AND DIRECTED TO THE PROPER DEFENDANTS.

### A. <u>Mississippi's school vaccination statute is facially valid.</u>

"A facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1127 (2019). As a general rule, "[t]o succeed in a typical facial attack," a plaintiff must "establish 'that no set of circumstances exists under which [the challenged law] would be valid . . . or that the statute lacks any 'plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460, 472 (2010).

An exception to this general rule is found in the overbreadth doctrine applicable in limited circumstances. While the Supreme Court has permitted overbreadth challenges in a handful of contexts, most notably with respect to First Amendment free speech claims, the overbreadth doctrine has not been expressly extended to First Amendment free exercise claims. *See Sabri v. United States*, 541 U.S. 600, 609-10 (2004) ("[o]utside these limited settings [which do not include First Amendment free exercise claims], and absent a good reason, we do not extend an invitation to bring overbreadth claims").

In the case at bar, Plaintiffs' sole claim is a First Amendment free exercise claim challenging the constitutionality of Mississippi's school vaccination statute, MISS. CODE ANN. § 41-23-37, which they contend interferes with their sincerely-held religious beliefs.  *See* Dkt. #1 at 32-38, ¶¶ 116-48.  Plaintiffs assert that § 41-23-37 "is unconstitutional as applied to any parent or child who has a sincere religious objection to it." Dkt. #69 at 14.  They further assert that their requested injunction "would leave in place Defendant's ability to enforce [§ 41-23-37] against families that are not asserting a religious exemption." *Id.* at 13.  Plaintiffs must accordingly concede that § 41-23-37 is valid in every circumstance in which the parents of Mississippi schoolchildren do not object to vaccinating their children before enrolling them in school.  Thus, Plaintiffs neither show nor allege that "no set of circumstances exists," *Stevens*, 559 U.S. at 472, under which § 41-23-37 is valid.  Nor can they show that § 41-23-37 lacks any "plainly legitimate sweep," *id.*, as it has long been recognized that a state has a "compelling interest" in "prevent[ing] the spread of communicable diseases" via mandatory school vaccination requirements.  *See, e.g., Workman v. Mingo County Bd. of Educ.*, 419 F. App'x 348, 353-54 (4th Cir. 2011) (compiling cases).  Plaintiffs simply do not meet the legal standard for a facial challenge to Mississippi law.

Any purported assertion of a cognizable facial challenge is further vitiated by two additional points.  First, MRFRA requires that MSDH and local school authorities offer Plaintiffs the option of a religious exemption.  Dkt. #42 at 4-8.  Compliance with MRFRA yields no circumstance in which the application of § 41-23-37 violates the First Amendment.  When Mississippi law is properly construed as "§ 41-23-37 plus MRFRA," Dkt. #60 at 3 (underscore in original), state law is not facially unconstitutional.  Second, any valid assertion of a facial claim is belied by the fact-intensive, individualized nature of Plaintiffs' verified complaint, to which Plaintiffs attached their respective personal statements setting out their unique, individual

circumstances and religious objections.  *See* Dkt. #1 at 5-23, ¶¶ 15-86; #1-1; #1-2; #1-3; #1-4; #1-7; #1-8.

Consistent with the foregoing, this Court appears to properly focus consideration of preliminary injunctive relief on Plaintiffs' as-applied challenge.  In its Opinion and Order denying judgment on the pleadings, the Court regarded Plaintiffs' complaint [Dkt. #1] as plausibly alleging that the actual "application and enforcement" of § 41-23-37 have "had the effect" of violating the Free Exercise Clause, crediting the assertion that "no change has occurred [in the application of § 41-23-37] since the MRFRA's enactment."  Dkt. #65 at 14.  That focus on "application" recognizes the as-applied nature of Plaintiffs' complaint.  The Court accordingly emphasized Plaintiffs' "as-applied challenge" and the need "to address whether the manner in which the State *applies or enforces* the vaccination regime violates" Plaintiffs' "free exercise rights."  *Id.* at 18 (emphasis added).  Plaintiffs' supplemental memorandum presents no valid argument to deviate from this analysis.  For all these reasons, this action should be properly viewed as an "as-applied" challenge exclusively.

