UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| **AMANDA BOSARGE, individually and on behalf of their minor children, et al.,**<br><br>*Plaintiffs,*<br><br> -against-<br><br>**DANIEL P. EDNEY**, **in his official capacity as the State Health Officer, et al.,**<br><br>*Defendants.* | Civil Action No.<br>1:22-cv-00233-HSO-BWR |

### PLAINTIFFS' SUPPLEMENTAL REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs[1], by and through counsel, hereby submit their Supplemental Reply Memorandum in Further Support of Their Motion for Preliminary Injunction.

### ARGUMENT

**I.     PLAINTIFFS REITERATE THEIR PREVIOUS ARGUMENTS IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION AND CLARIFY THE RECORD REGARDING ASSERTIONS BY THE ATTORNEY GENERAL**

In response to Defendant incorporating her prior arguments by reference in her opposition, Plaintiffs adopt and incorporate their previous arguments concerning preliminary injunctive relief herein as well as the Court's prior decision regarding Defendant's *Pullman* argument. (Dkts. 5, 56, 65, and 69).

Although Plaintiffs will refrain from re-arguing the issues Defendant wishes to revisit, they must correct two statements made by Defendant. In her arguments, she incorrectly states that

---

[1] Defined terms used herein have the same meaning as in Plaintiffs' opening supplemental brief in support of their motion for a preliminary injunction. (Dkt. 69).

Plaintiffs have only established an as-applied violation and have limited their request to relief for the named Plaintiffs. (Dkt. 70 at 2.) This is not so. This is both a facial challenge and an as-applied challenge to the Mississippi Compulsory Vaccination law. *See. e.g.,* (Dkt 1, Verif. Compl. at 38 ¶ 150 ("Plaintiffs allege that both on its face and as applied, the Compulsory Vaccination Law violates their First Amendment rights . . . .")).

Second, the Defendant maintains that "Plaintiffs cannot demonstrate a substantial threat of impending irreparable injury." (Dkt. 70 at 3). However, the Fifth Circuit has repeatedly held that constitutional harm is irreparable injury. *See, e.g., U.S. Navy Seals 1-26 v. Biden*, 27 F. 4th 336, 348 (5th Cir. 2022) ("The loss of First Amendment freedoms, for even minimal periods of time unquestionably constitutes irreparable injury.") (Citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

## II. THE REQUESTED PRELIMINARY INJUNCTION IS APPROPRIATE IN SCOPE AND DIRECTED TO THE PROPER DEFENDANTS

### A. *The Compulsory Vaccination Law is Facially Invalid or, at the Least, is Invalid as Applied to Families with Sincere Religious Beliefs in Conflict with the Law*

*Every* Mississippi family with religious objections to compelled vaccination is categorically excluded from the State's education system, and Plaintiffs are not the only families in the State with such convictions. Under the Supreme Court's ruling in *Fulton*,[2] the law is facially invalid, and is also unconstitutional as applied to any family with sincere religious beliefs in conflict with the law. A constitutional claim "can have characteristics of as applied and facial challenges: it can challenge more than just the plaintiff's particular case without seeking to strike the law in all its applications." *Green Party of Tenn. v. Hargett*, 791 F.3d 684, 691-692 (6th Cir. 2015), *citing John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010).

---

[2] *Fulton v. City of Philadelphia*, 141 S.Ct. 1868 (2021).

Prior to bringing this suit, undersigned counsel was in contact with numerous Mississippi families who desire a religious exemption option and are interested in litigating this issue. A goal in asserting this action on behalf of only a small number of these families was to avoid a multiplicity of litigation. Yet, if relief is narrowly afforded to only the Plaintiffs, it will no doubt result in multiple identical lawsuits. That, however, is unnecessary, because the law allows for at least an as-applied invalidation as to anyone who has a sincerely held religious belief that is substantially burdened by the Compulsory Vaccination Law.

"[T]he distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." *Citizens United v. FEC*, 558 U.S. 310, 331 (2010). "In fact, a claim can have characteristics of as applied and facial challenges: it can challenge more than just the plaintiff's particular case without seeking to strike the law in all its applications." *Green Party of Tenn.*, 791 F.3d at 691-692 (internal citations omitted). In constitutional challenges reaching beyond the plaintiff's circumstances, the plaintiff must satisfy the "standards for a facial challenge to the extent of that reach." *Id.*

Here, Plaintiffs make just that sort of hybrid facial and as-applied challenge: the Compulsory Vaccination Law, due to its discretionary secular exemptions and lack of religious exemption, is unconstitutional to the extent it reaches any person who has a sincerely held religious belief against vaccination and seeks to enroll their children in school. It is equally facially invalid as to any such person.

