IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **AMANDA BOSARGE,** *individually and on behalf of their minor children*, et al. | §<br>§<br>§<br>§<br>§ | **PLAINTIFFS** |
| **v.** | §<br>§<br>§ | **Civil No. 1:22cv233-HSO-BWR** |
| **DANIEL P. EDNEY,** *in his official capacity as the State Health Officer*, et al. | §<br>§<br>§<br>§ | **DEFENDANTS** |

## <u>MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION [3] FOR A PRELIMINARY INJUNCTION</u>

BEFORE THE COURT is Plaintiffs' Motion [3] for Preliminary Injunction, which came on for hearing before the Court on April 17, 2023. Having considered the record and relevant legal authority, including the testimony and exhibits adduced at the hearing, the Court is of the opinion that Plaintiffs' Motion [3] should be granted, and the Court will enter a preliminary injunction.

Effective July 15, 2023, Defendants Daniel P. Edney, in his official capacity as the State Health Officer; Ashley Blackman, in her official capacity as Principal of East Central Lower Elementary School; Allison Merit, in her official capacity as Principal of North Bay Elementary School; and Dr. Ashley Allred, in her official capacity as Principal of Vancleave Upper Elementary School, their officers, agents, servants, and employees, and anyone acting in active concert or participation with them, will be enjoined from enforcing Mississippi's school compulsory vaccination

law, Mississippi Code § 41-23-37, unless they provide an option for requesting a religious exemption from the law's requirements.  By July 15, 2023, Dr. Edney shall develop a process by which persons may request a religious exemption from the compulsory vaccination law, and the Mississippi State Department of Health shall make the process or any forms related to it available on its website.  Thereafter, while the injunction remains in effect, a person may seek a religious exemption from the compulsory vaccine law by requesting such exemption pursuant to the process developed by the Mississippi State Department of Health.

## I. <u>BACKGROUND</u>

A.   <u>Procedural history</u>

On September 1, 2022, Plaintiffs Amanda Bosarge, Jaquelyn Butler, Kimberly Harrell, William Morgan, Pastor Paul Perkins, Brandi Renfroe, and Dr. Jeana Stanley, individually and on behalf of their minor children ("Plaintiffs"), filed a Verified Complaint [1] for Declaratory and Injunctive Relief against Defendants Daniel P. Edney, in his official capacity as the State Health Officer; Lynn Fitch, in her official capacity as the Attorney General of Mississippi; Ashley Blackman, in her official capacity as Principal of East Central Lower Elementary School; Dr. Archie R. Mitchell, in his official capacity as Principal of Senatobia Elementary School; Allison Merit, in her official capacity as Principal of North Bay Elementary School; Dr. Ashley Allred, in her official capacity as Principal of Vancleave Upper Elementary School; and Douglas L. Tynes, in his official capacity as City Prosecutor

for Ocean Springs, Mississippi ("Defendants").  *See* Compl. [1] at 1-2.[1]

Plaintiffs contend that Mississippi's mandatory vaccine statute requiring students to be vaccinated in order to attend public and private schools in the State of Mississippi violates their rights under the Free Exercise Clause of the First Amendment to the United States Constitution.  *See id.* at 3-38 (citing Miss. Code Ann. § 41-23-37).  Plaintiffs' minor children are unvaccinated due to their parents' religious beliefs.  *See id.*  Plaintiffs claim that due to Mississippi's compulsory vaccination law set forth at Mississippi Code § 41-23-37 (the "Compulsory Vaccination Law"), their children have not been allowed to enroll at public or private schools in the State of Mississippi.  *See id.*  The Complaint asks the Court to:

    A.    [Enter a] preliminary and permanent injunction prohibiting Defendants, their agents, servants, employees and any other persons acting on their behalf from implementing and enforcing the Compulsory Vaccination Law challenged in this Complaint without providing the option for a religious exemption;

    B.    Declare that Miss. Code § 41-23-37 is unconstitutional on its face;

    C.    Declare that Miss. Code § 41-23-37 is unconstitutional as applied to Plaintiffs;

    D.    Declare that Miss. Code § 41-23-37 violates Plaintiffs' First Amendment right to free exercise of religion;

    E.    Grant Plaintiffs reasonable attorneys' fees and costs under 42 U.S.C. § 1988 and any other applicable authority; and

    F.    For any such other and further relief as the Court deems equitable and just under the circumstances.

*Id.* at 40.

---

[1] Plaintiffs have voluntarily dismissed their claims against Defendant Archie Mitchell, as well as all of Plaintiff William Morgan's claims.  *See* Notice [62] at 1-2; Stip. [63] at 1-2. The claims of Plaintiffs Bosarge, Butler, Harrell, Perkins, Renfroe, and Stanley remain against Defendants Edney, Blackman, Merit, Allred, Tynes, and the Attorney General.

B.     Plaintiffs' Motion [3] for Preliminary Injunction

Plaintiffs initially filed a Motion [3] for Preliminary Injunction and to

Consolidate the Preliminary Injunction Hearing with a Trial on the Merits.  As the

Court previously explained in an Order [66] entered on March 9, 2023, Plaintiffs

have since withdrawn without prejudice that portion of their Motion [3] seeking

consolidation of the preliminary injunction with a final trial on the merits.  *See*

Order [66] at 7-8; Reply [57] at 18.  As such, at this stage only the merits of

Plaintiffs' Motion [3] seeking a preliminary injunction is before the Court.  *See*

Order [66] at 7-8.  The Court held a hearing on Plaintiffs' Motion [3] on April 17,

2023.

Plaintiffs contend that the Compulsory Vaccination Law violates the First

Amendment, both facially and as applied, *see* Mem. [5] at 8, 19-33; Supp. Mem. [69]

at 12, and they ask the Court "to require the State to recognize religious exemptions

in the same manner that it recognizes secular exceptions," Mem. [5] at 36.  In other

words, Plaintiffs request that "Mississippi families be afforded a process to seek a

potential religious exemption, just as other families can seek a medical exemption."

Supp. Mem. [69] at 14.

The Attorney General responds that, properly construed, Mississippi law

does not violate Plaintiffs' First Amendment rights because it already permits

religious exemptions.  *See* Mem. [42] at 1.  The Attorney General reasons that the

Court should not consider the Compulsory Vaccination Law in isolation, but in

tandem with the Mississippi Religious Freedom Restoration Act ("MRFRA"),

4

Mississippi Code § 11-61-1.  *See id*. at 1-3, 6-8.  According to the Attorney General, the MRFRA requires the Mississippi State Department of Health ("MSDH") and "local school authorities to offer Plaintiffs the option of a religious exemption."  *Id.* at 6.  Therefore, "[t]his case may only properly be viewed as an 'as-applied' challenge to Mississippi law."  Supp. Mem. [70] at 1; *see id*. at 2 ("Plaintiffs' complaint is at most that, in practice, some defendants are not applying this view of Mississippi law.").

## II.   DISCUSSION

A.   Standard for obtaining preliminary injunctive relief

To obtain a preliminary injunction,

a movant must show: (1) a likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest.

*Louisiana v. Biden*, 55 F.4th 1017, 1022 (5th Cir. 2022) (quotation omitted).

