**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | |
|---|---|
| **AMANDA BOSARGE, individually and on behalf of their minor children, et al.,** | |
| *Plaintiffs,* | Civil Action No. 1:22-cv-00233-HSO-BWR |
| -against- | |
| **DANIEL P. EDNEY**, in his official capacity as the State Health Officer, et al., | |
| *Defendants.* | |

<u>**MEMORANDUM BRIEF IN SUPPORT OF PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS [DKT. 95]**</u>

## INTRODUCTION

Plaintiffs are the prevailing party in this civil rights litigation and Plaintiffs' counsel seek fees pursuant to 42 U.S.C. § 1988 for the work expended to obtain the relief entered by the Court. The permanent injunction secured in this matter has permitted children across Mississippi to, for the first time, attend school. It was a Constitutional violation for Mississippi to allow students to be exempt from the statute at issue for secular reasons but not non-secular reasons. If appropriate attorneys' fees are not granted in this case – one fraught with negative precedent, controversial subjects including vaccines and religion, and complex legal issues – it will potentially have a chilling effect on other attorneys and allow constitutional harms to go unremedied.

Plaintiffs' counsel seeks reasonable fees and costs, in a timely manner, for necessary and competent legal work under § 1988, pursuant to which "a prevailing party should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (internal punctuation omitted). Likewise, the Fifth Circuit held that, "absent special circumstances, a prevailing plaintiff should be awarded section 1988 fees as a matter of course." *Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir. 1985) (internal punctuation omitted). The "special circumstances" exception is a narrow carve-out of the general rule that prevailing civil rights plaintiffs should be awarded fees:

> It is true that the plain language of the statute grants district courts discretion to determine whether to award the prevailing party a reasonable attorney's fee, *see* 42 U.S.C. § 1988(b) (stating that a court "may" award fees "in its discretion"), but the judicial gloss on § 1988, and its legislative history, have constrained that discretion, in most cases converting the statute's "may" into a "must." Indeed, "in [the] absence of special circumstances a district court not merely 'may' but must award fees to the prevailing plaintiff."

*Sanchez v. City of Austin*, 774 F.3d 873, 879-80 (5th Cir. 2014) (citing *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 761 (1989)).

1

The *Sanchez* court further emphasized that "[b]ecause Congress believed that the incentive of attorney's fees was critical to the enforcement of the civil rights laws, section 1988 requires an extremely strong showing of special circumstances to justify a denial of fees." *Sanchez*, 774 F.3d at 879-80 (internal citations omitted). *See also Hous. Chron. Publ'g Co. v. City of Leag. City*, 488 F.3d 613, 623 (5th Cir. 2007); *Espino v. Besteiro*, 708 F.2d 1002, 1005 (5th Cir. 1983); *Riddell v. Nat'l Dem. Party*, 624 F.2d 539, 544-45 (5th Cir. 1980).

There are no special circumstances justifying a denial of fees to Plaintiffs. Plaintiffs have established their entitlement to attorneys' fees and costs from Defendant Dr. Edney. Four of Plaintiffs' attorneys (the only attorneys who are seeking fees) have submitted declarations stating that their firms' and attorneys' hourly rates are fair and reasonable given the nature and complexity of the litigation and are considered fair and customary within the legal community of southern Mississippi. Plaintiffs spent a significant amount of time reviewing the time entries to delete entries that may be objectionable and zero out any entries that could arguably be duplicative, purely administrative, excessive, or redundant. This is evidenced by the fact that seventeen legal employees at Siri & Glimstad billed work to the matter but Plaintiffs are seeking fees for only four of them. Plaintiffs researched attorney rates in the jurisdiction and drastically reduced their rates to come in line with customary rates in southern Mississippi, as attested to by Louis H. Watson. (Dkt. 90-3). Much of the billed work and expenses were avoidable but for Defendants' refusal to discuss a consent decree prior to the preliminary injunction hearing and Defendants' subsequent delay in reaching a resolution after the entry of the preliminary injunction.

In sum, Plaintiffs' counsel's work was reasonable, necessary, complex, and well-documented. Given that Plaintiffs prevailed, they respectfully submit that they are entitled to fees and costs. "As the legislative history of section 1988 points out, 'civil rights laws depend heavily

upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain.'" *Aware Woman Clinic, Inc. v. Cocoa Beach*, 629 F.2d 1146, 1150 (5th Cir. 1980).

## I.   PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND RELATED NONTAXABLE EXPENSES IS TIMELY

Plaintiffs' motion for attorneys' fees has been timely filed because the fees are considered the "costs" of litigation—not traditional "attorneys' fees" as Defendants suggest—and because the Court has discretion to order fees outside of the 14-day window Defendants argue applies.