**B.  <u>Any preliminary injunction should be limited in scope to the named plaintiffs.</u>**

As a general rule, federal courts lack the authority to enter so-called "universal" injunctions that preclude enforcement of a law against all persons, rather than against only the named plaintiffs.  First, under Article III of the U.S. Constitution, "[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury."  *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018).  *See also Green Valley Special Util. Dist. v. City of Schertz, Tex.*, 969 F.3d 460, 478 n.39 (5th Cir. 2020) ("court must narrowly tailor an injunction to remedy the specific action which gives rise to the order").  Because "standing is not dispensed in gross," a plaintiff "must demonstrate standing

separately for each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352-53 (2006) (internal quotation marks omitted).

In the same vein, "[e]quitable remedies, like remedies in general, are meant to redress the injuries sustained by a particular plaintiff in a particular lawsuit." *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring). *See also Louisiana v. Becerra*, 20 F.4th 260, 264 (5th Cir. 2021) (quoting with approval *New York*, 140 S. Ct. at 600 (Gorsuch, J., concurring)). Injunctions that afford relief to "those who are strangers to the suit" thus "raise serious questions about the scope of courts' equitable powers under Article III." *New York*, 140 S. Ct. at 600 (Gorsuch, J., concurring). "After a court has remedied a claimant's injury, it is fair to ask what controversy remains for a court to adjudicate or remedy." *Arizona v. Biden*, 40 F.4th 375, 396 (6th Cir. 2022) (Sutton, C.J., concurring).

Second, rules of equity independently require that "[a]s a general principle, injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Lion Health Servs., Inc. v. Sebelius*, 635 F.3d 693, 703 (5th Cir. 2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)) (internal quotation marks omitted). *See also Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (same); *Robinson v. Ardoin*, 37 F.4th 208, 232 (5th Cir. 2022) (same). This principle applies with even greater force to a preliminary injunction, which is an equitable tool intended "merely to preserve the relative positions of the parties" while litigation is pending. *Benisek v. Lamone*, 138 S. Ct. 1942, 1945 (2018) (internal quotation marks omitted). Furthermore, the equitable jurisdiction of federal courts is grounded in historical practice, yet universal injunctions are a modern invention. *See Trump v. Hawaii*, 138 S. Ct. 2392, 2424-2429 (2018) (Thomas, J., concurring) (maintaining that universal

injunctions "appear to be inconsistent with longstanding limits on equitable relief and the power of Article III courts" and questioning their historical pedigree).

Finally, the law already provides a way to afford relief beyond named plaintiffs: the class-action mechanism. But class relief is proper only when FED. R. CIV. P. 23's rigorous requirements are satisfied. Universal injunctions can give third parties the benefits of class relief without satisfying FRCP 23. Courts should avoid "sidestep[ping] Rule 23's requirements." *Arizona*, 40 F.4th at 396 (Sutton, C.J., concurring).

In the case at bar, discovery has only just commenced. It remains to be seen whether all six plaintiffs can independently establish the requisite "actual or imminent" injury to support standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Assuming for the sake of argument that Plaintiffs have standing, if the Court is inclined to grant a preliminary injunction, any relief should—consistent with the rationale set forth in the cases cited above—be granted on an "as-applied" basis and limited to the six remaining plaintiffs named in the complaint.

At least four independent reasons warrant limiting the scope of any preliminary injunctive relief to the named plaintiffs. First, this is not a class action, nor do Plaintiffs seek to make it one. This action was filed by seven individual plaintiffs, one of whom—William Morgan—voluntarily dismissed his claims. Dkt. #1, #62, #63. It would be particularly inappropriate to award relief that is in the nature of class-wide relief when Plaintiffs have not met the demanding requirements of FED. R. CIV. P. 23. Second, as discussed above, all of Plaintiffs' showings for preliminary injunctive relief—as to the merits, as to alleged harm, and on the equities—are plaintiff-specific and tied to each named plaintiff's personal circumstances. The Court should not assume that those showings apply to some broader group of persons not before it. Third, a preliminary injunction granted only as to the six named plaintiffs would provide complete relief, fully addressing their

alleged injuries.  Plaintiffs cannot demand any more than that, especially since they have not sought class treatment.  Fourth, as noted above, one of the original seven plaintiffs—William Morgan—voluntarily dismissed his claims and dropped out of this case.  It would make no sense for the Court to award a preliminary injunction that would give relief to someone who dismissed his claims seeking such relief—let alone to any and all others who have neither shown nor claimed entitlement to a preliminary injunction.