In case there was any doubt regarding the challenged statute's facial invalidity in such situations, the Mississippi Department of Health's website outlines the process for obtaining a medical exemption, and in bold font states: "**Exemption from required immunizations for**

**religious, philosophical, or conscientious reasons is not allowed under Mississippi Law.**"[3] On its face, this policy violates the Free Exercise Clause and the Supreme Court's unanimous ruling in *Fulton v. City of Philadelphia*, 141 S.Ct. 1868 (2021).

The Attorney General contends the challenged statute is facially valid largely on grounds that the Free Exercise Clause is not offended in cases where it is applied to parents who *do not* possess religious objections to vaccinating their children. (Dkt. 70 at 5). According to the Attorney General, this scenario defeats any argument that the challenged statute violates the overbreadth doctrine. That misses the entire point of the discussion in *Citizens United*, 558 U.S. at 331 and *John Doe No. 1*, 561 U.S. at 194. Plainly, the law here is unconstitutional as to any Mississippi family with religious objections to mandatory vaccination and who wishes to enroll their children in school.

It is also likely that the Compulsory Vaccination Law is overbroad, which would permit its complete invalidation. Plaintiffs do not seek that relief unless absolutely necessary, but rather seek an injunction requiring Defendants to develop a procedure to process and possibly accept religious exemptions. That said, the overbreadth doctrine "permits plaintiffs whose own conduct is not constitutionally protected to assert the rights of third parties whose First Amendment freedoms might be chilled by the statute or rule under consideration." *Moore v. Kilgore*, 877 F.2d 364, 390 (5th Cir. 1989). In such cases, there "must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 104 (1984). The Supreme Court recognizes facial challenges

---

[3] MISSISSIPPI DEPARTMENT OF HEALTH, *Medical Exemption Policy*, https://msdh.ms.gov/msdhsite/index.cfm/14,0,71,688,html (last visited April 10, 2023) (emphasis in original).

in cases where "a substantial number of [a law's] applications are unconstitutional." *United States v. Stevens*, 559 U.S. 460, 473 (2010).

Here, unsurprisingly because the law applies to every family in the state with school-aged children, there are a wide variety of scenarios where the Compulsory Vaccination Law would be unconstitutional under the First Amendment. It is unconstitutional as to Plaintiffs, and other families in their situation, and equally invalid to any religious school that has these beliefs. Plaintiff Pastor Paul Perkins, who desires to enroll his child in the private Christian school where he serves as headmaster, cannot vaccinate his child based on objections to abortion, while the rest of the named plaintiffs possess unique religious objections to compelled vaccination, and Jane Doe in Noxubee County may object to pharmaceutical interventions, including vaccinating her children, due to her membership in a Mennonite community. In each of these scenarios, the religious objectors are entitled to First Amendment protections, and the Compulsory Vaccination Law facially violates their religious freedoms under *Fulton* because it permits secular exemptions but not religious exemptions.

While the Supreme Court has not yet made an overbreadth doctrine ruling in the free exercise arena, lower courts have upheld facial challenges where free exercise rights were violated. *See, e.g., Holy Spirit Asso. for Unification of World Christianity v. Hodge*, 582 F. Supp. 592, 604 (N.D. Tex. 1984) (in facial challenge to city ordinance regulating the solicitation of funds, the court struck portions of the ordinance because certain sections "impermissibly chill[ed] and intrude[d] on the First Amendment rights of free speech, association and free exercise of religion."). And the Supreme Court's recent ruling in *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407 (2022) strongly indicates that the Free Speech and Free Exercise Clauses should be placed

on equal footing. The Supreme Court explained that the "Clauses work in tandem" and "provide[] overlapping protection." *Id.* at 2421.

In short, to comport with the First Amendment, Mississippi must provide the option for a religious exemption. Further, courts are adept at delineating unconstitutional portions of a challenged law without striking it in its entirety. *See, e.g., Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274 (5th Cir. 1996) (upholding injunction against unconstitutional portions of Mississippi statute permitting school prayer in public school, while leaving other portions of the law intact); *Hodge*, 582 F. Supp. at 604 (striking portions of city ordinance that violated the First Amendment, while leaving constitutionally valid provisions standing).