Because the State is the opposing party, factors three and four merge.  *See Nken v. Holder*, 556 U.S. 418, 435 (2009).[2]

---

[2] In *Nken*, the Supreme Court considered whether an appellate court could stay a removal order under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 pending review, *see Nken*, 556 U.S. at 423-33, and it applied "traditional stay factors," which have "substantial overlap" with the factors governing preliminary injunctions, *id.* at 433-344.  Other courts in this Circuit have therefore "merged" the third and fourth factors of the preliminary injunction analysis when the government is a party, as the Supreme Court did in *Nken*.  *See id*. at 436; *United States v. Texas*, 566 F. Supp. 3d 605, 631 (W.D. Tex. 2021); *see also, e.g., Vote.Org v. Callanen*, 39 F.4th 297, 309 (5th Cir. 2022) (considering whether to stay a preliminary injunction pending appeal and stating that "where the State is the appealing party, as it is here, its interest and harm merge with the public" (quotation omitted)).

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  Such relief should not be granted "unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Big Tyme Invs., L.L.C. v. Edwards*, 985 F.3d 456, 464 (5th Cir. 2021) (quotation omitted).  In determining whether to grant a preliminary injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (quotation omitted).  Once granted, the preliminary injunction must be narrowly tailored to remedy the specific action that gives rise to the order.  *See Barbee v. Collier*, No. 22-70011, 2022 WL 16860944, at *2 (5th Cir. Nov. 11, 2022), *cert. denied*, 214 L. Ed. 2d 250 (Nov. 16, 2022).

B.    The Free Exercise Clause

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."  U.S. Const. amend. I.  The "free exercise" component of the First Amendment applies to states through the Fourteenth Amendment, rendering "the legislatures of the states as incompetent as Congress to enact such laws." *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).

The Supreme Court has held that "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Fulton v. City of Philadelphia,* 141 S. Ct. 1868, 1876 (2021) (quotation omitted).  In considering whether a plaintiff's rights under the Free Exercise Clause

are infringed, a court must determine whether the plaintiff's religious exercise has been burdened and whether the burden the government has imposed is constitutionally permissible. *Id.* A plaintiff bears the burden of showing an infringement of his rights under the Free Exercise Clause, and if he does so, "the focus then shifts to the defendant to show that its actions were nonetheless justified and tailored consistent with the demands of [Supreme Court] case law." *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2421 (2022).

To establish a free exercise violation, a plaintiff may show that "a government entity has burdened his sincere religious practice pursuant to a policy that is not neutral or generally applicable." *Id.* at 2422 (quotation omitted). If a plaintiff makes this showing, then there is a First Amendment violation unless the government satisfies "strict scrutiny by demonstrating its course was justified by a compelling state interest and was narrowly tailored in pursuit of that interest." *Id.* (quotation omitted).

In determining whether a law is neutral or generally applicable, "[a] law is not generally applicable if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions." *Fulton,* 141 S. Ct. at 1877 (quotation omitted). A law also fails to be generally applicable "if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Id.* A policy is not neutral if it is "specifically directed at religious practice," meaning that it either "discriminates on its face" or "religious exercise is otherwise its

7

object." *Kennedy*, 142 S. Ct. at 2422 (quotations omitted). "Failing either the neutrality or general applicability test is sufficient to trigger strict scrutiny." *Id.*

Where strict scrutiny applies, government policy survives "only if it advances interests of the highest order and is narrowly tailored to achieve those interests," meaning that "so long as the government can achieve its interests in a manner that does not burden religion, it must do so." *Fulton*, 141 S. Ct. at 1881 (quotation omitted). When considering the governmental interests at issue, a court must not rely on "broadly formulated interests"; instead, it "must scrutinize the asserted harm of granting specific exemptions to particular religious claimants." *Id.* (quotation omitted). The relevant question is not whether the government has a compelling interest in enforcing its policies generally, but whether it has such an interest in denying a religious exemption to a plaintiff. *Id.*

C.    Relevant Mississippi law

The statute Plaintiffs challenge here, Mississippi Code § 41-23-37, provides in pertinent part as follows:

> Whenever indicated, the state health officer shall specify such immunization practices as may be considered best for the control of vaccine preventable diseases. A listing shall be promulgated annually or more often, if necessary.
>
> Except as provided hereinafter, it shall be unlawful for any child to attend any school, kindergarten or similar type facility intended for the instruction of children (hereinafter called "schools"), either public or private, with the exception of any legitimate home instruction program as defined in Section 37-13-91, Mississippi Code of 1972, for ten (10) or less children who are related within the third degree computed according to the civil law to the operator, *unless they shall first have been vaccinated against those diseases specified by the state health officer.*

8

*A certificate of exemption from vaccination for medical reasons* may be offered on behalf of a child by a duly licensed physician and may be accepted by the local health officer when, in his opinion, such exemption will not cause undue risk to the community.

\* \* \*

If a child shall offer to enroll at a school without having completed the required vaccinations, the local health officer may grant a period of time up to ninety (90) days for such completion when, in the opinion of the health officer, such delay will not cause undue risk to the child, the school or the community.  No child shall be enrolled without having had at least one (1) dose of each specified vaccine.

\* \* \*

It shall be the responsibility of the person in charge of each school to enforce the requirements for immunization. Any child not in compliance at the end of ninety (90) days from the opening of the fall term must be suspended until in compliance, unless the health officer shall attribute the delay to lack of supply of vaccine or some other such factor clearly making compliance impossible.

Failure to enforce provisions of this section shall constitute a misdemeanor and upon conviction be punishable by fine or imprisonment or both.

Miss. Code Ann. § 41-23-37 (emphasis added).  The face of the statute allows for medical exemptions but affords no exemption for religious beliefs, and the Complaint alleges that this constitutes "an unconstitutional value judgment that secular (*i.e.,* medical) motivations for opting out of compulsory immunization are permitted, but that religious motivations are not."  Compl. [1] at 33.

The Attorney General essentially acknowledges that, read in insolation, Mississippi Code § 41-23-37 cannot withstand strict scrutiny.  *See* Mem. [42] at 7. She maintains, however, that the existence of the MRFRA remedies any constitutional defect in the Compulsory Vaccination Law.  *See id.* at 1-3, 6-8.  The stated purpose of the MRFRA is to:

(a)  To restore the compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398 (1963), and *Wisconsin v. Yoder*, 406 U.S. 205 (1972), and to guarantee its application in all cases where free exercise of religion is substantially burdened; and

(b)  To provide a claim or defense to persons whose religious exercise is substantially burdened by government.

Miss. Code Ann. § 11-61-1(3).

In *Sherbert* and *Yoder*, the Supreme Court "looked beyond broadly formulated interests justifying the general applicability of government mandates and scrutinized the asserted harm of granting specific exemptions to particular religious claimants." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 431 (2006) (citing *Sherbert*, 374 U.S. at 410; *Yoder*, 406 U.S. at 213, 221). In other words, the Supreme Court applied strict scrutiny even if a law was generally applicable but infringed a plaintiff's free exercise rights. *See generally id.* The Supreme Court subsequently narrowed the application of strict scrutiny in free exercise cases and held that the compelling interest test does not apply to a valid and neutral law of general applicability, even if the law requires conduct that an individual's religion proscribes. *See Emp. Div., Dep't of Hum. Res. v. Smith*, 494 U.S. 872, 878-82 (1990). In response to *Smith* and other developments in the law, Mississippi enacted the MRFRA in an effort to restore the compelling interest test set forth in *Sherbert* and *Yoder* by codifying it as state law. *See* Miss. Code Ann. § 11-61-1(3).[3]

---

[3] In *Smith*, the Supreme Court "largely repudiated the method of analysis" in *Sherbert* and *Yoder* and held that "neutral, generally applicable laws that incidentally burden the exercise of religion usually do not violate the Free Exercise Clause of the First Amendment." *Holt v. Hobbs*, 574 U.S. 352, 356-57 (2015) (citing *Smith*, 494 U.S. at 878-82). Following the *Smith* decision in 1990, Congress enacted the Religious Land Use and

Under the MRFRA,

(5)(a)  Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in paragraph (b) of this subsection.