Fed. R. Civ. P. 54(d) indicates a 14-day time period for filing a motion for attorneys' fees, "**unless a statute or court order provides**" otherwise. Fed. R. Civ. 54(d)(2)(B) (emphasis added.) Here, there is a statute that provides otherwise, and this Court could order otherwise.

The Complaint sought fees under 42 U.S.C. § 1988, which states in relevant part that "the court, in its discretion, may allow the prevailing party . . . a reasonable **attorney's fee as part of the costs** . . . ." 42 U.S.C. § 1988(b) (emphasis added). Accordingly, the requested fees here are "costs" of this litigation, not subject to Rule 54(d)(2)(B)'s 14-day filing limitation. *Knighton v. Watkins*, 616 F.2d 795, 798 (5th Cir. 1980). Plaintiffs also requested that the Court enter an order outside of Rule 54(d)(2)(B)'s 14-day window, which the Court has discretion to do under the Rule 54(d). (Dkt. 89). Notably, there is no jurisdictional time limit on the filing of a motion seeking attorneys' fees pursuant to 42 U.S.C. § 1988. *See Wells v. City of Alexandria*, No. 01-1686, 2004 U.S. Dist. LEXIS 30917, at *15 (W.D. La. Sept. 17, 2004).

Moreover, permitting Plaintiffs to seek attorneys' fees outside of the 14-day window would be entirely consistent with the rationales undergirding Rule 54(d), which are placing a defendant on notice of the intention to seek attorneys' fees and permitting the court to rule on a fee request in time for appellate review of the merits. Fed. R. Civ. 54 (Notes of Advisory Committee on Rules

– 1993 Amendments). Defendants do not credibly argue that the purposes of Rule 54(d) would be offended by permitting Plaintiffs to request fees outside the 14-day window; this is unsurprising given that Defendants have had notice of Plaintiffs' intent to seek fees since the filing of the Complaint on September 1, 2022, and that intention was referenced by Plaintiffs, Defendants, and the Court ten times since.[1] Additionally, Defendants did not appeal the preliminary or permanent injunctions (which they still had time to do after Plaintiffs' counsel's September 14, 2023 email sending a detailed fee request) and thus the timeliness for appellate review is not relevant here.

Finally, contrary to Defendants' contention, *Romageura* and *Wells* are applicable to this case. *Wells* and *Romaguera* were both decided after the 1993 Amendments to Rule 54. Central to *Romageura*'s holding was that one of the "key functions of Rule 54(d)(2)," which "is to ensure that parties properly notify their counterparts of their requests for attorneys' fees," was satisfied because the court referenced the plaintiffs' attorneys' fees request and noted it would be addressed at a separate hearing. *Romaguera v. Gegenheimer*, 162 F.3d 893, 895 (5th Cir. 1998). Similarly in *Wells*, the court emphasized that ensuring the opposing party has notice of the intention to seek attorneys' fees is a central aspect of Rule 54(d) and, in that case, plaintiff was aware that the defendants intended to seek attorneys' fees, given they—like Plaintiffs in this case—notified the opposing party in their earliest filing of their intent to seek attorney's fees. *Wells*, 2004 U.S. Dist. LEXIS 30917, at *8, *14. *See also U.S.* ex rel. *Rigsby v. State Farm Fire & Cas. Co.*, No. 1:06CV433-HSO-RHW, 2016 U.S. Dist. LEXIS 199401, at *11 (S.D. Miss. Jan. 28, 2016)

---

[1] *See* Dkt. 1 at 38, 40; Dkt. 37 at 2; Dkt. 53-2 at 1; Dkt. 23 at 2; Dkt. 24 at 2; Dkt. 36 at 21; Dkt. 53-2 at 1; Dkt. 77 at 3; Dkt. 66 at 3; Dkt. 65 at 3; Dkt. 38 at 2. This is in stark contrast to *Tisserand v. Blanco*, No. 05-6487, 2006 U.S. Dist. LEXIS 57934 (E.D. La. Aug. 17, 2006), cited by Defendants, wherein the court determined that the plaintiffs' single reference to attorneys' fees in a footnote of a memorandum was not sufficient to provide notice. Further, in stark contrast to the instant case where Plaintiffs are the prevailing party—a fact which is unchallenged by Defendants—the *Tisserand* Court determined that the plaintiffs were not a "prevailing party" and consequently would not have been entitled to attorneys' fees regardless.