For all these reasons, any preliminary injunction awarded should be limited in scope to require MSDH and local school authorities to provide a religious-exemption option to Plaintiffs exclusively.  The injunction should not be so broad as to apply to non-plaintiffs, nor should it otherwise prohibit the administration or enforcement of the school vaccination scheme provided for in § 41-23-37.  The Attorney General respectfully submits that any broader injunction would exceed the bounds of this Court's jurisdiction under Article III and the traditional limitations of equitable relief.

To the extent the Court is nevertheless inclined to award preliminary injunctive relief beyond the sphere of the named plaintiffs, any such relief should afford MSDH appropriate leeway to develop a policy for a religious-exemption option that is consistent with the religious-liberty protections mandated by MRFRA.  Plaintiffs have advised the Court that they "do not seek a court order that their children or the children of any other family with religious convictions against compulsory vaccination be admitted to school upon the issuance of the injunctive relief requested." Dkt. #57 at 12.  Rather, "Plaintiffs merely request that Mississippi families be afforded a process to seek a potential religious exemption." *Id.  See also* Dkt. #69 at 14.  Accordingly, while the Attorney General submits that this Court should restrict the scope of any preliminary injunction to the named plaintiffs, if the Court is inclined to award a broader preliminary injunction, it should

(a) allow MSDH a reasonable amount of time and discretion to develop a religious-exemption policy that is consistent with the religious-liberty protections of MRFRA; and (b) take no action to prohibit or impede the administration or enforcement of the school vaccination scheme provided for in § 41-23-37.

## C. Any preliminary injunction should be directed to the proper defendants—not to the Attorney General.

Any preliminary injunction should be directed to those defendants who are authorized to administer and enforce Mississippi's school vaccination law.  Plaintiffs have presented the Court with a proposed order that would compel certain actions by the Attorney General—and by no other defendant—within specified time periods.  But the Attorney General has no role in administering or enforcing the laws at issue and has taken none of the actions about which Plaintiffs complain. In no event should this Court enjoin the Attorney General to do anything.  Plaintiffs do not remotely attempt to justify their proposal to the enjoin the Attorney General or explain how that would help them at all.

Consistent with her statutory duties, the Attorney General's role in this matter is "argu[ing] the constitutionality" of Mississippi law, as properly construed.  *See* MISS. CODE ANN. § 7-5-1. As set forth below, under settled principles of standing and sovereign immunity, she is not subject to Plaintiffs' claim for injunctive relief in this case.

### 1. Plaintiffs lack standing to seek injunctive relief against the Attorney General.

The requirements for standing set forth in *Lujan*, *supra*—and particularly causation and redressability—"are entirely consistent with the long-standing rule that a plaintiff may not sue a state official who is without any power to enforce the complained-of statute." *Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001).  That is, where the defendant "play[ed] [no] causal role in the plaintiffs' injury," and/or the defendant has "no powers to redress the injuries alleged, the plaintiffs

have no case or controversy" with that defendant. *See id.* at 426-27, 429. *See also McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013) (reaffirming *Okpalobi's* holding that plaintiffs lack standing where defendant lacks authority to redress plaintiffs' alleged injuries).

In the case at bar, the Attorney General did not cause Plaintiffs' alleged injuries. Nor does the Attorney General have the power to redress Plaintiffs' alleged injuries, rendering any requested injunctive relief against the Attorney General utterly meaningless if granted. *See Okpalobi*, 244 F.3d at 426. Therefore, pursuant to *Okpalobi* and its progeny, Plaintiffs lack standing to seek injunctive relief against the Attorney General.

The Attorney General did not cause Plaintiffs' alleged injuries. All of Plaintiffs' alleged injuries arise from the enforcement or prospective enforcement of Mississippi's school vaccination statute, *viz.*, MISS. CODE ANN. § 41-23-37. Pursuant to Mississippi law, the power to implement and enforce school vaccination requirements is vested not in the Attorney General but in "the person in charge of each school," to be exercised in coordination with the State Health Officer (i.e., Defendant Daniel P. Edney, M.D.) and the applicable county/local health officers. *See* MISS. CODE ANN. § 41-23-37. Specifically, § 41-23-37 expressly provides that "[i]t shall be the responsibility of the person in charge of each school to enforce the requirements for immunization." *Id.* (emphasis added).