### B. *Preliminary Injunction Should Not be Limited in Scope to the Named Plaintiffs*

Because the constitutional violations at issue in this case are not limited to the named Plaintiffs, nor should the injunctive relief be limited to the named Plaintiffs. Plaintiffs seek the unremarkable relief of requiring the state to recognize religious exemptions in the same manner that it presently recognizes secular exemptions state-wide. In seeking to limit the scope of a potential injunction, the Attorney General's apparent message is that Mississippi law guarantees religious freedom, but only to those families that are willing and able to assert those rights in court. This should not be. It must be re-emphasized that there are numerous other families in Mississippi who desire to assert these same rights in court, and should the relief granted here be so narrow as to exclude them, many will likely file intervening lawsuits to obtain the same relief warranted in this case. This seems a perpetuation of constitutional harms and a waste of judicial, and other, resources. The Attorney General's position to limit relief to the named plaintiffs severely undermines well-established maxims of efficiency and justice.

It is also hard to conceive how the relief sought could be legitimately restricted to the named Plaintiffs. In formulating remedies, as in any equity case, the nature of the violation determines the scope of the remedy. *Swann v. Charlotte-Mecklenburg Board of Education*, 402 U.S. 1, 16 (1971). Because the challenged statute is unconstitutional as applied to any parent or child who has a sincere religious objection to it, the scope of the injunction should extend to prohibit enforcement of it against any such persons, and there is a significant body of case law that supports this application. *See, e.g., Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786 (2011) (upholding flatly enjoining unconstitutional statute); *Ingebretsen*, 88 F.3d at 274 (upholding partial injunction against unconstitutional Mississippi statute statewide). Plainly, the Supreme Court envisions just this sort of challenge and just this sort of invalidation to anyone who is similarly situated to Plaintiffs. *See Citizens United*, 558 U.S. 310, 331 and *John Doe No. 1*, 561 U.S. at 194.

Defendant cites certain cases involving national injunctions, but this is not a national injunction case. It is a one-state Mississippi case. Justice Gorsuch's concurrence in *Dep't of Homeland Sec. v. New York* is inapposite here as that case deals with nationwide injunctions. 140 S. Ct. 599 at 600 (2020) (Gorsuch, J., concurring). In *New York*, Justice Gorsuch takes issue with nationwide injunctions and with a New York court that enjoined the federal government "without regard to geography." *Id*. at 599. Justice Gorsuch raises concern about "both sides hav[ing to] rush from one preliminary injunction hearing to another," which is precisely what will happen here should relief be *limited* to the named Plaintiffs. Likewise, the Attorney General's reliance on *Arizona v. Biden*, 40 F.4th 375, 396 (6th Cir. 2022) (Sutton, C.J., concurring) is inapposite for the same reason in that it deals with nationwide injunctions. Clearly, Plaintiffs are not seeking a nationwide injunction.

7

The Attorney General claims that all of Plaintiffs' showings "as to the merits, as to alleged harm, and on the equities—are plaintiff-specific and tied to each named plaintiff's personal circumstances." (Dkt. 70 at 8.) However, this is not the case. First, Plaintiffs have brought both as-applied and a facial challenge to the Compulsory Vaccination Law of the sort envisioned in *Citizens United*, 558 U.S. at 331 and *John Doe No. 1*, 561 U.S. at 194. Any argument as to the merits of that challenge apply universally to anyone in the state who has sincerely held religious beliefs substantially burdened by the Compulsory Vaccination Law and who seek to enroll their unvaccinated child in school. Second, the alleged harm is a constitutional violation—including an ongoing First Amendment violation and the additional constitutional violation of being deprived of the state mandated benefit of a public education—which constitutes irreparable harm. The Attorney General agreed that Plaintiffs' right to freely exercise their religion is being violated and because they hold religious objections to vaccination, they must be provided with the option for a religious exemption to the Compulsory Vaccination Law. Third, the equities also are not plaintiff specific. The balance of harms and the public interest in protecting civil liberties weigh in favor of injunctive relief, including because constitutional violations are at issue, and injunctive relief will not disserve the public interest. These past, ongoing, and imminent violations have not served the public interest. What would disserve the public interest is granting relief to only the named Plaintiffs and allowing these harms to continue for all others in the state whose civil liberties are being violated due to their religious opposition to compelled vaccination.