  (b)  Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person:

    (i)  Is in furtherance of a compelling governmental interest; and

    (ii)  Is the least restrictive means of furthering that compelling governmental interest.

(6)  A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against the government . . . .

Miss. Code Ann. § 11-61-1(5)-(6).[4]

The MRFRA defines "Government" as "any branch, department, agency, instrumentality or political subdivision of the State of Mississippi and any official or other person acting under color of law of the State of Mississippi." Miss. Code Ann. § 11-61-1(4)(a). And according to the statute, it "applies to all state laws, rules, regulations and any municipal or county ordinances, rules or regulations and the implementation of those laws, whether statutory or otherwise, and whether adopted before or after July 1, 2014." Miss. Code Ann. § 11-61-1(7)(a). Further, "[a]ny such

---

Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc, *et seq.,* and the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb, *et seq.*, "in order to provide very broad protection for religious liberty." *Id.* at 356. Because the Supreme Court later held the RFRA as applied to the states was unconstitutional under the Fourteenth Amendment, *see City of Boerne v. Flores*, 521 U.S. 507, 529-36 (1997), "many states passed their own versions of the law," *Warner v. City of Boca Raton*, 267 F.3d 1223, 1227 (11th Cir. 2001). Mississippi's MRFRA is one such example.

[4]  The MRFRA permits a person whose religious exercise has been burdened to assert a state-law claim under the statute. *See* Miss. Code Ann. § 11-61-1(6). Plaintiffs in this case have not asserted any state-law claims under MRFRA. *See* Compl. [1].

law, rule, regulation or ordinances adopted after July 1, 2014, shall be subject to this section unless such law explicitly excludes such application by reference to this section." Miss. Code Ann. § 11-61-1(7)(b).

The Attorney General takes the position that the MRFRA requires the MSDH and local school authorities to afford Plaintiffs' minor children the option of requesting a religious exemption from the vaccination statute. *See* Mem. [42] at 6. According to the Attorney General, the MRFRA essentially "saves" the vaccination regime from Plaintiffs' First Amendment claims. *See id.* Plaintiffs respond that the argument that the MRFRA automatically applies actually supports a finding that the Compulsory Vaccination Law violates their free exercise rights on its face because "[w]ithout a religious exemption option, under MRFRA, the school vaccination scheme would substantially burden the rights of some people with sincerely-held religious objections." Mem. [57] at 3 (quoting Mem. [42] at 7). Plaintiff additionally states that "[t]he reality is that even since the passage of MRFRA, schools will not even consider Plaintiffs' religious exemption requests and their children remain excluded from school." *Id.* at 5.

D.     Whether Plaintiffs are entitled to a preliminary injunction

1.     Whether Plaintiffs have a likelihood of success on the merits

Plaintiffs raise both facial and as-applied challenges to the Compulsory Vaccination Law.[5] *See* Mem. [5] at 8, 19-33; Supp. Mem. [69] at 12. A facial

---

[5] As the Supreme Court has recognized, the distinction between facial and as-applied challenges is not always well defined, *see Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010), and a claim can have characteristics of both, *see John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010). A First Amendment challenge can both be "as applied" in the

challenge to the constitutionality of the statute presents a "pure question of law,"
*Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 662 (5th Cir. 2006), while
an as-applied challenge considers whether the statute is unconstitutional as
interpreted and enforced against Plaintiffs, *see, e.g., Roy v. City of Monroe*, 950 F.3d
245, 250 (5th Cir. 2020). "Although litigants are permitted to raise both as-applied
and facial challenges, the lawfulness of the particular application of the law should
ordinarily be decided first." *Id.* at 251. However, in this case, given the Attorney
General's arguments concerning the statutory impact of the MRFRA, the Court
finds that it is more appropriate to first address Plaintiffs' facial challenge. *See id.*

a.  Plaintiffs' facial challenge to the Compulsory Vaccination Law

The Compulsory Vaccination Law requires a child to "first have been
vaccinated against those diseases specified by a state health officer" before she may
attend school, unless the child receives a "certificate of exemption from vaccination
for medical reasons." Miss. Code Ann. § 41-23-37. On the face of the statute, there
is a secular exemption but no religious exemption permitted to the vaccine
requirement. *See id.* In turn, the MRFRA provides that the State shall not
"substantially burden a person's exercise of religion," unless "it demonstrates that
application of the burden to the person: (i) [i]s in furtherance of a compelling

---

sense that it does not seek to strike a statute in all of its applications, but it is "facial" if not
limited to plaintiffs' particular case. *See id.* However, "[t]he label is not what matters." *Id.*
Plaintiffs here raise both a pure as-applied challenge, as well as what the Court construes
as a facial challenge to the Compulsory Vaccination Law. *See id.*; Mem. [5] at 8, 19-33;
Supp. Mem. [69] at 12. While Plaintiffs do not seek to strike the statute in its entirety, they
challenge application of the law to those in Mississippi with sincerely held religious beliefs
who oppose vaccinating their children. Therefore, the Court will consider whether
Plaintiffs have met the standards for a facial challenge to the extent of that reach. *See*
*John Doe No. 1*, 561 U.S. at 194.

governmental interest; and (ii) [i]s the least restrictive means of furthering that compelling governmental interest."  Miss. Code Ann. § 11-61-1(5).  This provision applies to all State laws, which Defendants argue would include the Mississippi Compulsory Vaccination Law.  *See* Miss. Code Ann. § 11-61-1(7).

   *i. Applicable canons of statutory interpretation*

  In matters of statutory interpretation, a court begins with the text of the statute by looking at the relevant statutory provision, which may be "clarified by the remainder of the statutory scheme." *United States v. Palomares*, 52 F.4th 640, 642-43 (5th Cir. 2022) (quotation omitted).  A court must "consider the text holistically, accounting for the full text, language as well as punctuation, structure, and subject matter."  *Id.* at 643 (quotation omitted).

  When a court is confronted with two statutes "allegedly touching on the same topic," a court "is not at liberty to pick and choose among [legislative] enactments and must instead strive to give effect to both."  *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018) (quotation omitted).  A person who suggests that the "two statutes cannot be harmonized, and that one displaces the other," bears the "heavy burden of showing a clearly expressed [legislative] intention that such a result should follow," meaning that "[t]he intention must be clear and manifest."  *Id.* (quotations omitted).  In considering an argument that a conflict exists, there is a "strong presumption that repeals by implication are disfavored and that Congress will specifically address preexisting law when it wishes to suspend its normal operations in a later statute."  *Id.* (quotations omitted).