(allowing a motion for attorneys' fees outside the 14-day window given "the circumstances" which included defendants had notice). Here, by contrast, Defendants have had much more notice as not only did Plaintiffs twice reference their request for attorneys' fees in the Complaint but, again, their request was referenced ten more times throughout these proceedings by both Plaintiffs and Defendants, as well as by the Court. (*See* ftn. 1.). Both *Romageura* and *Wells* indicate that there are exceptions to Rule 54(d)'s 14-day limit when counsel and the court are on notice of the movant's intention to seek fees and, consequently, both cases are squarely applicable here.

## II.   PLAINTIFFS' ATTORNEYS' FEES AND COSTS HAVE ALREADY BEEN REDUCED SIGNIFICANTLY AND, CONSEQUENTLY, ARE REASONABLE

### A.   The Court Should Not Further Reduce Plaintiffs' Counsel's Already Reduced and Reasonable Request for Attorneys' Fees

Pursuant to 42 U.S.C. § 1988, the Court has discretion to "allow the prevailing party . . . reasonable attorney's fee as part of the costs." *Id.* at §(b). Statutory fee-shifting provisions signal Congress' intent that violations of certain laws be remedied through allowing attorneys' fees as part of the costs of litigation. *Anderson v. AB Painting & Sandblasting, Inc.*, 578 F.3d 542 (7th Cir. 2009). "Because Congress wants even small violations of certain laws to be checked through private litigation and because litigation is expensive, it is no surprise that the cost to pursue a contested claim will often exceed the amount in controversy." *Id.* at 545. Or, more simply stated, fee-shifting "helps to discourage petty tyranny." *Barrow v. Falck*, 977 F.2d 1100, 1103 (7th Cir. 1992). "The function of an award of attorney's fees is to encourage the bringing of meritorious … claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel." *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986).

Here, while the constitutional win obtained for Plaintiffs is most certainly proportional to (if not outweighs) the requested fee, even so, the Supreme Court has rejected "the proposition that

fee awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers." *Rivera*, 477 U.S. 561 at 574. The Court explained that "[u]nlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." *Id.* Regardless of the small or even minimums financial relief obtained, a successful civil rights plaintiff often secures important social benefits. *Id.* The logic in *Rivera* extends with particular force to this case.

This case established a First Amendment free exercise right for over one thousand children throughout Mississippi, children who were previously prohibited from receiving a formal education in the state. For more than 40 years, Mississippi schoolchildren were prohibited from seeking a religious exemption to the state's vaccination requirements. Plaintiffs' counsel challenged directly on-point adverse precedent, which necessitated additional attorney hours. *See Brown v. Stone*, 378 So. 2d 218 (Miss. 1979). In addition, after offering a brokered solution in lieu of protracted constitutional litigation, an offer Defendants rejected, Plaintiffs' counsel was then drawn into a battle to keep this case in federal court. Defendants advanced a *Pullman* abstention argument that required a significant amount of attorney time to research and brief. Given Defendants were not interested in a non-litigated solution, Plaintiffs' counsel had to expend time and resources preparing themselves and their witnesses for a preliminary injunction hearing, with the understanding that Plaintiffs' religious sincerity was likely to be challenged. Even after the entry of the preliminary injunction, Defendants did not indicate that the discovery they had informed the Court they needed, (Dkt. 44 at 6), would no longer be necessary and so Plaintiffs had to begin to prepare for that stage of litigation given the Case Management Order, (Dkt. 79) (calling for discovery to be completed by October 6, 2023).[2]

---

[2] Defendants state that "any award of attorneys' fees and/or costs…will be paid from State coffers and funded by Mississippi taxpayers" (Dkt. 96 at 2), but that is irrelevant as to whether Plaintiff is entitled to

Plaintiffs' counsel's detailed and already-reduced time entries make plain that the amount sought for attorneys' fees and costs is not a "windfall" for the attorneys but is instead an adequate fee that is reasonable for Plaintiffs' competent and experienced counsel. *See* Dkt. 96 at 4; *Leroy v. City of Houston*, 906 F.2d 1068, 1078-79 (5th Cir. 1990).

### 1.  Hours Reasonably Expended

Defendants contend Plaintiffs' counsel expended an unreasonable number of hours to successfully litigate this case, contending that the hours should be dramatically reduced. However, as a good faith effort to seek only reasonable attorneys' fees, Plaintiffs' counsel has significantly reduced their hourly rate, already chopped a large amount of billing entries, and only submitted hourly entries for four of the seventeen legal professionals at Siri & Glimstad who billed to this matter. (Dkt. 90-2 at 6 n.2). The billing records submitted were contemporaneous time entries that reflect the time was reasonably expended. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 325 (5th Cir. 1995).