In enforcing statutory school immunization requirements, "the person in charge of each school" is charged with the responsibility for (1) reporting to the county/local health officer the number of fully vaccinated students, the number of in-process vaccinations, and the number of vaccination exemptions by reason for such exemption; and (2) certifying to the county/local health officer that all children enrolled in school are compliant with immunization requirements. *Id.* The State Health Officer is empowered and required to "specify such immunization practices as may

be considered for the control of vaccine preventable diseases." *Id.*  County/local health officers are in turn empowered to do the following:  evaluate and accept medical exemption certificates; issue certificates of vaccination; grant limited extensions of time to complete vaccination upon enrollment; and inspect children's records or be furnished certificates of immunization compliance by a given school.  *Id.*  None of these implementation and enforcement activities involves the Attorney General.

Not surprisingly, then, Plaintiffs have alleged no facts showing that the Attorney General had any role whatsoever in preventing their children from enrolling in or attending school, via the "implement[ation]" or "enforce[ment]" of any law or otherwise.  Dkt. #1 at 24, ¶ 88.  As to Plaintiffs Harrell, Renfroe, Bosarge, Stanley, and Butler, all of their allegations of denied enrollment are predicated exclusively on the alleged actions of local school administrators and/or state or local health officials.  *See* Dkt. #1 at 10, ¶¶ 31-32; 13, ¶ 46; 15-16, ¶ 56; 21, ¶ 76; 23, ¶ 85; 24-25, ¶¶ 89-92.  Plaintiff Perkins' allegations likewise fail to implicate the Attorney General, as he alleges that it is the "threat" of criminal prosecution by the Ocean Springs city prosecutor that prohibits him from attempting to enroll his child in school.  *See id.* at 7, ¶ 22; 25, ¶ 93.  None of these plaintiffs alleges that the Attorney General had anything to do with preventing his or her child(ren) from enrolling in or attending school.

Nowhere in their 40-page complaint do Plaintiffs articulate any facts to support the notion that they have been harmed or injured in any way by any action, threatened action, or inaction of the Attorney General.  The Attorney General was not—and is not—involved in implementing or enforcing the provisions of § 41-23-37, nor has she taken or threatened any action to prevent Plaintiffs' children from enrolling in or attending school.  In failing to allege or show how the Attorney General "play[s] a causal role in the plaintiffs' [alleged] injury," *Okpalobi*, 244 F.3d at

426, Plaintiffs cannot show the requisite causal connection to establish standing to pursue injunctive relief against the Attorney General.

Plaintiffs further lack standing as to the Attorney General because she has no power to redress their alleged injuries.  It is an "elemental fact that a state official <u>cannot be enjoined to act in any way that is beyond h[er] authority to act in the first place</u>."  *Id.* 427 (emphasis added).  An injunction directed to the Attorney General would thus be meaningless, as the specific power to grant or deny school enrollment and attendance based on vaccination/exemption status is expressly granted <u>not</u> to the Attorney General but to "the person in charge of each school," to be exercised in coordination with the State Health Officer and the county/local health officer.  *See* MISS. CODE ANN. § 41-23-37.

The Attorney General does not have any legal authority to order, direct, instruct, or compel the State Health Officer, any county/local health officer, or the person in charge of any given school to take any specific action in connection with school vaccinations and exemptions.  In the absence of such authority, the Attorney General "cannot be enjoined," see *Okpalobi*, 244 F.3d at 427, to require the aforementioned individuals to provide, recognize, and/or honor a religious-exemption option in connection with the enforcement of Mississippi's school vaccination statute.  Because the Attorney General is without power to redress Plaintiffs' alleged injuries, Plaintiffs lack standing to pursue injunctive relief against her for this additional reason.

**2.   Injunctive relief against the Attorney General is barred by sovereign immunity.**

Absent waiver or congressional abrogation—neither of which applies here—Plaintiffs' claims against the Attorney General are barred by sovereign immunity unless the *Ex parte Young* exception applies.  *See City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019).  The Attorney General has no connection with the enforcement of MISS. CODE ANN. § 41-23-37, and hence she

has neither taken nor threatened to take any steps to enforce its complained-of school vaccination requirements. Therefore, *Ex parte Young* does not apply, and any injunction directed to the Attorney General is barred by sovereign immunity.