Again, Plaintiffs do not seek a court order that their children or the children of any other family with religious convictions against compulsory vaccination be admitted to school upon the issuance of the injunctive relief requested. Plaintiffs merely request that Mississippi families be afforded a process to seek a potential religious exemption for one or more required vaccinations

to attend school. This is a straightforward remedy that can be seamlessly applied across the state, as evidenced by the forty-four other states that possess a straightforward and easily administered religious exemption process.

Plaintiffs' requested relief is therefore narrowly tailored to only seeking injunctive relief against the Compulsory Vaccination Law to the extent it prohibits a mechanism for families to seek a religious exemption. Such an injunction would leave in place Defendant's ability to enforce the Compulsory Vaccination Law against families that are not asserting a religious exemption.

For all of these reasons, and to avoid intervening lawsuits seeking identical relief, Plaintiffs request that the relief granted recognize not only their constitutionally protected right to religious freedom, but every Mississippi family's right to religious freedom.

### C. The Requested Preliminary Injunction is Properly Directed at All of the Defendants, Including the Attorney General

The Attorney General suggests that the preliminary injunction should be directed to those Defendants who are authorized to administer and enforce Mississippi's Compulsory Vaccination Law. She suggests that she allegedly has "no role in administering or enforcing the laws at issue," but that is not actually the case. (Dkt. 70 at 10). She also suggests that she has sovereign immunity and that Plaintiffs lack standing to seek injunctive relief against her. *Id.* at 13. As it turns out, **all** these arguments come down to the same legal analysis. Namely: does the Attorney General have enough connection with the challenged mandatory vaccination regime under the *Ex Parte Young*, 209 U.S. 123 (1908) prospective relief exception to sovereign immunity?

In determining the applicability of the *Ex parte Young* exception to sovereign immunity, Fifth Circuit courts follow a two-step analysis. *See City of Austin v. Paxton*, 943 F.3d 993, 998 (5th Cir. 2019); *see also Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 517, 519 (5th Cir. 2017). At the first step, courts conduct a "straightforward inquiry into

whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *City of Austin*, 943 F.3d at 998 (*quoting Verizon Md. Inc. v. PSC*, 535 U.S. 635, 645 (2002)). At the second step, court looks to "whether the official in question has a 'sufficient connection [to] the enforcement' of the challenged act." *City of Austin*, 943 F.3d at 998. This inquiry focusses, primarily, upon the allegations in the Complaint. *Air Evac EMS, Inc.*, 851 F.3d 517, 519 (internal citations omitted). Plainly, the Complaint pleads a claim for prospective injunctive relief. (Dkt. 1, Verif. Compl. at ¶¶ 149-154). Accordingly, the first step is met.

Thus, the real crux of the issue is the second prong: whether the Attorney General has a "'sufficient connection [to] the enforcement' of the challenged act." *City of Austin*, 943 F.3d at 998. In order "[f]or the exception to apply, the state official, 'by virtue of his office' must have 'some connection with the enforcement of the [challenged] act'…" *City of Austin*, 943 F.3d at 997 (*quoting Ex parte Young*, 209 U.S. at 157). In the Fifth Circuit, what constitutes a sufficient connection remains unsettled; however, one point of agreement is that "some connection" to the enforcement "typically involves compulsion or constraint." *City of Austin*, 943 at 1000 (internal quotations omitted).

It is also worth stressing that the law requires a showing of "compulsion **or** constraint," *City of Austin*, 943 F.3d at 997 (emphasis added). As the *City of Austin* panel noted, "[i]n fact, it may be the case that an official's 'connection to [ ] enforcement' is satisfied when standing has been established." 943 F.3d at 1002 (*quoting Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015)). The panel went on to explain, "[t]hat is, because it's been determined that an official can act, and there's a significant possibility that he or she will act to harm a plaintiff, the

10

official has engaged in enough 'compulsion or constraint' to apply the *Young* exception." *City of Austin*, 943 F.3d at 1002.

And it is not the case that enforcement needs to be overt, such as actually going to court. Instead, administration or involvement with the statutory scheme, or even involvement with the statute's primary enforcers, is enough. *Air Evac EMS, Inc.*, 851 F.3d at 520. In *Air Evac*, the Fifth Circuit noted that the enforcement need not be as pronounced as it was in *Ex parte Young*, 209 U.S. 123, where the Attorney General of the state had actually threatened criminal or civil prosecution. Rather, ordering payments, rate setting, or even denying benefits to the plaintiffs, directly or through others, is sufficient. 851 F.3d 517, 520. And *Air Evac EMS, Inc.*, 851 F.3d 517, 520 noted the overlap between standing to pursue injunctive relief and the *Ex parte Young* exception.