14

Moreover, where a general statute and a more specific statute are at issue, "it
is a commonplace of statutory construction that the specific governs the general."
*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992); *see also RadLAX
Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (same). The
Supreme Court has explained that "where there is no *clear* intention otherwise, a
specific statute will not be controlled or nullified by a general one, regardless of the
priority of enactment." *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437,
445 (1987) (emphasis in original) (quotation omitted). "The general/specific canon is
perhaps most frequently applied to statutes in which a general permission or
prohibition is contradicted by a specific prohibition or permission." *RadLAX
Gateway Hotel, LLC*, 566 U.S. at 645. In that situation, in order to eliminate the
contradiction, "the specific provision is construed as an exception to the general
one." *Id.*

> ii. *Whether there is a likelihood of success on the merits on the facial
> challenge*

The Attorney General admits in her briefs that not permitting an option to
request a religious exemption to the vaccination statute is not the least restrictive
means of furthering a compelling governmental interest. *See* Mem. [42] at 7. She
candidly acknowledges that,

> [w]ithout a religious exemption option, under MRFRA, the school
> vaccination scheme would substantially burden the rights of some
> people with sincerely-held religious objections. The school vaccination
> statute itself recognizes that exemptions from compulsory vaccination
> are appropriate in some circumstances (i.e., medical exemptions).
> Miss. Code Ann. § 41-23-37. Having recognized that some exemptions
> are appropriate, the State must—given MRFRA—allow a mechanism

15

for seeking an exemption based on a sincerely-held religious belief. Given the prevalence of state laws providing for religious (or philosophical) exemptions from compulsory school vaccination laws in states across the country, see NCSL 50-State Survey (Ex. "A"), it is not tenable to maintain that having no religious exemption option is "the least restrictive means" of furthering a compelling governmental interest. Miss. Code Ann. § 11-61-1(5)(b). Plaintiffs must be afforded a religious exemption option, and that option must comport with MRFRA's compelling-interest/least-restrictive-means standard.

*Id.*; *see also, e.g.*, Rebuttal [60] at 3 (stating in briefing another motion that, "[w]hile the Attorney General agrees that § 41-23-37 could not withstand strict scrutiny if state law did not provide a religious-exemption mechanism, . . . the state law in question is <u>not</u> simply § 41-23-37 but rather § 41-23-37 <u>plus</u> MRFRA." (emphasis in original). Thus, the Attorney General contends that the "MRFRA can and should be read to require provision of a religious-exemption option." *Id.* at 5.

The Attorney General's argument is essentially that the Compulsory Vaccination Law does not violate the Free Exercise Clause because the MRFRA saves it. *See* Mem. [42]; Supp. Mem. [70]. Taking this argument to its logical conclusion as to Plaintiffs' facial challenge, no Mississippi statute could ever violate the Free Exercise Clause on its face because the more general, non-specific MRFRA applies to all State laws and operates to cure any law that would otherwise be deemed to violate the Free Exercise Clause. *See* Mem. [42]; Supp. Mem. [70]. However, at least in this case, the Court is not persuaded that the MRFRA can be read in this fashion with respect to Plaintiffs' facial challenge.

The text of the MRFRA contemplates that if a person's religious exercise is burdened by another State law or its implementation, the person receives protection

16

under the MRFRA, in that the statute offers the person the option to assert such a violation as a claim or defense in a judicial proceeding.  *See* Miss. Code Ann. § 11-61-1(6).[6]  But the plain text of the statute says nothing about automatically creating religious exemptions to any state law that runs afoul of the MRFRA.  *See id.*[7]

The MRFRA is modeled after, and nearly identical to, relevant portions of the federal Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb, *et seq.* ("RFRA").  *Compare* Miss. Code Ann. § 11-61-1, *with* 42 U.S.C. §§ 2000bb – 2000bb-3.  The Supreme Court has interpreted the RFRA as "secur[ing] Congress' view of the right to free exercise under the First Amendment, and [providing] a remedy to redress violations of that right."  *Tanzin v. Tanvir*, 141 S. Ct. 486, 489 (2020).  The Attorney General has not cited any legal authority holding that either the MRFRA or the federal RFRA has operated to automatically remedy any facial free exercise defects in other statutes or to preclude facial free exercise challenges to all other laws, and the Court has located no such authority.  Nor does the text of the MRFRA support the Attorney General's theory as it relates to the vaccine mandate.  *See* Miss. Code Ann. § 11-61-1.

Based upon the plain language of the Compulsory Vaccination Law, the

---

[6] The MRFRA permits a person whose religious exercise has been burdened in violation of a particular Mississippi law to pursue a state-law claim under the MRFRA.  *See* Miss. Code Ann. § 11-61-1(6).  Plaintiffs have not asserted a MRFRA claim in this case, nor have they advanced a claim under the federal Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb, *et seq.  See* Compl. [1].

[7] Under the general/specific canon of statutory construction, one could argue that the specific provision addressing vaccines in the Compulsory Vaccination Law can be construed as a specific exception to the broader, more general MRFRA provision precluding the State from substantially burdening a person's exercise of religion.  *See* Miss. Code §§ 11-61-1(5), 41-23-37; *RadLAX Gateway Hotel, LLC*, 566 U.S. at 645.

Court is persuaded that Plaintiffs have demonstrated a likelihood of success on the merits on their facial challenge under the Free Exercise Clause, and that the MRFRA does not salvage the statute from its constitutional infirmity.

b.      Plaintiffs' as-applied challenge to the Compulsory Vaccination Law

Even if the Attorney General is correct that the Compulsory Vaccination Law must be read in tandem with the MRFRA to cure any violation of the Free Exercise Clause, Plaintiffs have nevertheless demonstrated a likelihood of success on the merits on their as-applied challenge.

Plaintiffs assert that Defendants' practical application of the Compulsory Vaccination Law, irrespective of the existence of the MRFRA, has prevented their children from attending school in Mississippi. *See, e.g.,* Compl. [1] at 5-25, 38, 40. In her original brief in opposition to Plaintiffs' Motion [3], the Attorney General focused upon Plaintiffs' facial challenge, relying upon the theory that MRFRA must be read in conjunction with the Mississippi Compulsory Vaccination Law. *See* Mem. [42] at 4-9. In her Supplemental Memorandum, the Attorney General maintains that the Mississippi Compulsory Vaccination Law is not facially unconstitutional because, "construed conjunctively" with the MRFRA, the laws "require the [MSDH] and local school authorities to afford Plaintiffs a religious-exemption option." Supp. Mem. [70] at 2. According to the Attorney General, "Plaintiffs have at most established a likely 'as-applied' violation of their First Amendment rights," meaning that "Plaintiffs' complaint is at most that, in practice, some defendants are not applying this view of Mississippi law." *Id.*

18

Turning to the likelihood of Plaintiffs' success on the merits, the Attorney General has not argued or cited to any legal authority to oppose Plaintiffs' claim that the State's application or enforcement of the vaccine requirement, without an option for a religious exemption, violates their rights under the Free Exercise Clause, even if the Compulsory Vaccine Law is constitutional on its face. *See* Mem. [42]; Supp. Mem. [70]. The Attorney General focuses instead upon the breadth of a possible Court ruling, positing that "if Plaintiffs have established a likelihood of merits success at this preliminary-injunction stage, they have done so only for *themselves*—the six named plaintiffs before the Court," because they have "not sought class treatment." Supp. Mem. [70] at 2-3 (emphasis in original).