As recognized by the Supreme Court, and Defendants, (Dkt. 96 at 5), the lodestar method yields an amount that is presumptively sufficient to achieve the objective of providing a reasonable fee, and this presumption is "strong." *Perdue v. Kenny A.* ex rel. *Winn*, 559 U.S. 542, (2010). Many of the *Johnson* factors "usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. at 434 n.9. When a Court is evaluating whether it should enhance or decrease the amount of fees based on the *Johnson* factors, "the most important of these [*Johnson*] factors in civil rights cases is the degree of success or

---

attorneys' fees and costs. *See Aware Woman Clinic, Inc*, 629 F.2d at 1150 ("[W]e find no merit in the court's determination that a section 1988 fee award would be unjust because the financial impact would fall on individual taxpayers who had not participated in any discriminatory act.").

results obtained…" *Canaski v. Mid Miss. Props.*, No. 1:15CV344-HSO-JCG, 2017 U.S. Dist. LEXIS 217776, at **12-13 (S.D. Miss. May 17, 2017).

Likewise, the Fifth Circuit has held that "[t]here is a strong presumption of the reasonableness of the lodestar amount," and has instructed that "[t]he lodestar may not be adjusted to a *Johnson* factor that was already taken into account during the initial calculation of the lodestar." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502; *see also Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006). Thus, there is no appropriate decrease to apply.

### a. Plaintiffs' case was not "overstaffed"

Defendants claim that Plaintiffs' counsel's use of four attorneys and one paralegal rendered the case "overstaffed" based on nothing more than the fact that three of the four attorneys are "partner level." Defendants also suggest it was unreasonable for each attorney to review work product on which their names appeared. Defendants then invent their own percentage of time that they believe Plaintiffs' counsel should have expended: 139.3 hours instead of the already reduced total of 185.7 hours.

Plaintiffs' counsel does not seek fees for an overstaffed case. To the extent Plaintiffs' counsel pursued a more aggressive litigation strategy than other firms may have, Plaintiffs' counsel only seeks compensation for a fraction of the time that was expended on the case. Plaintiffs' counsel requested fees for just four of seventeen legal professionals at Siri & Glimstad who billed to this matter, as well as the hours for co-counsel Chris Wiest. The number of attorneys who worked on this case was well within reason. *See Wooldridge v. Marlene Industries Corp.*, 898 F.2d 1169, 1172 n.7 (6th Cir. 1990) (three attorneys at trial not unreasonable); *Kadri v. Johnson*, No. 03-2562, 2005 U.S. Dist. LEXIS 37143 (W.D. Tenn. 2005) (three attorneys at trial not excessive);

*Seigal v. Merrick*, 619 F.2d 160, 164 (2d Cir. 1980) (at least two attorneys at conferences and court appearances is reasonable).

That two of the three attorneys at Siri & Glimstad who happen to have the most expertise handling matters like the case at hand (and, thus, who appropriately worked on this case) are partners does not mean their fees should be eliminated. To suggest that each attorney whose name appears on a legal filing decline to review it because both are "partners" would violate § 1988's purpose in ensuring that constitutional cases are litigated by competent counsel. Instead of merely reviewing each other's work in a duplicative manner, as Defendants suggest, the time entries appropriately reflect certain attorneys took responsibility for initially drafting filings, and other attorneys, who likewise signed filings, reviewed and revised them and offered unique input and work product. As observed in *Johnson v. Univ. Coll. of Univ. of Ala.*, 706 F.2d 1205, 1208 (11th Cir. 1983), "[a]n award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and is customary practice of multiple-lawyer litigation." Here, the record reflects just such contributions.

The fact of the matter is that without that review, errors would have been made and quality scarified; extra sets of eyes on a multi-page document, particularly eyes with seasoned perspectives, was critical to filing timely, thorough, and high-quality pleadings. This was not a case in which there were excessive amounts of hours per attorney and counsel is seeking millions of dollars in attorney fees. To the contrary, undersigned counsel were cognizant of the need to practice this case as efficiently as possible, and they did just that.

In sum, there were a number of complex issues in this case and drafting a thoroughly researched and carefully pleaded complaint challenging directly on point adverse precedent, demanded more attorney time and more legal insight and input than would other cases. Query how

9

many cases that raise similar issues are dismissed regularly under the high bar set by *Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007) or by *Jacobson v. Mass.*, 197 U.S. 11 (1905). Quite a few, which is likely why very few attorneys handle cases that intersect vaccines and religious freedom with any regularity (or very few who do so more than once). Defendants' disagreement with the number of attorney hours expended has no basis in fact or law.

b. *Travel time*

Defendants' challenge to Plaintiffs' counsel's travel time is derivative of their overstaffing argument. Defendants cite one case in support of their theory that Plaintiffs' travel hours should be further reduced by 50% "to accommodate for overstaffing." Defendants already ask for an arbitrary reduction of 25%-33% in Section II(A)(1)(a) for "overstaffing" and then again arbitrarily suggest Plaintiffs' hours related to travel be reduced further—likewise for "overstaffing." (Dkt. 96 at 4). The Court should reject these suggestions because Plaintiffs' travel hours were wholly reasonable. *See Aldridge v. Corp. Mgmt.*, 2022 U.S. Dist. LEXIS 58063, at *33 (S.D. Miss. Mar. 30, 2022) (rejecting argument that billing entries for "unnecessary travel" were unreasonable).