The *Ex parte Young* exception to sovereign immunity "only applies when the named defendant state official[] ha[s] *some connection with the enforcement of the act*" and threatens to enforce it. *See Okpalobi*, 244 F.3d at 416 (italics in original). "[I]t is <u>not</u> enough" to allege that an official has "a '*general* duty to see that the laws of the state are implemented.'" *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 400-01 (5th Cir. 2020) (italics in original, underscore added). Rather, the official sued must be "statutorily tasked with enforcing the challenged law." *Id.* at 401 (internal quotation marks omitted). Further, the official "must have taken some step to enforce" the law. *Id.* At a "bare minimum," there must be "'some scintilla' of affirmative action by the state official" to enforce the law in question. *Id.*

In the case at bar, the Attorney General has no connection with the enforcement of § 41-23-37, including but not limited to its provisions governing school vaccinations. She has taken no action to enforce such provisions, nor has she threatened such enforcement. Therefore, *Ex parte Young* does not apply, and any award of injunctive relief against the Attorney General is barred by sovereign immunity.

As set forth in detail above, the Mississippi Legislature has statutorily tasked the "person in charge of each school," in coordination with the State Health Officer and county/local health officers, with the enforcement of Mississippi's school vaccination requirements. *See* § 41-23-37. The Attorney General has no role in these activities. Nor does she have any authority to compel or constrain state or local officials relative to immunization-related decisions affecting Plaintiffs' children's enrollment in Mississippi schools. Accordingly, the Attorney General has taken no

14

action—affirmative or otherwise—to enforce the challenged statute.  Nor has she threatened to take such action.  Plaintiffs have not shown otherwise.

In their complaint, Plaintiffs allege that by virtue of the Attorney General's status as "the state's 'chief legal officer,'" she is "responsible for enforcing, and does enforce, the laws of Mississippi, including the state's mandatory immunization requirements under [§ 41-23-37]." Dkt. #1 at 24, ¶ 88.  However, in the absence of any demonstrated connection with the enforcement of laws, rules, or regulations governing vaccine-related school admission decisions, this alleged "*general* duty to see that the laws of the state are implemented" is insufficient as a matter of law to support the application of *Ex parte Young* under prevailing Fifth Circuit precedent.  *See Abbott*, 961 F.3d at 400-01 (italics in original) (internal quotation marks omitted).  *See also Campaign for S. Equality v. Miss. Dep't of Human Servs.*, 175 F. Supp. 3d 691, 708-09 (S.D. Miss. 2016). Accordingly, sovereign immunity bars any claim for injunctive relief against the Attorney General.

Thus, to the extent this Court is inclined to enter a preliminary injunction, it should not be directed to the Attorney General.  If Plaintiffs are awarded any injunctive relief, it should be limited to an order directing the State Health Officer to offer the named plaintiffs the option of a religious exemption to the school vaccination requirement, and further directing the relevant county/local health officers and local school officials to recognize and honor any religious exemption so granted to the named plaintiffs.

## CONCLUSION

For the reasons set forth herein and in the Attorney General's brief [Dkt. #42] filed previously, Plaintiffs' motion for preliminary injunction should be denied.  Alternatively, if the Court is inclined to grant a preliminary injunction, it should be limited in scope to provide a

religious-exemption option to the named plaintiffs exclusively and directed to the appropriate state and local officials.

THIS the 3rd day of April, 2023.

Respectfully submitted,

LYNN FITCH, IN HER OFFICIAL CAPACITY
AS ATTORNEY GENERAL OF MISSISSIPPI,
DEFENDANT

By:    LYNN FITCH, ATTORNEY GENERAL
       STATE OF MISSISSIPPI

By:    s/Rex M. Shannon III
       REX M. SHANNON III (MSB #102974)
       Special Assistant Attorney General\

Douglas T. Miracle (MSB #9648)
Rex M. Shannon III (MSB #102974)
STATE OF MISSISSIPPI
OFFICE OF THE ATTORNEY GENERAL
CIVIL LITIGATION DIVISION
Post Office Box 220
Jackson, Mississippi  39205-0220
Tel.:  (601) 359-4184
Fax:  (601) 359-2003
doug.miracle@ago.ms.gov
rex.shannon@ago.ms.gov

ATTORNEYS FOR DEFENDANT LYNN FITCH, IN HER OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF MISSISSIPPI

## CERTIFICATE OF SERVICE

I, Rex M. Shannon III, Special Assistant Attorney General and one of the attorneys for Defendant Lynn Fitch, in her official capacity as Attorney General of Mississippi, do hereby certify that I have this date caused to be filed with the Clerk of the Court a true and correct copy of the above and foregoing via the Court's ECF filing system, which sent notification of such filing to all counsel of record.

THIS the 3rd day of April, 2023.

s/Rex M. Shannon III
REX M. SHANNON III