Here, Plaintiffs plead, via verified Complaint, that General Fitch "is made party to this Action in her official capacity as the Attorney General of Mississippi." (Dkt. 1 at ¶88). Under Mississippi law, Fitch is the state's "chief legal officer" (*see* Miss. Code § 7-5-1) and is responsible for enforcing, and does enforce, the laws of Mississippi, including the state's mandatory immunization requirements under the Compulsory Vaccination Law. *Id.* Attorney General Fitch is charged with implementing and enforcing, and does implement and enforce, the mandatory vaccination program. *Id.* Plaintiff Pastor Paul Perkins, as Head Administrator of Grace Baptist Academy, desires to enroll his unvaccinated child in Grace Baptist Academy, and would, but for the threat of prosecution by local prosecutors, who serve the Attorney General. *Id.* at ¶93.

Beyond these allegations in the Complaint, however, Miss. Code § 7-5-1 empowers the Attorney General to bring suit, criminally and civilly for enforcement of the law. Moreover, "[sh]e shall have the powers of the Attorney General at common law." *Id.* Moreover, the Attorney

11

General is charged under Miss. Code § 7-5-37 to prosecute or defend any suit at the request of any state officer. And, under Miss. Code § 41-3-15, Dr. Edney is similarly charged with enforcement of state health laws, including the Compulsory Vaccination Law. Plainly, then, Dr. Edney must enforce the law under Miss. Code § 41-3-15, and the Attorney General must prosecute and defend suits at his request under Miss. Code § 7-5-37. Moreover, the Attorney General trains local prosecutors,[4] handles all criminal appeals (including any convictions for violating the Compulsory Vaccination Law),[5] has an entire investigation arm to investigate (and charge) violations of Mississippi law, and actively solicits tips on such violations (to include violations of the Compulsory Vaccination Law),[6] and has a State Agencies Section dedicated to assisting state agencies in the enforcement of their laws.[7]

The Attorney General's common law duty has been described as including the "prosecution of all suits, criminal and civil." *State v. Warren*, 254 Miss. 293, 307, 180 So.2d 293, 299 (Miss. 1965); *State ex rel. Allain v. Mississippi Public Service Com.*, 418 So. 2d 779, 781 (Miss. 1982). In fact, the Mississippi Supreme Court has explained that the Attorney General is empowered and has "the right to institute, conduct and maintain all suits necessary for the enforcement of the laws of the state. . . ." *Gandy v. Reserve Life Insurance Company*, 279 So.2d 648, 649 (Miss. 1973). And that includes the Attorney General's ability and duty to represent state agencies that are involved in enforcing their own statutes; said another way, if Dr. Edney wants the statute enforced

---

[4] *See* MISSISSIPPI ATTORNEY GENERAL'S OFFICE, *Prosecutor and Law Enforcement Training, available at* https://www.ago.state.ms.us/divisions/prosecutor-and-law-enforcement-training/ (last accessed 4/6/2023).

[5] *See* MISSISSIPPI ATTORNEY GENERAL'S OFFICE, *Criminal Appeals, available at* https://www.ago.state.ms.us/divisions/criminal-appeals/ (last accessed 4/6/2023).

[6] *See* MISSISSIPPI ATTORNEY GENERAL'S OFFICE, *Investigations, available at* https://www.ago.state.ms.us/divisions/investigations/ (last accessed 4/6/2023).

[7] *See* MISSISSIPPI ATTORNEY GENERAL'S OFFICE, *State Agencies, available at* https://www.ago.state.ms.us/divisions/state-agencies/ (last accessed 4/6/2023).

in court, criminally or civilly, the Attorney General and her office are the public servants obligated to pursue charges. Miss. Code § 7-5-1; *Reserve Life Insurance Company*, 279 So.2d at 649.

In fact, the Mississippi Supreme Court has held that not only does the Attorney General have the ability to enforce the state's laws, but she also has the duty to do so. *Mississippi Public Service Com.*, 418 So. 2d at 782. "The case law and statutes make it unquestionably clear that [the Attorney General] is the state's chief legal officer and is charged with managing **all** litigation on behalf of the state." *Id.* (emphasis added). The Attorney General is entrusted to maintain all suits necessary for enforcement of state laws, preservation of order, and protection of public rights. *Kennington-Saenger Theatres, Inc. v. State*, 196 Miss. 841, 18 So. 2d 483 (Miss. 1944). Moreover, the Attorney General has the constitutional authority to file suit and enjoin violations of the law. *State v. Walgreen Co.*, 250 So. 3d 465, 476 (Miss. 2018).