As an initial matter, where a party does not brief an issue, it is waived. *See, e.g., Block v. Tanenhaus*, 815 F.3d 218, 221 n.3 (5th Cir. 2016). However, the burden of persuasion on every element of the request for preliminary injunction remains cast upon Plaintiffs, and the Court must still consider whether they have shown a likelihood of success on the merits on their as-applied challenge. *See Big Tyme Invs., L.L.C.*, 985 F.3d at 464. Even if the Attorney General is correct that the Compulsory Vaccination Law does not violate the First Amendment on its face, the Court must consider whether Defendants have applied the law in a fashion that violated Plaintiffs' rights.

An "as applied" constitutional challenge to a statute generally involves two questions: 1) is the government's interpretation of the statute correct? and 2) does that interpretation violate the federal constitution? *See United Home Rentals, Inc.*

19

*v. Texas Real Est. Comm'n*, 716 F.2d 324, 332 (5th Cir. 1983). With respect to the first inquiry, the Attorney General's position in this case is that any interpretation of the Compulsory Vaccination Law from which an official were to conclude that vaccinations are required for students to attend schools in the State, without the possibility of a religious exemption, is an incorrect interpretation of Mississippi law because such an interpretation does not take into account MRFRA, which the Attorney General represents affords such an exemption. *See, e.g.,* Supp. Mem. [70] at 2.

Plaintiffs have pled in their Verified Complaint [1], and presented evidence and testimony at the hearing, that their children have been prohibited from enrolling in Mississippi schools because Defendant school officials have concluded that no religious exemption is authorized in Mississippi. *See, e.g.,* Compl. [1] at 7-8, 10, 13, 15-16, 21, 23; Hearing Ex. "P-1"; Hearing Ex. "P-2." For example, when Plaintiff Kimberly Harrell sought to enroll her daughter in a public elementary school, she was instructed to fill out a proof of immunization form. *See* Compl. [1] at 10. When she inquired whether the school would consider her request for religious exemption, school officials referred her to the MSDH. *See id.* A MSDH representative advised Harrell that "Mississippi does not do any religious exemptions." *Id.* Harrell avers that she faced the same obstacle when she attempted to enroll her daughter at a private school due to MSDH vaccine guidelines. *See id.*; *see also id.* at 44 (Verification of Kimberly Harrell).

Plaintiffs Dr. Jeana Stanley, Pastor Paul Perkins, and Brandi Renfroe also

testified at the hearing held on Plaintiffs' Motion [3] for Preliminary Injunction

concerning their sincerely held religious beliefs, which beliefs they testified have led

them to decide not to vaccinate their children.[8]   In their testimony, Stanley,

Perkins, and Renfroe all detailed their inability to enroll their children in

Mississippi public or private schools due to the Compulsory Vaccination Law

despite their desire that their children attend school in Mississippi.   Plaintiffs have

presented evidence, including evidence of the MSDH website and the MSDH

Medical Exemption Request Form, which both clearly indicate that no religious

exemptions are permitted.  *See, e.g.*, Ex. [1-9] (MSDH Medical Exemption Request

Form No. 139, stating that "[e]**xemption from required immunizations for**

**religious, philosophical, or conscientious reasons is not allowed under**

**Mississippi law**" (emphasis in original)); Hearing Ex. "P-1" at 1 (same); Hearing

Ex. "P-2" at 3 ("**Exemption from required immunizations for religious,**

**philosophical, or conscientious reasons is not allowed under Mississippi**

**law**." (emphasis in original)).

If the Attorney General is correct that Mississippi law, through MRFRA,

automatically permits a religious exemption, Mississippi officials' interpretation of

the statute is not correct, and it is being applied in a manner that plainly burdens

Plaintiffs' First Amendment rights.  This satisfies the first element of an as-applied

challenge.  *See United Home Rentals, Inc.*, 716 F.2d at 332.

The second question is whether the Defendant officials' interpretation of the

---

[8]  Defendants have not challenged the sincerity of Plaintiffs' religious beliefs; thus, this
element is established.

Compulsory Vaccination Law violates the Free Exercise Clause. *See id.* That

inquiry begins with whether Plaintiffs' sincere religious practice has been burdened

by a policy that is neutral or generally applicable. *See Kennedy*, 142 S. Ct. at 2422;

*Fulton,* 141 S. Ct. at 1877. Because the evidence shows that there was a method by

which Mississippi officials could consider secular exemptions, particularly medical

exemptions, their interpretation of the Compulsory Vaccination Law would not be

neutral or generally applicable. *See Fulton,* 141 S. Ct. at 1877. Plaintiffs have

offered evidence and testimony that the State's policy of not permitting religious

exemptions has burdened their sincerely held religious beliefs by requiring them to

vaccinate their children before they may attend school in this State, meaning that

there is a First Amendment violation unless the government satisfies "strict

scrutiny by demonstrating its course was justified by a compelling state interest

and was narrowly tailored in pursuit of that interest." *Kennedy*, 142 S. Ct. at 2422

(quotation omitted).

Other than her arguments concerning MRFRA as to the facial challenge, the

Attorney General acknowledges that, standing alone, the Compulsory Vaccination

Law cannot withstand strict scrutiny. *See* Mem. [42]; Supp. [70]. Indeed, the

Attorney General states quite frankly that "it is not tenable to maintain that having

no religious exemption is 'the least restrictive means' of furthering a compelling

governmental interest." Mem. [42] at 7 (quoting Miss. Code Ann. § 11-61-1(5)(b)).

This amounts to at least a tacit admission that there must be some kind of religious

exemption to the Compulsory Vaccine Law in order for it to survive a challenge

under the Free Exercise Clause. *See id.* The logical extension of that position is that Defendants' failure in practice to actually offer such an exemption, whether or not MRFRA also applies, does not survive strict scrutiny because it is not narrowly tailored to achieve the State's interests. *See id.*; *Fulton*, 141 S. Ct. at 1881. At the preliminary injunction stage, the Court finds that this is sufficient for Plaintiffs to carry their burden of demonstrating the likelihood of success on the merits of their as-applied challenge. *See Fulton*, 141 S. Ct. at 1881.

2.  Whether Plaintiffs have demonstrated a substantial threat of irreparable injury

"To show irreparable injury if threatened action is not enjoined, it is not necessary to demonstrate that harm is inevitable and irreparable." *Humana, Inc. v. Avram A. Jacobson, M.D., P.A.*, 804 F.2d 1390, 1394 (5th Cir. 1986). Plaintiffs must "demonstrate that irreparable injury is *likely* in the absence of an injunction," rather than just a possibility. *Winter*, 555 U.S. at 22 (emphasis in original). "In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). But the mere fact that monetary damages may be available does not mean that a remedy at law is adequate if an injunction is needed to protect that remedy. *See id.*

In support of their irreparable injury argument, Plaintiffs cite the inability of their children to attend school in the State of Mississippi unless they violate their sincerely held religious beliefs. *See* Supp. Mem. [69] at 9. In a similar vein, the Fifth Circuit has held that a military vaccination order caused plaintiffs irreparable harm because, "[b]y pitting their consciences against their livelihoods, the vaccine

23

requirements would crush Plaintiffs' free exercise of religion." *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 348 (5th Cir. 2022). And the Supreme Court has held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). With respect to the Free Exercise Clause, it has further stated that plaintiffs are "irreparably harmed by the loss of free exercise rights for even minimal periods of time." *Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021) (quotation omitted).