The sole case Defendants cite in support of their argument, *Watkins v. Fordice*, 807 F. Supp. 406 (S.D. Miss. 1992), is inapposite. In that case, the plaintiffs' counsel's time records reflected "substantially duplicated entries from August 5, 1991 through August 15, 1991," and reflected more hours billed than could have been possibly worked—i.e., 34 hours in a day. *Id.* at 414. Moreover, six of the plaintiffs' attorneys spent a significant about of time in an unsuccessful endeavor to prevent intervention and secure a stay of the court's order. *Id.*

Once again, in this case, Plaintiffs' counsel expended considerable time to ensure any even potentially questionable entries were eliminated and only submitted time entries for five of the seventeen legal professionals who worked on the case. It was not unreasonable to have two

10

attorneys from Siri & Glimstad, as well as co-counsel Chris Wiest, attend a very important hearing—an evidentiary preliminary injunction hearing—the preparation for which was not unlike that of a trial. Each attorney who attended prepared witnesses and actively participated in the hearing. The Attorney General had two attorneys (equivalent to "partner-level") at the hearing and Dr. Edney had a third. *Wooldridge*, 898 F.2d at 1172 n.7 (three attorneys at trial not unreasonable); *Kadri*, 2005 U.S. Dist. LEXIS 37143 at *21 (three attorneys at trial not excessive). Under section 1988, prevailing parties are not barred as a matter of law from receiving fees for sending a second attorney to depositions or an extra lawyer into court to observe and assist. *See Seigal*, 619 F.2d at 164. Other courts in this circuit have permitted billing for conferences or hearings with multiple attorneys where, as here, each attorney participated in a supportive and active role and none simply as a passive observer. *See Midkiff v. Prud. Ins. Co. of Am.*, 571 F. Supp. 3d 660, 669 (W.D. Tex. Sept. 30, 2021) (finding that plaintiff presented evidence that additional attorney who attended the mediation and trial participated "in a supporting role" rather than merely as a passive observer and declining to reduce the lodestar amount on that basis). Consequently, the Court should reject Defendants' suggestion to further adjust and reduce travel hours.

### c. Conferences between co-counsel/staff

Defendants also contend conferences and meetings between Plaintiffs' counsel were unreasonable and request that such attorney hours be reduced by 35%. However, as numerous courts have held, telephonic conferences between attorneys are compensable. *See Aldridge,* 2022 U.S. Dist. LEXIS 58063, at *31 (finding telephone conferences and emails between attorneys as compensable time); *PIC Grp., Inc. v. Landcoast Insul., Inc.*, 2011 U.S. Dist. LEXIS 88894, at *12 (finding telephone conferences are compensable).

Here, Plaintiffs' counsel is entitled to remuneration for hours billed, including those spent in conferences, because each individual's time entries were detailed and clearly indicated the division of work. *See Aldridge*, 2022 U.S. Dist. LEXIS 58063, at *32 (rejecting argument that billing entries were non-compensable due to alleged lack of clarity where entries related to telephone conferences or emails was noted, and "the person on the other end of the communication [was] named"). The tight timelines present in this case necessarily involved the division of labor between counsel, and that division of labor required conferences to discuss who would do what to avoid duplication and inefficiencies, proposed edits and changes, arguments to be made, and concerns and perspectives raised by certain Defendants and certain Plaintiffs in comparison with the others.

Moreover, it is notable that an outside attorney expert, Louis H. Watson, Esq., who practices primarily in federal courts in Mississippi, concluded that the time spent and the rates requested were reasonable after reviewing the filings in this case, examining the time spent on tasks, and the quantity and quality of the filings generated. (Dkt. 90-3). "Generally the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Nobach v. Woodland Vill. Nurs. Home Ctr., Inc.,* No. 1:11CV346-HSO-RHW, 2013 U.S. Dist. LEXIS 69046, at *9 (S.D. Miss. May 15, 2013) (quotation marks omitted). Defendants do not credibly rebut Attorney Watson's conclusions, but rather take issue with Plaintiffs' counsel for ensuring cohesive filings through efficient communications that included conferences and meetings to ensure a cohesive litigation strategy.