Under the Compulsory Vaccination Law, it is "the responsibility of the person in charge of each school to enforce the requirements for immunization" established by the Health Officer. Miss. Code § 41-23-37. Failure to enforce the compulsory vaccination requirements is a misdemeanor "punishable by fine or imprisonment or both." *Id.*

That takes us back to *Russell v. Lundergan-Grimes*, 784 F.3d 1037 (6th Cir. 2015), which was cited favorably by the Fifth Circuit in *City of Austin*, 943 F.3d at 1002. The fact that the Kentucky Attorney General had concurrent jurisdiction with local officials to take enforcement action was sufficient in *Russell* to establish the *Ex parte Young* exception. And *Russell* also held that state officials who train local officials in enforcement of a statutory regime likewise establish the required connection. 784 F.3d 1037 at 1048. *Russell* further explained that civil enforcement, like criminal enforcement, would be sufficient to confer the requisite connection. *Id.* All of that is equally true with Attorney General Fitch and the Compulsory Vaccination Law.

13

In sum, the Attorney General has the requisite connection and authority to meet the requirements of *Ex parte Young*. First, she has the authority to enforce the law under Miss. Code § 7-5-1 and the ability to prosecute criminal violations, including those violations of Miss. Code § 41-23-37. Second, Dr. Edney has a statutory charge to take enforcement action of the law, under Miss. Code § 41-3-15, and the Attorney General must prosecute and defend suits at his request under Miss. Code § 7-5-37. This joint effort was sufficient in *Russell*, 784 F.3d 1037 at 1048, and it is sufficient here. And, under *Okpalobi v. Foster*, 244 F.3d 405, 417 (5th Cir. 2001), the Fifth Circuit held that "the correct interpretation of *Young* concludes that no such special charge need be found directly in the challenged statute to meet the requisite 'some connection' so long as there is sufficient indicia of the defendant's enforcement powers found elsewhere in the laws of the state." *Id.* at 419. That *indicia* is met here: Attorney General Fitch is a proper Defendant, Plaintiffs have standing to pursue their injunctive relief claims against her, and the *Ex parte Young* exception is met, divesting her of sovereign immunity.

Attorney General Fitch argues that an injunction against her would do nothing. (Dkt 70 at 13). But the truth is that such an injunction would leave the Attorney General unable to undertake her common law, constitutional, and statutorily charged duties to enforce state law, and pursue, among other things, criminal or civil actions against Plaintiffs, or the schools they wish their children to attend. Therefore, considering these factors, injunctive relief can appropriately be entered against Attorney General Fitch.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court to grant the motion for a preliminary injunction prohibiting Defendants, their agents, servants, employees, and any other persons acting on their behalf from implementing and enforcing the Compulsory Vaccination Law against Mississippi families asserting religious objections to the State's vaccination requirements without providing the option for a religious exemption.

Dated: April 10, 2023

Siri & Glimstad LLP

*/s/ Walker Moller*
Walker D. Moller, Attorney
Mississippi Bar Number: 105187
1005 Congress Avenue
Suite 925-C36
Austin, TX 78701
Tel: (512) 265-5622
Fax: (646) 417-5967
wmoller@sirillp.com

Aaron Siri, Attorney*
Elizabeth A. Brehm, Attorney*
Catherine Cline, Attorney*
745 Fifth Ave, Suite 500
New York, NY 10151
Tel: (212) 532-1091
Fax: (646) 417-5967
aaron@sirillp.com
ebrehm@sirillp.com
ccline@sirillp.com

Christopher Wiest, Attorney*
25 Town Center Blvd., Suite 104
Crestview, KY 41017
Tel: (513) 257-1895
Fax: (859) 495-0803
chris@cwiestlaw.com

*Attorneys for Plaintiffs*
*Admitted *pro hac vice*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 10, 2023, a true and correct copy of *Plaintiffs' Supplemental Reply Memorandum in Further Support of Their Motion for Preliminary Injunction* was served by CM/ECF on all counsel or parties of record. I certify under penalty of perjury that the foregoing is true and correct.

Dated this 10th day of April 2023.

BY: ***/s/ Walker Moller***
Walker D. Moller, Attorney
Mississippi Bar Number: 105187
1005 Congress Avenue
Suite 925-C36
Austin, TX 78701
Tel: (512) 265-5622
Fax: (646) 417-5967
wmoller@sirillp.com