In addition, the Mississippi Compulsory School Attendance Law mandates that "[a] parent, guardian or custodian of a compulsory-school-age child in this state shall cause the child to enroll in and attend a public school or legitimate nonpublic school for the period of time that the child is of compulsory school age," unless the child is physically, mentally, or emotionally incapable of attending school, pursing a course of special education, or being educated in a home instruction program. Miss. Code Ann. § 37-13-91(3). "Any parent, guardian or custodian of a compulsory-school-age child subject to this section who refuses or willfully fails to perform any of the duties imposed upon him or her under this section . . . shall be guilty of contributing to the neglect of a child and, upon conviction, shall be punished in accordance with Section 97-5-39." Miss. Code Ann. § 37-13-91(5) (citing Miss. Code Ann. § 97-5-39).

Plaintiffs have presented evidence that State officials are not permitting their children to enroll in schools without being vaccinated, which would violate

their sincerely held religious beliefs.  This pits Plaintiffs' consciences against their children's ability to obtain an education and their potential violation of the Mississippi Compulsory School Attendance Law, which is a criminal offense.  *See* Miss. Code Ann. § 37-13-91(3), (5).  The Court finds that placing Plaintiffs in the position of deciding between these two choices is sufficient to demonstrate that irreparable injury is likely absent an injunction.  *See Winter*, 555 U.S. at 22; *U.S. Navy Seals 1-26*, 27 F.4th at 348.  In addition, Plaintiffs are "irreparably harmed by the loss of free exercise rights for even minimal periods of time."  *Tandon*, 141 S. Ct. at 1297.

3.   <u>Whether the balance of hardships favors the issuance of the injunction and whether the grant of an injunction will not disserve the public interest</u>

The threatened injury if the injunction is denied in this case outweighs any harm that will result if it is granted, and the balance of equities tips in Plaintiffs' favor.  *See Winter*, 555 U.S. at 24.  The Fifth Circuit has held that "[t]here is generally no public interest in the perpetuation of unlawful agency action." *Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022) (quotation omitted).  And as the Attorney General has at least tacitly conceded, the MSDH's and local authorities' actions in requiring vaccinations without offering a process for requesting a religious exemption violates Mississippi law and thus the Free Exercise Clause.  *See* Mem. [42] at 7.  An injunction against perpetuation of such an unlawful action will not disserve the public interest.  *See Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022).

In sum, Plaintiffs have carried their burden of persuasion as to all four

elements of their request for preliminary injunction. Their Motion [3] is therefore well taken and will be granted. However, the Court must determine the proper scope of the preliminary injunction.

4.    Scope of injunction

Plaintiffs state that "[b]ecause the statute at issue is unconstitutional as applied to any parent or child who has a sincere religious objection to it, the scope of any injunction should extend to prohibit enforcement of it against such persons . . . ." Supp. Mem. [69] at 14 (citing *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786 (2011); *Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274 (5th Cir. 1996)). The Attorney Generally responds that any preliminary injunction should be limited in scope to the named Plaintiffs only because they have not utilized the class-action mechanism set forth at Federal Rule of Civil Procedure 23, and because the merits are Plaintiff-specific based upon each person's particular circumstances. *See* Supp. Mem. [70] at 6-10. According to the Attorney General, "any preliminary injunction awarded should be limited in scope to require MSDH and local school authorities to provide a religious-exemption option to Plaintiffs exclusively." *Id.* at 9.

Plaintiffs reply that they are making a "hybrid facial and as-applied challenge" and that the Compulsory Vaccination Law is facially invalid and unconstitutional "to the extent it reaches any person who has a sincerely held religious belief against vaccination and seeks to enroll their children in school." Supp. Reply [71] at 3. Plaintiffs state that "[b]ecause the constitutional violations at issue in this case are not limited to the named Plaintiffs, nor should the

26

injunctive relief be limited to the named Plaintiffs." *Id.* at 6. Plaintiffs ask the State "to recognize religious exemptions in the same manner that it presently recognizes secular exemptions state-wide," *id.*, and argue that "[b]ecause the challenged statute is unconstitutional as applied to any parent or child who has a sincere religious objection to it, the scope of the injunction should extend to prohibit enforcement of it against any such persons," *id.* at 7. "Plaintiffs merely request that Mississippi families be afforded a process to seek a potential religious exemption for one or more required vaccinations to attend school." *Id.* at 8-9.

The general rule for American courts of equity has been that they do not provide relief beyond the parties to the case, but this rule is subject to exceptions, "the most important of which was that an injunction *could* benefit non-parties as long as that benefit was merely incidental." *Feds for Med. Freedom v. Biden*, 63 F.4th 366, 387 (5th Cir. 2023) (en banc) (emphasis in original) (quotation omitted). The Fifth Circuit has emphasized that the purpose of a preliminary injunction "is to maintain the status quo until the parties have the chance to adjudicate the merits," and that when the case proceeds to the merits phase, "the plaintiffs will have to prove that whatever injunction they request is broad enough to protect against their proven injuries and no broader." *Id.* at 389 (emphasis removed).

In this particular case, however, the Attorney General takes the position that only named Plaintiffs should be afforded a religious-exemption process, while at the same time insisting that Mississippi law, via MRFRA, automatically "requires that MSDH and local school authorities offer Plaintiffs the option of a religious

exemption." Supp. Mem. [70] at 5.  Thus, the Attorney General seems to recognize, and indeed argues, that by virtue of MRFRA, MSDH and local school authorities should already be offering all citizens who wish to seek one the option of requesting a religious exemption.  But the unrebutted evidence submitted by Plaintiffs tends to show that, in practice, no such exemptions are currently offered to any Mississippi residents.  *See, e.g.,* Ex. [1-9] (MSDH Medical Exemption Request Form No. 139, stating that "[e]**xemption from required immunizations for religious, philosophical, or conscientious reasons is not allowed under Mississippi law**" (emphasis in original)); Hearing Ex. "P-1" (same).  Nevertheless, the Attorney General asks the Court to limit the option of requesting a religious exemption to only the named Plaintiffs.  *See* Supp. Mem. [70] at 5.

In light of the Attorney General's representations that Mississippi law as it currently stands permits anyone with a sincerely held religious belief to seek a religious exemption to the Compulsory Vaccination Law, the Court is not persuaded that the scope of the preliminary injunction affording a process for seeking religious exemptions should be limited only to the named Plaintiffs.   As the Court has determined, Plaintiffs have shown a likelihood of success on the merits on both a facial and an as-applied free exercise challenge to the Compulsory Vaccination Law, and for these reasons it will require Defendants to develop a procedure for any state resident who wishes to request a religious exemption to do so.  The fact that nonparties will be able to seek such relief during the pendency of the preliminary injunction is merely incidental to its issuance, and in the Court's view, it is actually

28

consistent with the Attorney General's position on the interpretation of Mississippi law.  *See Feds for Med. Freedom*, 63 F.4th at 387-88 (recognizing the exception to the general rule that an injunction cannot benefit non-parties if that benefit is merely incidental and observing that the federal government's opposition to a nationwide injunction on its vaccine policy, which would result in piecemeal enforcement, "sits awkwardly" with its position that it wants consistency across the government to enforce its policy).  Moreover, Plaintiffs have shown a likelihood of success on the merits on their facial challenge for those similarly situated to them, meaning those with sincerely held religious beliefs who might seek an exemption to the Compulsory Vaccination Law on that basis.  *See John Doe No. 1*, 561 U.S. at 194.