### d. Discovery activities

Defendants next nitpick a total of seven hours alleging that Plaintiffs' counsel "unnecessarily" expended time drafting written discovery and preparing for depositions and

request that the Court discount those seven hours entirely. However, Defendants repeatedly asserted their entitlement to discovery numerous times throughout this litigation. (*See e.g.*, Dkt. 43 at 1-3; Dkt. 44 at 1-10; Dkt 61 at 1-7.). Plaintiffs' counsel could not predict that discovery would not occur and were exercising due diligence in preparing for discovery; they were not required to wait until depositions were scheduled in order to do the early preliminary work to prepare for them.

And, again, avoidance of this work was in Defendants' control. Of the four time entries they take issue with, three are for work done on July 26 or July 28, 2023. Defendants fail to mention that prior to this work being completed, on July 24, 2023, Plaintiffs' counsel again asked Defendants via email whether they were amenable to entering into a consent decree to convert the preliminary injunction into a final injunction and resolve the matter. Defendants did not respond until August 1. Given their silence between the July 24th email and August 1st, Plaintiffs' counsel had to continue to anticipate the upcoming discovery deadlines in the case and begin to prepare for depositions. The fourth time entry Defendants contest was for work done on August 16, 2023, in preparation for a deposition of Dr. Edney. This work was undertaken, again, due to Defendants' silence in response to Plaintiffs' counsel sending a draft renewed motion for summary judgment and proposed order on August 4, 2023, a follow-up email on August 14, 2023, and after receiving no response, a second follow-up email on August 15, 2023 with a reminder to Defendants that the early October discovery deadline was fast approaching. The Attorney General finally responded the afternoon of August 16, 2023, stating that she had no objection to concluding the matter. Dr. Edney's counsel did not respond until August 18, 2023, stating that he agreed with Plaintiffs' proposed filings. Plaintiffs' counsel had no choice but to begin to prepare for discovery until Defendants agreed to a resolution of the case.

### 2.  Plaintiffs' Counsel's Proposed Hourly Rates Are Reasonable

Defendants contend Plaintiffs' counsel's hourly rates are unreasonable and unsupported by prevailing rates in the Southern District of Mississippi. However, Plaintiffs' counsel expended significant effort to ensure the rates requested comport with the prevailing legal rates in the Southern District of Mississippi. Although Siri & Glimstad's usual rates, in accordance with the Laffey Matrix, are $825/hour for partners, $575/hour for associates, and $225/hour for paralegals, Plaintiffs' counsel, here, sought the appropriate rate in the relevant legal market—$425/hour for partners, $325/hour for associates, and $75/hour for paralegals. (Dkt. 90-2 at 8.).

Defendants suggest that a $400/hour rate is only appropriate under *Aldridge*[3] if the case involved a lengthy jury trial. However, it is the skill and expertise that drives the appropriate rate, not the existence or non-existence of a lengthy jury trial. Similar to the attorneys in *Aldridge*, Plaintiffs' counsel has specialized expertise with the issues in dispute. Defendants also ignore that, in 2009, the Fifth Circuit has upheld an award of $225,000 in a case that, similar to this one, involved *inter alia*, a motion (and renewed motion) for summary judgment, a motion for a preliminary injunction, a preliminary injunction hearing, and a motion for judgment on the pleadings. *EEOC v. AGRO Distribution, LLC*, 555 F.3d 462, 465 (5th Cir. 2009).

Plaintiffs respectfully submit that the cases Defendants rely upon in requesting that the rates be lowered to between $400/hour-$275/hour for attorneys are distinguishable and, if followed here, would discourage attorneys to advocate for constitutional protections in Mississippi. Plaintiffs' counsel relies upon on-point examples from the Southern District of Mississippi,

---

[3] Notably, the defendants in *Aldrige* likewise requested a significant reduction of opposing counsels' rate from $450 to $300; however, the *Aldridge* court, citing *Rigsby*, held that "**$450 an hour**, an amount slightly above that awarded in *Rigsby*, **is a reasonable hourly rate according to the prevailing market rates** in the relevant community for an attorney of Mr. Pigott's background and years of experience, given the complexities of the case and Pigott's experience directly related to the case at hand." *Aldridge*., 2022 U.S. Dist. LEXIS 58063, at *23 (emphasis added).

including a 2014 case, *USA* ex rel. *Rigsby v. State Farm Fire & Cas. Co.*, 2014 U.S. Dist. LEXIS 22050 (S.D. Miss. 2014), wherein the Court found the following rates to be appropriate: $400/hour for a partner with 20 years' experience; $358/hour for a partner with 15 years' experience; and $262/hour for a junior partner and associate with 14- and 7-years' experience, respectively. When adjusted for inflation, the partners' $400/hour rate would equate to $508.63 in today's dollars. (*See* Dkt. 91 at 16.). Although Defendants attempt to distinguish *Rigsby*, it is nonetheless an appropriate comparator given the novel and complex issues presented in this case as well as the high-risk nature of this litigation.