5.    Party or parties to be enjoined

a.    The parties' arguments

The Attorney General asserts that any preliminary injunction "should be directed to those defendants who are authorized to administer and enforce Mississippi's school vaccination law."  Supp. Mem. [70] at 10.  According to the Attorney General, "the Mississippi Legislature has statutorily tasked the 'person in charge of each school,' in coordination with the State Health Officer and county/local health officers, with the enforcement of Mississippi's school vaccination requirements."  *Id.* at 14 (quoting Miss. Code Ann. § 41-23-37).  As such, the Attorney General "has no role in these activities," nor "any authority to compel or constrain state or local officials relative to immunization-related decisions affecting

Plaintiffs' children's enrollment in Mississippi schools." *Id.*  The Attorney General

further contends that injunctive relief as against her is barred by sovereign

immunity and that the *Ex parte Young* exception to sovereign immunity does not

apply.[9]  *See id.* (citing *Ex parte Young*, 209 U.S. 123 (1908)).  The Attorney General

posits that,

> [i]f Plaintiffs are awarded any injunctive relief, it should be limited to
> an order directing the State Health Officer to offer the named plaintiffs
> the option of a religious exemption to the school vaccination
> requirement, and further directing the relevant county/local health
> officers and local school officials to recognize and honor any religious
> exemption so granted to the named plaintiffs.

*Id.* at 15.

Plaintiffs reply that *Ex parte Young* applies because there is an ongoing

violation of federal law, they seek prospective relief, and the Attorney General has a

sufficient connection to the enforcement of the Compulsory Vaccination Law.  Supp.

Reply [71] at 9-14.   Injunctive relief can appropriately be entered against the

Attorney General because it "would leave the Attorney General unable to undertake

her common law, constitutional, and statutorily charged duties to enforce state law,

and pursue, among other things, criminal or civil actions against Plaintiffs, or the

schools they wish their children to attend."  *Id.* at 14.

b.    <u>Whether sovereign immunity bars enjoining the Attorney General</u>

Plaintiffs have sued the Attorney General in her official capacity, *see* Compl.

[1], which is in effect a suit against the State, *see Kentucky v. Graham*, 473 U.S.

159, 165 (1985).  The Eleventh Amendment to the United States Constitution

---

[9] The Attorney General has not filed a motion to dismiss on sovereign immunity grounds.

generally deprives federal courts of jurisdiction to hear suits against nonconsenting states and state officials in their official capacities. *See Planned Parenthood Gulf Coast, Inc. v. Phillips*, 24 F.4th 442, 450 (5th Cir. 2022). Under the *Ex parte Young* doctrine, a federal court has jurisdiction over a lawsuit if a plaintiff (1) names individual state officials as defendants in their official capacities; (2) alleges an ongoing violation of federal law; and (3) seeks relief "properly characterized as prospective." *Id.* at 451 (quotation omitted). In addition, "the officers must have some connection with the enforcement of the act in question or be specially charged with the duty to enforce the statute and be threatening to exercise that duty." *Texas Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) (quotation omitted). Where a federal court "commands [an official] to do nothing more than refrain from violating federal law," she is not the State for sovereign-immunity purpose. *Planned Parenthood Gulf Coast, Inc*, 24 F.4th at 450 (quotation omitted).

It is beyond dispute that Plaintiffs in this case named the Attorney General in her official capacity, that they allege an ongoing violation of federal law, specifically the Free Exercise Clause, and that they seek relief properly characterized as prospective. *See id.* The argument raised by the Attorney General concerns her purported lack of connection with the actual enforcement of the Compulsory Vaccination Law. *See* Supp. Resp. [70] at 13-15.

This connection requirement involves whether a plaintiff has named the proper defendant or defendants. *See City of Austin v. Paxton*, 943 F.3d 993, 998 (5th Cir. 2019); *see also, e.g., Air Evac EMS, Inc. v. Texas, Dep't of Ins., Div. of*

31

*Workers' Comp.*, 851 F.3d 507, 517 (5th Cir. 2017) ("This 'some connection' requirement is designed to ensure defendant is not merely being sued as a representative of the state, and thereby attempting to make the state a party." (quotation omitted)). For *Ex parte Young* to permit suit against a state official, "the plaintiff at least must show the defendant has the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty," which means that "the official must be statutorily tasked with enforcing the challenged law." *Texas Democratic Party*, 978 F.3d at 179 (quotations omitted). "Where no state official or agency is named in the statute in question, [a court must] consider whether the state official actually has the authority to enforce the challenged law." *Paxton*, 943 F.3d at 998. Enforcement in this context can mean "compulsion or constraint," and a "scintilla of enforcement" by the official concerning the law is sufficient for *Ex parte Young* to apply. *Texas Democratic Party*, 978 F.3d at 179 (quotations omitted).

Plaintiffs here rely upon allegations in their Complaint and general provisions of Mississippi law concerning the Attorney General's powers to bring suit criminally and civilly for enforcement of State law. *See* Supp. Reply [71] at 11-12. The Fifth Circuit has cautioned that a state official "with a broad duty to uphold state law is not a proper defendant." *Air Evac EMS, Inc.*, 851 F.3d at 517. The Supreme Court has explained that

> [i]f, because they were law officers of the state, a case could be made for the purpose of testing the constitutionality of the statute, by an injunction suit brought against them, then the constitutionality of every act passed by the legislature could be tested by a suit against the

> governor and the attorney general, based upon the theory that the former, as the executive of the state, was, in a general sense, charged with the execution of all its laws, and the latter, as attorney general, might represent the state in litigation involving the enforcement of its statutes.  That would be a very convenient way for obtaining a speedy judicial determination of questions of constitutional law which may be raised by individuals, but it is a mode which cannot be applied to the states of the Union consistently with the fundamental principle that they cannot, without their assent, be brought into any court at the suit of private persons.

*Fitts v. McGhee*, 172 U.S. 516, 530 (1899).  Applying *Ex parte Young* broadly to any suit against state officials simply because they are generally tasked with enforcement or execution of the state's laws "would permit the narrow exception to swallow the fundamental, constitutionally-based rule."  *Okpalobi v. Foster*, 244 F.3d 405, 413 (5th Cir. 2001) (en banc) (plurality op.).

The specific statute at issue in this case, the Compulsory Vaccination Law, states that "[w]henever indicated, the *state health officer* shall specify such immunization practices as may be considered best for the control of vaccine preventable diseases," and requires children to be "vaccinated against those diseases specified by the *state health officer*."  Miss. Code Ann. § 41-23-37 (emphasis added).  With limited exceptions concerning a child being physically, mentally, or emotionally incapable of attending school, participating in special education programs, or being educated in a home instruction program, "it shall be unlawful for any child to attend" school, "unless they shall first have been vaccinated against those diseases specified by the state health officer." *Id.*

The state specifies that the "person in charge of each school" must certify compliance with the immunization requirements to the "local or county health

33

officer," who supervises the immunization status of the children and "may inspect the children's records or be furnished certificates of immunization compliance by the school." *Id.* The statute further provides that

> [i]t shall be the responsibility of the person in charge of each school to enforce the requirements for immunization. Any child not in compliance at the end of ninety (90) days from the opening of the fall term must be suspended until in compliance, unless the health officer shall attribute the delay to lack of supply of vaccine or some other such factor clearly making compliance impossible.