Moreover, Defendants ignore that other cases in this District since *Rigsby* have likewise determined rates around $400/hour are reasonable. *See Pickett v. Miss. Bd. of Animal Health*, No. 2:18-cv-214-KS-JCG, 2021 U.S. Dist. LEXIS 205985 (S.D. Miss. Oct. 26, 2021) (awarding the same amounts as *Rigsby*); *PIC Grp., Inc. v. Landcoast Insulation, Inc.*, 2011 U.S. Dist. LEXIS 88894, at *13 (awarding the requested rate of $400/hour); *Aldridge*, 2022 U.S. Dist. LEXIS 58063, at *24 (awarding the requested rate of $450/hour). Given the passage of nearly a decade since the rates in *Rigsby* were awarded, the similar rates of $425/hour-$75/hour requested here are comparatively low and well within reason.

Defendants also contend that attorney Wiest's hourly rate should be reduced to $350/hour because there is "no explanation given for[his] involvement in this matter," and because it "is unclear what additional skills or resources Mr. Wiest contributed to this litigation beyond, effectively, serving in the role of an additional associate counsel." However, Mr. Wiest possesses considerable expertise in constitutional litigation, especially as it concerns religious rights, and his contributions to this case were essential. The fundamental issue in this case is one of religious freedom, an issue with which Mr. Wiest has extensive experience and, consequently, his

participation was invaluable to the favorable outcome obtained for plaintiffs. (Dkt. 90-4 at 4; Dkt. 90-3 at 3). Mr. Wiest has recently recorded noteworthy civil rights and First Amendment victories against various government actors. *See, e.g.*, *Roberts v. Neace*, 958 F.3d 595 (6th Cir. 2020) (a case that has been cited multiple times by the United States Supreme Court); *Fischer v. Thomas*, 52 F.4th 303 (6th Cir. 2022); and *Sisters For Life, Inc. v. Louisville-Jefferson Cnty.*, 56 F.4th 400 (6th Cir. 2022). Mr. Wiest has also recently partnered with Siri & Glimstad on several nationally significant cases. Mr. Wiest and Siri & Glimstad prevailed against the United States Air Force on a constitutional challenge to the Air Force's COVID-19 vaccination mandate. *See Doster v. Kendall*, 54 F.4th 398 (6th Cir. 2022). Mr. Wiest and Siri & Glimstad also prevailed against the United States Army on a constitutional challenge to the Army's COVID-19 vaccination mandate. *See Schelske v. Austin*, Case No. 6:22-CV-049-H (N.D. Tex. Dec. 21, 2022). In short, Mr. Wiest's contributions to this case were vital, and his rate is supported by his expertise and experience.

It is contradictory, too, that Defendants complain of over-staffing and duplicative attorneys reviewing filings, yet then argue that because "Ms. Brehm contributed the least number of compensable hours of legal work" her hourly rate should be decreased. Certainly, Ms. Brehm could have sought additional fees for hours she billed to the matter but did not do so in an effort to avoid precisely what Defendants complain of anyway (duplicative, partner-level work). Being judicious in billing fees should not be punished by attributing a lower hourly rate for the work that was justifiably billed.

And once again, Plaintiffs' requested rates are also supported by the Declaration of Louis H. Watson, Esq., an experienced attorney who handles civil rights litigation and frequently practices in Mississippi's federal courts who Defendants concede is known as a "experienced litigator." (Dkt. 96 at 15). It is Mr. Watson's opinion that Plaintiffs' counsel's requested fee and

rates are reasonable, competitive, and not outside of bounds in light of, *inter alia*, the statewide significance of the constitutional issues raised by Plaintiffs, the complexity of the issues, the number of plaintiffs and defendants, his review of the time and billing entries, and application of the *Johnson* factors. *Id.* It should be noted that Defendants do not provide any counter-affidavit showing that the fees requested are unreasonable or excessive. Consequently, Plaintiffs' counsel have met their burden "to produce satisfactory evidence, in addition to [their] attorney's affidavit, that the requested rates are in line with those prevailing in the relevant community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Wheeler v. Mental Health & Mental Retardation Auth. of Harris Cty.*, 752 F.2d 1063, 1073 (5th Cir. 1985).[4] The Court should reject the arbitrary and artificially lowered rates suggested by Defendants.

Therefore, in light of the foregoing, based on the hours reasonably expended and the requested reasonable hourly rates, the appropriate loadstar is $240,700.

## III.   PLAINTIFFS' REQUESTED EXPENSES ARE REASONABLE

Finally, Defendants contend that Plaintiffs' counsel seeks reimbursement for unreasonable and unnecessary expenses such as out-of-pocket expenses and costs. Specifically, Defendants contend Plaintiffs are not entitled to costs related to seeking *pro hac vice* admission; however, Defendants are incorrect as courts within the Fifth Circuit have indeed granted *pro hac vice* fees. *See, e.g.*, *Ortiz v. Am. Airlines, Inc.*, 2020 U.S. Dist. LEXIS 253617, at *4 (N.D. Tex. Sept. 10, 2020) (awarding *pro hac vice* fees as a cost pursuant to 28 U.S.C. § 1920); *see also Leon v. Ruiz*, 2020 U.S. Dist. LEXIS 262111, at *4 (W.D. Tex. Apr. 8, 2020) (same); *Glastetter v. Sandoz*

---

[4] It is of note that in this case, cited by Defendants in support of their argument that Plaintiffs' requested rates are too high, the Fifth Circuit held that the district court erred by reducing counsel's fee award, while noting that the $75/hour amount that the district court reduced the rate to from his customary $150/hour, was "too low." *Wheeler*, 752 F.2d at 1073-74.

*Pharms. Corp.*, 2000 U.S. Dist. LEXIS 23627, at **3-4 (Oct. 3, 2000) (awarding *pro hac vice* fees as fees of the clerk). Plaintiffs ask that the Court likewise do so here.

With respect to Ms. Heywood's lodging expenses, like the other attorneys' lodging expenses, they are compensable. *See Clark v. Centene Corp.*, No. A-12-CA-174-SS, 2015 U.S. Dist. LEXIS 152166, at *30 (W.D. Tex. Nov. 10, 2015) ("The Court agrees the travel expenses incurred by Plaintiffs' counsel are recoverable as attorney's fees, as travel expenses are the sort of things that a lawyer includes with a bill for professional services." (internal citations omitted)). That Plaintiffs' counsel zeroed out Ms. Heywood's time entries for the assistance and support she provided to the attorneys in preparation for and at the hearing does not render the costs expended unrecoverable. Plaintiffs' counsel should not be penalized on costs due to their good faith effort to exclude any unnecessary fees in their demand.

With respect to the court reporter fee, the party seeking the costs may recover them if they were "necessarily obtained for use in the case." *Waggoner v. Trans Union, LLC*, 2003 U.S. Dist LEXIS 21491, at *5 (N.D. Tex. 2003) (citation omitted). At the hearing, the Court inquired with Defendants as to how they might institute a religious exemption if ordered to do so and Defendants supplied the Court with numerous different ways they would consider doing so. In order to facilitate a mutually acceptable process for Mississippi families to obtain a religious exemption option, Plaintiffs wanted written record of the processes the state was considering which then positively impacted those conversations between the parties after the entry of the injunction.

Finally, with respect to the office materials necessitated by the evidentiary hearing, those costs are specific to the materials needed for the preliminary injunction hearing. They were not general, routine costs, nor were they materials already in counsel's possession. Thus, they were billed separately and are recoverable.

18

## **<u>CONCLUSION</u>**

Plaintiffs' counsel have sought an extraordinarily modest, reasonable, and justifiable award for attorneys' fees and expenses in this significant constitutional case. Therefore, Plaintiffs respectfully request that the Court grant their Motion and award reasonable attorneys' fees of $240,700 and costs in the amount of $13,206.87.

RESPECTFULLY SUBMITTED, this, the 12th day of October, 2023.

*/s/ Walker D. Moller*
Walker D. Moller
1005 Congress Avenue Suite 925 – C36
Austin, TX
Tel: (512) 265-5622
Fax: (646) 417-5967
wmoller@sirillp.com

Aaron Siri (Pro Hac Vice)
Elizabeth Brehm (Pro Hac Vice)
745 Fifth Ave, Suite 500
New York, NY 10151
Tel: (212) 532-1091
Fax: (646) 417-5967
aaron@sirillp.com
ebrehm@sirillp.com

Christopher Wiest (Pro Hac Vice)
25 Town Center Blvd., Suite 104
Crestview, KY 41017
Tel: (513) 257-1895
Fax: (859) 495-0803
chris@cwiestlaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Walker Moller, do hereby certify that I electronically filed the foregoing with the Clerk of court using the CM/ECF  system,  which will send notification of such filing to all counsel of record.

THIS the 12th day of October 2023.

/s/ Walker D. Moller
Walker D. Moller, attorney

20