*Id.* Nowhere does the Compulsory Vaccination Law specifically mention the Attorney General, and Plaintiffs have not shown that she has been "statutorily tasked with enforcing the challenged law." *Texas Democratic Party*, 978 F.3d at 179.

Plaintiffs cite two Mississippi statutes in support of their argument that the *Ex parte Young* exception to sovereign immunity nevertheless applies to the Attorney General. *See* Suppl. Mem. [71] at 11-12 (citing Miss. Code Ann. §§ 7-5-1, 7-5-37). Under the first, the Attorney General is

> the chief legal officer and advisor for the state, both civil and criminal, and is charged with managing all litigation on behalf of the state, except as otherwise specifically provided by law . . . . [She] shall have the powers of the Attorney General at common law and, except as otherwise provided by law, is given the sole power to bring or defend a lawsuit on behalf of a state agency, the subject matter of which is of statewide interest. [She] shall intervene and argue the constitutionality of any statute when notified of a challenge thereto, pursuant to the Mississippi Rules of Civil Procedure.

Miss. Code Ann. § 7-5-1. The second statute provides that

> [t]he attorney general shall, at the request of the governor or other state officer, in person or by his assistant, prosecute suit on any official bond, or any contract in which the state is interested, upon a breach

thereof, and prosecute or defend for the state all actions, civil or criminal, relating to any matter connected with either of the state offices. He may require the service or assistance of any district attorney in and about such matters or suits.

Miss. Code Ann. § 7-5-37.

Neither statute offers a clear indication that the Attorney General plays any role in the actual enforcement of, or the process of granting exemptions to, the Compulsory Vaccination Law, and the Court is not persuaded that, at least at this stage of proceedings, the general statutes cited by Plaintiffs demonstrate anything other than the Attorney General's broad duty to uphold state law, which is not sufficient under *Ex parte Young*. *See Okpalobi*, 244 F.3d at 413; *Air Evac EMS, Inc.*, 851 F.3d at 517. Therefore, the Court is persuaded that it would not be appropriate to preliminarily enjoin the Attorney General.

c.     <u>MSDH and local school authorities</u>

It is the MSDH that has the statutory power and duty "[t]o formulate the policy of the State Department of Health regarding public health matters within the jurisdiction of the department," Miss. Code Ann. § 41-3-15(1)(b)(i), and "[t]he State Department of Health is responsible for assuring that all children in the state are appropriately immunized against vaccine-preventable diseases," Miss. Code Ann. § 41-88-3(1). School boards have the power "[t]o require those vaccinations specified by the State Health Officer as provided in Section 41-23-37," Miss. Code Ann. § 37-7-301(i), and it "shall be the responsibility of the person in charge of each school to enforce the requirements for immunization," Miss. Code Ann. § 41-23-37. It therefore appears that, as the Attorney General suggests, any preliminary

injunction should be directed to Defendants Dr. Daniel P. Edney, as the State
Health Officer, and to Defendants Ashley Blackman, Allison Merit, and Dr. Ashley
Allred, in their official capacities as principals of the schools in question.

d.     Ocean Springs city prosecutor

     Plaintiffs' Motion [3] for Preliminary Injunction asks the Court "to require
the State to recognize religious exemptions in the same manner that it recognizes
secular exceptions." Mem. [5] at 36.   There is no indication in the record that
Defendant Douglas L. Tynes, in his official capacity as City Prosecutor for Ocean
Springs, Mississippi, has any involvement in the recognition of any religious or
secular exemptions under the Compulsory Vaccination Law.  While the Complaint
[1] references the threat of prosecution by Defendant Tynes if Plaintiff Paul Perkins
were to enroll his daughter at the school where he is headmaster, Plaintiffs' Motion
[3] for Preliminary Injunction does not seek relief enjoining any prosecution.  *See*
Mot. [3]; Mem. [5].  Nor have Plaintiffs briefed whether Tynes should be enjoined.
Therefore, the Court will not preliminarily enjoin Tynes.

6.     Whether the Court should require Plaintiffs to post a bond

     Rule 65(c) states that a court may issue a preliminary injunction "only if the
movant gives security in an amount that the court considers proper to pay the costs
and damages sustained by any party found to have been wrongfully enjoined or
restrained." Fed. R. Civ. P. 65(c).   "[T]he amount of security required pursuant to
Rule 65(c) is a matter for the discretion of the trial court," and the district court
"may elect to require no security at all." *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624,

628 (5th Cir. 1996).

In this case, none of Defendants will likely incur any significant monetary damages as a result of the preliminary injunction, which ensures that Plaintiffs' constitutional rights are protected. As the Attorney General has maintained in this litigation based upon her interpretation of the Mississippi statutes, the Court is merely placing Plaintiffs and Defendants in the positions that they should currently be under Mississippi law. Therefore, the Court finds that security is not necessary in this case. *See id.*; *see also, e.g., Thomas v. Varnado*, 511 F. Supp. 3d 761, 766 (E.D. La. 2020) (holding that, because neither the school board or superintendent was likely to incur any significant monetary damages as a result of the preliminary injunction and because the plaintiff was a minor student, it would issue an injunction without security); *Gbalazeh v. City of Dallas*, No. 3:18-CV-0076-N, 2019 WL 2616668, at *2 (N.D. Tex. June 25, 2019) ("The Court exercises its discretion under Federal Rule of Civil Procedure 65(c) to waive the bond requirement, as Plaintiffs are engaged in 'public-interest litigation' to protect their constitutional rights." (quoting *City of Atlanta v. Metropolitan Atlanta Rapid Transit Authority*, 636 F.2d 1084 (5th Cir. 1981)).[10]

## III.  CONCLUSION

To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result. Plaintiffs' Motion [3] will be granted to the extent it seeks a preliminary

---

[10] Moreover, at the hearing held on Plaintiffs' Motion, Defendants agreed that security was not necessary in this case.

injunction.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Plaintiffs'
Motion [3] for Preliminary Injunction is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, pursuant to
Federal Rule of Civil Procedure 65(d), Defendants Daniel P. Edney, in his official
capacity as the State Health Officer; Ashley Blackman, in her official capacity as
Principal of East Central Lower Elementary School; Allison Merit, in her official
capacity as Principal of North Bay Elementary School; and Dr. Ashley Allred, in her
official capacity as Principal of Vancleave Upper Elementary School, their officers,
agents, servants, and employees, and anyone acting in active concert or
participation with them (the "Enjoined Parties"), are **PRELIMINARILY
ENJOINED** as follows:

1. Effective July 15, 2023, the Enjoined Parties shall be enjoined from
   enforcing the Compulsory Vaccination Law unless they provide an option
   for requesting a religious exemption.

2. By July 15, 2023, Defendant State Health Officer Dr. Daniel P. Edney
   shall develop a process by which persons may request a religious
   exemption from the Compulsory Vaccination Law, and the Mississippi
   State Department of Health shall make the process or any forms related
   to it available on its website.

3. Thereafter, while this preliminary injunction remains in effect, a person
   may seek a religious exemption to the Compulsory Vaccination Law by

requesting a religious exemption pursuant to the process developed by the Mississippi State Department of Health.

**SO ORDERED AND ADJUDGED**, this the 18th day of April, 2023.

_s/ Halil Suleyman Ozerden_

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE